# Exhibit K

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  **[The R.M.C. 803 session was called to order at 1001, 31**
2  **October 2017.]**
3      MJ [Col SPATH]:  This commission is called to order.
4          Trial Counsel, Mr. Miller, let's account for the
5  government representatives and make any announcement regarding
6  the transmission of these proceedings.
7      TC [MR. MILLER]:  Good morning, Your Honor.  Present for
8  the prosecution are Brigadier General Mark Martins; myself,
9  Mark Miller; Colonel John Wells; and Major Michael Pierson.
10         In addition to detailed counsel, we have at the
11 counsel table Master Sergeant Vanessa Pichon, who is one of
12 our paralegals; Staff Sergeant Kevin Creel, again, a
13 paralegal; and our analyst, Parker Smith.
14         Additionally seated in the back, Your Honor, we have
15 Patrick O'Malley of the Federal Bureau of Investigation,
16 Joseph Castellano of the Federal Bureau Investigation, and
17 Supervisory Special Agent Amanda Strickland.
18         These proceedings are being transmitted by
19 closed-circuit television to the locations authorized in your
20 order.  Thank you.
21     MJ [Col SPATH]:  Thanks, Mr. Miller.
22         Lieutenant Piette, I see that learned counsel,
23 Mr. Kammen, and the two assistant defense counsel, Ms. Eliades

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  and Ms. Spears, are absent.  Do you have any other members of

2  the defense team you need to account for on the record other

3  than yourself?

4      DDC [LT PIETTE]:  Yes, Your Honor.  Present for

5  Mr. al Nashiri are myself, Lieutenant Alaric Piette, JAG

6  Corps, United States Navy.  I'm a lawyer within the meaning of

7  Article 27(b) of the Uniform Code of Military Justice.  In

8  addition, we have present Ms. Brandi Janes; Ms. Kristina Hon;

9  Tech Sergeant Travis Gale; Mr. Roosevelt Roy; and the

10  translator.  Additionally present is Brigadier General John

11  Baker, United States Marine Corps; Colonel Wayne Aaron, United

12  States Army; and Mr. Phil Sundel.

13      MJ [Col SPATH]:  With regard to General Baker, Colonel

14  Aaron and Mr. Sundel, are they of record for Mr. al Nashiri?

15      DDC [LT PIETTE]:  No, Your Honor.  They are -- Brigadier

16  General John Baker is the chief defense counsel.

17      MJ [Col SPATH]:  I understand.  Is he entering an

18  appearance for Mr. al Nashiri or not?

19      DDC [LT PIETTE]:  No, Your Honor.

20      MJ [Col SPATH]:  Okay.  And the same for the other two?

21      DDC [LT PIETTE]:  Yes, Your Honor.

22      MJ [Col SPATH]:  All right.  Thanks.

23          Mr. al Nashiri, I'm going to talk to you about your

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  rights to be present and your right to waive your presence at

2  any hearing.

3          You have the right to be present during all sessions

4  of a commission; this includes any contempt proceedings

5  against anyone.  If you request to absent yourself from any

6  session, such absence must be voluntary and of your own free

7  will.

8          Your voluntary absence from any session of the

9  commission is an unequivocal waiver of your right to be

10  present during the session.  Your absence from any session may

11  negatively affect the presentation of the defense in your

12  case.  Your failure to meet with and cooperate with your

13  defense counsel may also negatively affect the presentation of

14  your case.

15          Under certain circumstances your attendance at a

16  session can be compelled regardless of your personal desire

17  not to be present.  The proceedings today constitute one of

18  those occasions, as we are going to be discussing the

19  circumstances that have led to you being in court without your

20  outside appointed learned counsel, Mr. Kammen, and two other

21  members of your defense team.

22          Do you understand what I have explained to you so

23  far?

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    ACC [MR. AL NASHIRI]:  **[Indicated a positive response.]**

2    MJ [Col SPATH]:  That is a positive response from

3    Mr. al Nashiri.

4         During past sessions I know you have indicated you

5    did not desire for me to take breaks during the prayer times.

6    Is it still your preference not to take breaks during prayer

7    time?

8    ACC [MR. AL NASHIRI]:  Yes.  Yes.

9    MJ [Col SPATH]:  And that is again a positive response

10   from Mr. al Nashiri.  Thank you.

11        So on Sunday afternoon we had an 802 session under

12   the Rules for Military Commissions.  It was pretty short.

13   Detailed military counsel for Mr. al Nashiri was there, and

14   counsel for the prosecution were present as well.  Mr. Kammen,

15   Ms. Spears, Ms. Eliades were absent, but for 802 sessions we

16   only need one counsel from either side anyway, so we went on

17   with the 802.

18        However, since they were absent, I informed the

19   parties we weren't going to convene on Monday as previously

20   scheduled, and I ordered parties to file pleadings with the

21   commission no later than noon on Monday.  What I wanted from

22   both sides was their position on the way forward in light of

23   the absence of, again, appointed outside learned counsel.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    That was the extent of the 802 session.

2         Trial Counsel, want to add anything to my summary of

3    the 802 session?

4    TC [MR. MILLER]:  No, Your Honor.  Thank you.

5    MJ [Col SPATH]:  Defense Counsel?

6    DDC [LT PIETTE]:  Defense concurs; nothing to add.

7    MJ [Col SPATH]:  So after that the government did provide

8    a filing -- they provided it before noon on yesterday -- which

9    I have been through.  After the 802 on Sunday there was an

10   e-mail from detailed defense counsel indicating the way

11   forward was not to do anything because learned counsel isn't

12   here.

13        Through the attorney advisor that I have, we e-mailed

14   back to indicate if you are filing with the commission,

15   especially if the commission wants one, it should be in the

16   format required by the rules.  We got another e-mail back

17   saying that the defense counsel wasn't going to do that.

18        Maybe I wasn't clear, so we will talk about that

19   later on what I expect counsel to do.  We have a designated AE

20   for your response in the right format.  We will talk about

21   that as we move on.

22        Yesterday afternoon General Baker requested to add a

23   supplement to one of his filings.  We allowed him to do that.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   We got that last night.

2           Additionally, at some point yesterday I know my staff

3   sent an e-mail out at my direction notifying the parties what

4   time we were going to start today, at 10:00, and that was

5   after I got the government filing; and then indicating I

6   wished to have the chief defense counsel, General Baker,

7   available to provide testimony.  It appears he is available

8   because I see him in the courtroom as well.

9           I will enter some findings of fact so that we, again,

10  have an understanding of why we are here, where we are at.

11  These have been proven to at least a preponderance of the

12  evidence.  These findings of fact are relevant both to the

13  expected testimony of the chief defense counsel and the

14  absence of appointed outside learned counsel and detailed

15  civilian defense counsel, who are employees of the Department

16  of Defense.

17          On 23 December 2008 Mr. Richard Kammen was appointed

18  as the accused's outside learned counsel.

19          On 25 August 2015 the chief defense counsel,

20  Brigadier General Baker, detailed Ms. Mary Spears to the

21  accused's case as an assistant defense counsel.

22          On 18 November 2015 General Baker detailed Ms. Rosa

23  Eliades to the accused's case as another assistant defense

1  counsel.

2        On 11 May 2017 the government filed AE 369T, a

3  classified pleading.  It provided notice to the commission and

4  the defense of a potential intrusion into attorney-client

5  communications between an attorney not part of

6  Mr. al Nashiri's team and not representing Mr. al Nashiri and

7  a detainee other than the accused.  The disclosure by the

8  government was made voluntarily.

9        On 14 June 2017 the chief defense counsel sent a

10 memorandum to the chief prosecutor.  The memorandum was titled

11 "Improper Monitoring of Attorney-Client Meetings."  In the

12 memorandum the chief defense counsel informed the chief

13 prosecutor he had advised all defense counsel under his

14 supervision that they not conduct any attorney-client meetings

15 at Guantanamo Bay, Cuba until they know with certainty that

16 improper monitoring of such meetings is not occurring.

17       On 23 June 2017 the defense filed Appellate

18 Exhibit 369HH, a classified motion seeking to disclose

19 classified information to Mr. al Nashiri related to alleged

20 intrusions into attorney-client communications.

21       On 7 July 2017 I denied the motion because I am

22 statutorily prohibited from ordering the disclosure of

23 classified information, which everybody knows.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    On 14 July 2017 the defense filed Appellate Exhibit

2  369PP, a motion to compel production of discovery materials

3  related to potential intrusions into attorney-client

4  communications.

5    On 20 September 2017 I issued Appellate

6  Exhibit 369YYY.  It was a classified ruling denying the motion

7  after I reviewed all of the information submitted thus far on

8  the issue, both classified and unclassified, and I found the

9  defense failed to carry its burden of proof to warrant

10 additional disclosure.

11    On 14 July 2017 the defense filed Appellate

12 Exhibit 369RR, a motion for an evidentiary hearing or, in the

13 alternative, abatement of the proceedings due to potential

14 intrusions into attorney-client communications.

15    On 20 September 2017, again after consideration of

16 all the classified and unclassified filings and the in-court

17 representations and a classified declaration submitted by the

18 government, I issued Appellate Exhibit 369ZZZ.  It's a

19 classified ruling denying the motion and finding there wasn't

20 any basis to find there had been an intrusion into

21 attorney-client communications between this accused and this

22 defense team.

23    On 14 August 2017 the defense filed Appellate Exhibit

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   369AAA.  It was a motion to allow the accused to meet with his

2   counsel in the Expeditionary Legal Center rather than the

3   legal -- or rather than their usual meeting location.

4           On 25 October 2017 I denied Appellate Exhibit 369AAA

5   in Appellate Exhibit 369OOOO.  In that ruling, I noted while

6   denying the motion, I certainly didn't object to the defense

7   utilizing the courtroom, or frankly any room, for

8   attorney-client meetings as that is something that they need

9   to work out with the confinement facility.  It is not

10  something for me to be involved in in most instances, and I

11  have stayed out of it, as you all know, because I don't run

12  this facility.  I would note there have been many meetings

13  here in the ELC between the defense counsel and their client

14  in this case.

15          On 4 October 2017 this commission issued Appellate

16  Exhibit 388, a docketing order setting forth the issues to be

17  addressed at this session.  Some of the issues that we're

18  going to address include the issues related to the deposition

19  of Mr. al Darbi, the deposition of Mr. al Darbi, testimony of

20  witnesses that we have ordered in 327E, and testimony of

21  witnesses regarding the preadmission of evidence authorized in

22  207C.

23          On 6 October 2017 Mr. Kammen, Ms. Eliades and

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    Ms. Spears submitted a request to the chief defense counsel to

2    withdraw from their representation of the accused.  Their

3    justification relied in significant part upon the chief

4    defense counsel's 14 June memorandum and a 5 October 2017

5    ethics opinion from Professor Ellen Yaroshefsky.

6          On 11 October 2017 the chief defense counsel notified

7    Mr. Kammen, Ms. Eliades and Ms. Spears that he had accepted

8    their request to withdraw from representing the accused, and

9    he released them for good cause shown on the record.

10          On 13 October 2017 the defense provided notice to the

11   commission of this purported withdrawal.

12          On 16 October 2017 the detailed defense counsel filed

13   Appellate Exhibit 389, a motion to abate proceedings pending

14   the detailing of a new learned counsel.  On the same day this

15   commission issued Appellate Exhibit 389A -- just a second to

16   find my way in my notes -- which reiterated that Mr. Kammen,

17   Ms. Eliades and Ms. Spears remain counsel of record in the

18   case; ordered Mr. Kammen, Ms. Eliades and Ms. Spears to appear

19   at the next scheduled hearing of this commission unless

20   excused by me or the commission, invited the chief defense

21   counsel to file pleadings as to his perceived authority to

22   unilaterally and unreviewably excuse counsel, and set a

23   compressed briefing schedule.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10024**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1        Between 20 October and 26 October 2017, the

2    government and the chief defense counsel filed pleadings

3    responsive to Appellate Exhibit 389A.

4        On 27 October 2017 this commission issued 389F

5    denying the abatement motion and specifically finding the

6    following:

7        One, no good cause exists to warrant the excusal of

8    Mr. Kammen, Ms. Eliades or Ms. Spears.

9        Two, no evidence has yet been presented to

10   demonstrate intrusions in this case affecting this accused

11   which would ethically require withdrawal or disqualification

12   of outside appointed learned counsel.

13       And three, the excusal of outside appointed learned

14   counsel at this stage would prejudice Mr. al Nashiri's due

15   process rights.

16       On the morning of 28 October 2017 the chief

17   prosecutor e-mailed the chief defense counsel attaching the

18   commission's ruling in Appellate Exhibit 389F and requesting

19   the chief defense counsel notify the government and commission

20   of the chief defense counsel's steps to ensure civilian

21   attorney compliance with applicable law and regulation by

22   participation in the R.M.C. 802 conference scheduled for

23   Sunday at 1700 and then being present for the next session on

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  the record today, the 31st of October, Monday morning -- or

2  yesterday, sorry, the 30th of October, Monday morning.

3          On the afternoon of 28 October 2017 the chief

4  prosecutor again e-mailed the chief defense counsel asking for

5  acknowledgment of receipt, making clear that suitable

6  arrangements were in effect to facilitate travel and

7  providing: "I trust that you are considering the very real

8  disturbance and disorder to the military commissions

9  proceedings that will be caused if they do not appear by the

10 continuing impact of your purported excusal of them."  The

11 chief defense counsel acknowledged receiving the e-mail on

12 28 October 2017.

13         On 29 October 2017 at 0610 hours on the morning of

14 the scheduled departure to Guantanamo Bay, Cuba, the chief

15 defense counsel advised the chief prosecutor that he had been

16 informed that Mr. Kammen, Ms. Eliades and Ms. Spears do not

17 intend to travel to Guantanamo.  That information was not

18 provided to the commission until after the charter flight had

19 landed at Guantanamo Bay.

20         On 29 October 2017, after we had arrived at

21 Guantanamo Bay, I conducted a session pursuant to the Rules

22 for Military Commission 802, and that is when I directed the

23 submission of the filings by 1200 on 30 October 2017

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  addressing the way forward that I discussed earlier.

2      As mentioned, detailed defense counsel submitted an

3  e-mail to my support staff by which he indicated the defense

4  position was that substantive proceedings cannot occur without

5  the presence of learned counsel.  Through my staff, I reminded

6  the detailed defense counsel that I expected written pleadings

7  to be filed by the parties.  And maybe I wasn't clear in the

8  802 session, so I will clear it up here in a little while.

9      Detailed defense counsel submitted a second e-mail.

10  In this e-mail he stated because learned counsel is not

11  present, the defense will not be making any new filings.  I

12  would point out that the detailed defense counsel made a

13  filing in the case with just his signature on it where he

14  requested an abatement.

15      So that's where we are at and how we got here thus

16  far.

17      So first a couple questions as we kind of work

18  through the road ahead.  Obviously we are going to call

19  General Baker here, and I have some questions for him, and I

20  will turn it over to both sides if they have any questions for

21  him.

22      One, I hope that the unclassified attachment, and I

23  believe it's -- let me find my note on that so I have it

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10027**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  right.  You will know it right away; it is the unclassified

2  attachment wherein learned counsel -- it's Attachment A to the

3  original 389, where the learned counsel detailed to the ethics

4  advisor, who we will talk about as well, what his concerns

5  were.  It is unclassified, and so I'm not going to ask your

6  client if you provided it to him, but I sure would hope you

7  provided it to your client so he understands, at least to the

8  point that is allowed, why we are here; along with an

9  unclassified decision or opinion by the ethics advisor.  So

10  again, I'm not going to ask.  That is up to you-all, but I

11  would do that.

12      The other piece is I would get familiar with

13  Strickland, and I would get familiar with learned counsel

14  being available to the extent practicable, because we are

15  moving forward this week.  We are going to have a witness

16  testify on Thursday or Friday that came down on the flight,

17  and next week we are going to be moving through the al Darbi

18  deposition issues and through the al Darbi cross-examination,

19  and then we are going to move into the other things that are

20  on the docket.

21      And I would suggest if anyone disagreed with my

22  ruling on an abatement that they file a writ.  We all know the

23  process here, and I don't have to explain it.  But that

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10028**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  doesn't really get to some of the questions I need answered so

2  we can move forward.  I see General Baker is here.

3        Trial Counsel, if you would swear General Baker in

4  and ask the initial questions.

5        [MR. SUNDEL]:  Colonel, Philip Sundel with the ----

6        MJ [Col SPATH]:  Come on up here.

7        So you are not an attorney of record for

8  Mr. al Nashiri.  So what is your position?

9        [MR. SUNDEL]:  I am not, sir.  I am Acting General Counsel

10  for the Military Commissions Defense Organization, and I'm

11  just here to inform the military commission that pursuant to

12  Rule 501(b)(1), the chief defense counsel is invoking

13  privilege and will not testify.

14       MJ [Col SPATH]:  Well, he will come up and invoke

15  privilege to each question I ask and then I will rule on

16  whether or not that information is privileged or I'm going to

17  pierce it.  And I have some questions where he has filed an

18  affidavit, clearly waiving any privilege that he might be

19  claiming, because he filed it to the commission.

20       [MR. SUNDEL]:  Your Honor, under 501(b)(1) he is invoking

21  his right to not testify.  The extent of the nonprivileged

22  information has already been provided to the court.  He has

23  nothing to add.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10029**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [Col SPATH]:  And again, he will be able to say he is
2  not testifying to each question, just like we would do anyone
3  invoking their Fifth Amendment right.  He can say it to each
4  question if he wants to.  But I would suggest that y'all have
5  an honest discussion with yourselves about what is privileged
6  and what is not when you file an affidavit and make yourself a
7  witness about factual matters.
8         There are questions about that that don't involve
9  discussions, don't involve attorney work product; they
10 involve:  Did you do this?  Pretty easy.  Is your signature on
11 it?  And I also have some direction for him.
12        So he is going to come and get sworn in and testify.
13 You are welcome -- you can sit right there and you are welcome
14 to advise him if you disagree as we move forward.  But I don't
15 plan to ask him anything that is even close to privileged
16 information.  However ----
17   [MR. SUNDEL]:  Colonel, under 5 ----
18   MJ [Col SPATH]:  ---- is not representing the accused in
19 this case and he made himself a witness by issuing a ruling,
20 and a decision, to excuse counsel.  And you know that.
21   [MR. SUNDEL]:  Under 501(b)(1) ----
22   MJ [Col SPATH]:  I appreciate you're going to keep saying
23 that.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10030**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    [MR. SUNDEL]:  ---- he is refusing to be a witness.  It is

2  not an invocation that needs to be made on the stand.

3    MJ [Col SPATH]:  That is your interpretation ----

4    [MR. SUNDEL]:  He is electing to refuse to be a witness.

5    MJ [Col SPATH]:  That is your interpretation.  Apparently

6  you all struggle with this.  I get to interpret the law and I

7  get to rule.

8    [MR. SUNDEL]:  Your Honor, if you ----

9    MJ [Col SPATH]:  I get to interpret it.  That is how it

10 works.  And that is how it works anywhere.  This isn't some

11 weird session, even down here, and I know you all do that.

12 This is a normal proceeding.  And I am telling you that while

13 I appreciate what you are saying, he has filed, in this case,

14 making statements.  That makes him different than someone who

15 has been quiet as a defense counsel.  That makes him

16 different.  He has chosen to make himself a witness in this

17 case.  I didn't choose that.

18    [MR. SUNDEL]:  Colonel, if you find that he has improperly

19 invoked his right to not be a witness, then we will take an

20 appeal, and he will not act as a witness until the appeal is

21 decided.

22    MJ [Col SPATH]:  That is not one of the options, as you

23 know.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10031**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1      [MR. SUNDEL]:  We disagree.

2      MJ [Col SPATH]:  You may go file a writ and you may

3  attempt to get a stay, if the court grants it.  I'm very

4  amenable to the appellate courts.  I've listened to them

5  frequently in my life and I have no problem.  And that seems

6  to be the difference.  When I get ordered by a court to do

7  something, I just do it, and then I take what action I can.

8          So if you look down at this, what is your belief that

9  he can simply refuse an order to come up here and testify?

10     [MR. SUNDEL]:  Colonel, the harm of a privilege being

11  wrongfully pierced ----

12     MJ [Col SPATH]:  What is your authority?

13     [MR. SUNDEL]:  ---- is irrevocable, so he is entitled to

14  take an appeal from an order to testify despite a claim of

15  privilege, especially in open ----

16     MJ [Col SPATH]:  What is your authority for that?

17     [MR. SUNDEL]:  ---- court and subject to questioning by

18  parties.

19     MJ [Col SPATH]:  What's your authority to do that?  What's

20  your authority to that other than ----

21     [MR. SUNDEL]:  My authority to that ----

22     MJ [Col SPATH]:  ---- other than the rule that you cited

23  multiple times?

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    [MR. SUNDEL]:  My authority to that is the Model Rules of

2    Professional Responsibility that say that an attorney is

3    obligated to pursue vehicles to challenge an order to pierce a

4    privilege until the highest court has decided the issue or

5    refused to accept the issue.

6    MJ [Col SPATH]:  And again, I haven't pierced any

7    privilege yet.  You -- you are way ahead of the course ----

8    [MR. SUNDEL]:  Requiring him to be a witness after we have

9    invoked 501(b)(1), we believe, is the same thing.

10   MJ [Col SPATH]:  What authority ----

11   [MR. SUNDEL]:  There is too great a risk ----

12   MJ [Col SPATH]:  ---- do you have -- what case, what

13   authority, what citation, other than, again, pointing me to

14   the general rule, where I haven't asked him to pierce

15   privilege?  I have told you -- and are you his defense

16   counsel?

17   [MR. SUNDEL]:  I am the acting general counsel for ----

18   MJ [Col SPATH]:  I understand that.

19   [MR. SUNDEL]:  ---- the Military Commissions Defense

20   Organization.

21   MJ [Col SPATH]:  Are you his defense counsel?

22   [MR. SUNDEL]:  This is an institutional claim.

23   MJ [Col SPATH]:  And so if there is a privilege that I'm

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  piercing, I will be happy to talk to you about it, but I'm

2  not.  I'm not.  He filed things.  What ----

3       [MR. SUNDEL]:  The risk ----

4       MJ [Col SPATH]:  ---- basis -- what authority do you have

5  that you file something with the court and that privilege

6  isn't waived as to the information in the filing?  In the

7  filing.

8       [MR. SUNDEL]:  Colonel, as long as we have not disclosed

9  privileged information in the filing ----

10      MJ [Col SPATH]:  Right.

11      [MR. SUNDEL]:  ---- then we have not pierced the

12  privilege.

13      MJ [Col SPATH]:  I agree.  But do you understand that --

14  did you -- did you file this?  That is not privileged.  It is

15  yes or no.

16      [MR. SUNDEL]:  That is the extent of the nonprivileged

17  information.  There is nothing ----

18      MJ [Col SPATH]:  Again ----

19      [MR. SUNDEL]:  ---- to add in addition to that.

20      MJ [Col SPATH]:  ---- you haven't let me ask a question.

21  You've assumed that I'm trying to pierce a privilege that I'm

22  not.  You have also stepped into the mix of somebody who has

23  filed things both with the prosecutor -- he sent an e-mail to

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   the prosecutor.  Did you send the e-mail?  When you said

2   this -- right?  You said this publicly; thereby, no privilege,

3   I mean ----

4       [MR. SUNDEL]:  Colonel ----

5       MJ [Col SPATH]:  ---- you sent it to the chief prosecutor.

6       [MR. SUNDEL]:  ---- the government constantly files

7   pleadings.  That does not mean that no government information

8   is privileged.

9       MJ [Col SPATH]:  You are correct.

10      [MR. SUNDEL]:  The parties -- the parties do not waive a

11  privilege ----

12      MJ [Col SPATH]:  And the government lets me know

13  frequently when they are asserting privilege.  And then we

14  have a discussion about what we are going to do about that.

15  And frequently, it doesn't get disclosed.

16          All I'm saying to you is, under 501(d), you really

17  think you can say he is not testifying about nonprivileged

18  matters, so you are going to refuse an order from the

19  commission as well?

20      [MR. SUNDEL]:  Yes.

21      MJ [Col SPATH]:  Okay.  Well, I'm going to have General

22  Baker refuse it, because you are not his lawyer.  And I

23  appreciate your assertion.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1      CDC [BGen BAKER]:  Your Honor, can we take about a

2  five-minute recess?

3      MJ [Col SPATH]:  Sure.  We are in recess.

4  [The R.M.C. 803 session recessed at 1028, 31 October 2017.]

5                    [END OF PAGE]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  [The R.M.C. 803 session was called to order at 1042,

2  31 October 2017.]

3      MJ [Col SPATH]:  The commission is called back to order.

4  The same parties who were present before are again present.

5          Mr. Sundel.

6      [MR. SUNDEL]:  Philip Sundel again.

7      MJ [Col SPATH]:  Is it Colonel or Mr. Sundel?

8      [MR. SUNDEL]:  No, no, no.  It's Mister.  I'm sorry.

9      MJ [Col SPATH]:  No, that's all right.  I want to make

10  sure I hear you correctly.

11      [MR. SUNDEL]:  We believe that ----

12      MJ [Col SPATH]:  I understand.  Here's the issue:  You're

13  not a party of record.  There has been no filing from you

14  telling me that you want to appear.  I don't know how you have

15  standing to be here, and so I can't help you right now.  What

16  you are doing is getting yourself cross-wise where there is no

17  order for you to violate.

18          General Baker is ordered to come testify.  If he

19  refuses the order, we will deal with it.  You are not his

20  defense counsel, you are not Mr. al Nashiri's lawyer, and you

21  haven't entered an appearance; and so you have no right of

22  standing.  So go take your seat.

23          Trial Counsel, swear General Baker in and ask the

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10037**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1 preliminary questions.

2     TC [MR. MILLER]:  General Baker.

3     CDC [BGen BAKER]:  Sir, before we do that, can I offer a

4 potential way ahead?

5     MJ [Col SPATH]:  Sure.

6     CDC [BGen BAKER]:  I am very concerned about getting into

7 privileged material, and I'm also concerned about the

8 complexity of the area of law of privilege.  I mean, we are

9 talking about ----

10    MJ [Col SPATH]:  I understand that.

11    CDC [BGen BAKER]:  So it -- it could be -- it could help

12 us, all of us, get there if I knew basically what you wanted

13 to ask so that we can figure -- you know, we can figure out

14 the way forward.

15    MJ [Col SPATH]:  You can take all the pauses you want.

16 And I don't even mind if you talk to the attorneys back there

17 if you have confusion or are worried about my questions.  I

18 would hope over the time you have sat in this courtroom you

19 know that I recognize the importance of privilege ----

20    CDC [BGen BAKER]:  Yes, sir.

21    MJ [Col SPATH]:  ---- and recognize the importance of the

22 orderly administration of this.

23    CDC [BGen BAKER]:  I do, sir.  And I suggest ----

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [Col SPATH]:  I appreciate that.  And so I have the

2    same issue.

3    CDC [BGen BAKER]:  I just ----

4    MJ [Col SPATH]:  You are not an attorney of record.

5    CDC [BGen BAKER]:  I get that.  I just suggest that an

6    orderly process would be to know the subject areas that you

7    want to go so that we don't question, stop, 15-minute break,

8    question, stop.

9    MJ [Col SPATH]:  I understand.  I have worked on these

10   questions for quite some time, and I believe they are very

11   carefully crafted.

12   CDC [BGen BAKER]:  Well, Your Honor, pursuant to Rule

13   501(b)(1), I am asserting my right to refuse to be a witness

14   in this case.

15   MJ [Col SPATH]:  You do understand that that means there's

16   an actual claim of privilege over the questions I'm asking

17   you, not an absolute right not to testify?  Do you understand

18   that?

19   CDC [BGen BAKER]:  I have -- and I will confess to having

20   done more than read the rule.

21   MJ [Col SPATH]:  Look above.  What privilege are you

22   claiming?

23   CDC [BGen BAKER]:  The deliberative process privilege,

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  which is a common law privilege; the government information

2  privilege under 506; the attorney-client privilege under 502;

3  the attorney work product privilege under common law; and,

4  additionally, my obligation under my state ethics rules to

5  protect confidential information under Rule 1.6.

6          Again, Your Honor, this is super complicated.

7      MJ [Col SPATH]:  This isn't.  You have filed things here.

8  Here is the bottom line:  You are ordered to come testify.

9  You can pause before you answer questions.  You can assert a

10 privilege and tell me which one, not a blanket this one, this

11 one, this one, this.  Each question, if you think there is a

12 privilege, you assert it, and then we will deal with whether

13 or not we get around it.

14         Your appellate counsel has said I have to wait until

15 the Supreme Court rules on it.  That's silliness.  That's not

16 how it works.  I've ordered the disclosure of privileged

17 information right here.  And I'm not suggesting I'm going to

18 do that, because I don't need privileged information to ask

19 you the questions I'm going to ask you and issue the order to

20 you I'm likely to issue.

21     CDC [BGen BAKER]:  Your Honor, the -- you keep saying that

22 this filing makes me a witness.  This is an averment of facts

23 that any ----

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [Col SPATH]:  And you filed it with your name.

2    CDC [BGen BAKER]:  -- in response to a request from you --

3  yes, absolutely.

4    MJ [Col SPATH]:  With your name.

5    CDC [BGen BAKER]:  And in any pleading that anybody files,

6  the lawyer that files that does not become a witness.

7    MJ [Col SPATH]:  You're not an attorney of record.

8    CDC [BGen BAKER]:  Your Honor, this was filed in response

9  to your invitation.

10    MJ [Col SPATH]:  If you wanted to.  You also have sent

11  e-mails to General Martins ----

12    CDC [BGen BAKER]:  Absolutely.

13    MJ [Col SPATH]:  ---- that have been attached.  You also

14  have excused counsel.  Not privileged there.  Maybe some of

15  the discussion you had with those counsel, they may or may not

16  be privileged.  That's a debate we could probably have.  But I

17  don't care what your discussions were.  I don't plan to ask

18  you about your discussion.

19      I plan to ask about the affirmative acts you took in

20  this case that are public knowledge and have been reported

21  both in the press and here through e-mail.  That is not

22  privileged.  Those are acts you took affecting this case.

23      And again -- and I plan to issue you an order from

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10041**

267 of 38 PageID #: 267

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  the commission.  You can choose to accept it or not and go

2  from there, but we're not going to spend all day doing this.

3     CDC [BGen BAKER]:  Your Honor, again, under Rule 501(b)(1)

4  I refuse to appear as a witness.

5     MJ [Col SPATH]:  All right.  So, I'm ordering you to

6  testify.  You are refusing to come up here, take the oath, and

7  testify; is that accurate?

8     CDC [BGen BAKER]:  That is accurate; yes, sir.

9     MJ [Col SPATH]:  All right.  I'm also ordering you to

10 rescind the direction you gave when you excused both learned

11 outside -- appointed learned counsel and the two civilians.

12 Are you refusing to comply with that order as well?  You

13 excused them; you released them.

14    CDC [BGen BAKER]:  Yes, sir.

15    MJ [Col SPATH]:  I'm ordering you to send them a note

16 saying you are not releasing them.  I can't order Mr. Kammen

17 here.  I know that.  I know you've got two DoD employees that

18 work for you.  I know what their government contract says.

19 But that is your choice as their supervisory attorney, and

20 everybody can deal with that, including your supervisor.

21       My question to you is:  I'm ordering you to send them

22 a memo telling them their withdrawal is not approved because

23 you don't have the authority.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10042**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    CDC [BGen BAKER]:  Oh, I'm definitely not going to ----

2    MJ [Col SPATH]:  Okay.

3    CDC [BGen BAKER]:  ---- I am definitely not -- Your Honor,

4    Rule 5-0 -- I understand your ruling.  I understand your

5    ruling.

6    MJ [Col SPATH]:  You don't, because you haven't done

7    anything to fix the ruling.  How does this normally work?  I

8    issue a ruling.  You disagree with it -- or you all disagree

9    with it and we go to the appellate court and they tell me I'm

10   right or wrong.  They do it every week.  And I'm okay with it.

11   That is the normal process.

12        You interpreted a rule, and now there are two rulings

13   from this commission that tell you you got it wrong.

14   CDC [BGen BAKER]:  Your Honor, if your -- if your order to

15   me is to -- I want to make sure that I understand what -- your

16   order to me.  If your order to me is, General Baker, you must

17   rescind your action that you took on October 13th ----

18   MJ [Col SPATH]:  Yes.

19   CDC [BGen BAKER]:  ---- whatever the date -- whatever the

20   correct date is, excusing learned counsel and assistant

21   defense counsel, I refuse to follow that order.

22   MJ [Col SPATH]:  And you are also refusing to testify.

23   CDC [BGen BAKER]:  Yes, sir, pursuant to ----

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10043**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1      MJ [Col SPATH]:  I understand you are citing a rule.  I

2  have ordered you to come up here and testify and take the

3  oath.

4          Okay.  We'll talk more tomorrow.

5          Lieutenant Piette, I probably wasn't clear in the 802

6  session, so I'm going to make it reasonably clear.  I expect a

7  filing.  You can write "I'm not going to answer," you can

8  write whatever you want, but it goes on a heading so that it

9  is part of a record of trial that is public as opposed to an

10  e-mail to my staff.  And maybe I didn't say that as clearly as

11  I should have at the 802 session.

12          So we have an AE number designated for your filing.

13  You have until 1600 today to issue a file -- or send a filing

14  in using that AE number in our 389 series.  I can't be more

15  clear than that.  Do you understand?

16      DDC [LT PIETTE]:  Yes, sir, I understand your order.

17      MJ [Col SPATH]:  All right.  On Thursday -- we had a

18  witness travel down here.  General Baker, the other, I think,

19  order -- again, you can certainly refuse to follow it -- is I

20  expect you to make arrangements for the two detailed military

21  civilian -- or detailed civilian counsel, since you are their

22  supervisor and they're employed by DoD, I expect you to

23  communicate to them the need to get themselves down here

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10044**

1  posthaste.

2      CDC [BGen BAKER]:  I understand your order.

3      MJ [Col SPATH]:  Are you going to communicate that to

4  them?

5      CDC [BGen BAKER]:  I need to think about that, Your Honor.

6  And ----

7      MJ [Col SPATH]:  That's fine.  Just let me know by 1600.

8  You can send an e-mail -- since you are not a party of record,

9  send an e-mail to the staff and let me know if you are

10 communicating it to them or you are not.

11     CDC [BGen BAKER]:  Aye, sir.  And if I communicate with

12 your staff, I will obviously copy the parties.

13     MJ [Col SPATH]:  I understand.  Do you believe -- well,

14 you won't answer any question so we can't even satisfy whether

15 or not you have supervisory authority over Mr. Kammen, because

16 you have decided not to testify about administrative matters;

17 your choice.

18         To the extent you believe you have supervisory

19 authority over Mr. Kammen, I expect you to communicate to him

20 we're moving forward, and that he would wisely probably also

21 make an effort to come here.  But I understand I can't order

22 him to this island.  There is nothing I can do about that.

23     CDC [BGen BAKER]:  I understand, Your Honor.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [Col SPATH]:  Same e-mail by 1600.  Just let us know if

2  you are going to comply.

3         All right.  Tomorrow at noon we are going to be in

4  session briefly.  I anticipate we are going to have a contempt

5  hearing.

6         And then Thursday, 0900, we are going to start with

7  the witness who traveled down here.  And we will do some other

8  administrative matters Thursday and Friday.

9         Tuesday next week we'll start the cross-examination

10  of al Darbi in the closed deposition, and we will just see

11  where we are after that.

12         Trial Counsel, what do you want to talk about?  And I

13  will give it to you too, Defense Counsel.

14    ATC [Maj PIERSON]:  Your Honor, prior to proceeding with

15  the cross-examination, the government does believe we will

16  still need a hearing under M.R.E. 505(h) as to classified

17  information that may be used as part of the cross-examination.

18    MJ [Col SPATH]:  Makes sense.  We will do that on Monday.

19    ATC [Maj PIERSON]:  Thank you, Your Honor.

20    MJ [Col SPATH]:  Defense Counsel?  I feel sorry for the

21  position you have been put in.

22    DDC [LT PIETTE]:  Roger that, Your Honor.

23         Respectfully, and this is regarding the order you

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10046**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  gave to have a filing by 1600.  And I want to give the court a

2  heads up that it is my position, it is the defense's position

3  that right now Mr. al Nashiri has the statutory right to

4  learned counsel at all ----

5  MJ [Col SPATH]:  You can stop.  It says to the extent

6  practicable.  I've already interpreted the statute.  I mean,

7  that's simple for me.  To the extent practicable he can have

8  learned counsel on matters of capital litigation.

9  What I'm talking about is a filing telling me what

10  our proposed way ahead is now that he is not here.  And what

11  I'm talking about is your ability to do cross-examinations,

12  which you have done before, direct examinations, which you

13  have done before, and pretrial information and motions, which

14  you have done before.

15  If I'm wrong, your client will get a windfall because

16  I have ordered us to move forward without learned counsel.

17  But if you refuse, you too, at noon tomorrow, will be here for

18  a contempt hearing.

19  DDC [LT PIETTE]:  Yes, Your Honor.

20  MJ [Col SPATH]:  It's that simple.  I've already

21  interpreted, and there will be a ruling, based on the

22  government's filing, about the ability to have learned

23  counsel.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1       The chief defense counsel has decided that

2   Mr. al Nashiri does not need defense counsel here.  That's his

3   choice.  To the end -- in his filing, said it is not

4   practicable to get them here.  Well, the law discusses just

5   that.  It isn't practicable, and we are not going to wait

6   right now.

7       Hopefully, by the time we get to any findings case,

8   we will have learned counsel to assist you, or more counsel.

9   But we are going to continue to move forward.  And if we need

10  to come back and redo some things, we've got all the time in

11  the world, as we've demonstrated for the last nine years.

12      So again, you are detailed counsel, and I have

13  interpreted the rule.  So you can defy the order to be here;

14  you can sit here and do nothing.  I would read <u>Strickland</u> and

15  some other cases where we have had defense counsel who feel

16  like you do, a judge's ruling was unfair and they didn't like

17  it so they didn't engage in an opening statement, closing

18  argument, crosses of witnesses, directs of witnesses, or

19  filing motions.  And the appellate court said that is a

20  strategy.  It's a strategy that may well work, but it didn't

21  work here, and they didn't find the counsel ineffective.

22      So that is your choice, and that is your issue.

23      DDC [LT PIETTE]:  Yes, I understand, Your Honor.  And as

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10048**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  the only counsel in this room who has been detailed

2  specifically to defend Mr. al Nashiri, I aim to defend him.

3  And I cannot do that without a learned counsel because, by

4  statute, he has to have one.

5      MJ [Col SPATH]:  We have already dealt with that.

6      DDC [LT PIETTE]:  Yes, Your Honor.

7      MJ [Col SPATH]:  The issue is resolved.  You are welcome

8  to file a writ.  You've got your chief appellate counsel here,

9  apparently, to make an appearance on the record to a case that

10  he's not detailed to.  I would file a writ, and maybe the

11  C.M.C.R. will step in quickly, or maybe they won't.  Maybe

12  three weeks from now they will step in and say, Spath, you got

13  it wrong again, like I have twice already.  Sorry.  And we

14  will come back and do it again.

15      But again, your order is easy.  We will be here

16  Thursday -- we will be here at noon tomorrow and we will be

17  here Thursday with the government's witness, who flew down

18  here on an airplane.  You can engage in the direct or you can

19  waive it affirmatively on the record.  But again, I would read

20  those cases after Strickland, understand where we are at, and

21  understand that I find learned counsel are not practicable in

22  the near term, if ever, by the actions of General Baker.

23      And again, maybe you have set your client up for

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1 success if there is a conviction and the appeal will be a lot

2 easier for you.

3     DDC [LT PIETTE]:  Yes, Your Honor, I understand.  But just

4 as a ----

5     MJ [Col SPATH]:  We're done.

6     DDC [LT PIETTE]:  No.

7     MJ [Col SPATH]:  Thursday, they are calling a witness, and

8 we are getting underway.

9     DDC [LT PIETTE]:  I understand, Your Honor, and I will be

10 here ----

11     MJ [Col SPATH]:  Noon tomorrow.

12     DDC [LT PIETTE]:  ---- but what I am not going to do is

13 make any more pleadings, because I see the slippery slope that

14 happens when I make a motion ----

15     MJ [Col SPATH]:  So in response to the pleading, you are

16 not going to file one?

17     DDC [LT PIETTE]:  That's correct, Your Honor.

18     MJ [Col SPATH]:  You are going to defy my order?

19     DDC [LT PIETTE]:  Yes, Your Honor.

20     MJ [Col SPATH]:  Okay.  Then noon tomorrow I will see the

21 three of you.

22     DDC [LT PIETTE]:  Thank you.

23     MJ [Col SPATH]:  All right.  We are in recess.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

 1   [The R.M.C. 803 session recessed at 1059, 31 October 2017.]

 2                        [END OF PAGE]

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10051**