# Exhibit L

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  **[The R.M.C. 809 session was called to order at 1215,**

2  **1 November 2017.]**

3      MJ [Col SPATH]:  Okay.  These commission proceedings and

4  these contempt proceedings are called to order.  All the

5  parties who were present yesterday are again present for this

6  session.

7          This session is being conducted both as part of the

8  normal commission process and pursuant to 10 U.S.C. Section

9  950t.  Due to the nature of the conduct at issue, the

10  proceedings under 10 U.S.C. Section 950t are summary

11  proceedings conducted in accordance with Rule 809(b)(1) and

12  809(c) of the Rules for Military Commission.

13          Let me go through a few other parties.  Brigadier

14  General Baker, the chief defense counsel, is present.

15  Lieutenant Piette, I understand that General Baker is now

16  represented by Colonel Hitesman from the United States Marine

17  Corps.  Do you know if Colonel Hitesman is present?

18      DDC [LT PIETTE]:  I have no representations, Your Honor.

19      MJ [Col SPATH]:  All right.  Thank you.  Mr. Philip

20  Sutherland **[sic]**, the acting general counsel for the Military

21  Commissions Defense Organization, is also present.

22      DDC [LT PIETTE]:  Sundel, Your Honor.

23      MJ [Col SPATH]:  Sundel.  Thank you.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    Just some general comments about yesterday and the

2   process that brought us here.  We already went through the

3   findings of fact yesterday, but as they indicated, I've ruled

4   on two occasions that General Baker acted in a manner outside

5   his authority.

6    His decision to approve a requested release of

7   counsel for good cause, or release counsel for good cause

8   shown on the record, as stated by him, was unreviewable and

9   unilateral, and that flies in the face of commonsense judicial

10   review, as far as we can tell, every states' bar rules, court

11   precedent and two orders of the commission.

12    For defense counsel to have the authority stated by

13   the chief defense counsel would effectively give the defense

14   counsel the ability to dismiss any commission case or any

15   criminal case at any stage in the process for any reason when

16   they determine good cause, and then refuse to testify in court

17   to even explain what the good cause shown is, other than what

18   is submitted in written form.

19    CDC [BGen BAKER]:  Your Honor, at this point I want to

20   object to the proceedings.

21    MJ [Col SPATH]:  General Baker, you're not a party of

22   record and we're moving forward.  You need to take your seat.

23    CDC [BGen BAKER]:  I just want ----

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [Col SPATH]:  General Baker, you need to take your

2    seat.

3    CDC [BGen BAKER]:  I again object.  This court does not

4    have personal jurisdiction over me.

5    MJ [Col SPATH]:  I appreciate that.  We certainly have

6    considered that, and I disagree.  And I'm not even going to go

7    through why I disagree with that.  I would suggest reading

8    950t and the language that precedes every single rule until

9    you get to (31) and (32).

10   CDC [BGen BAKER]:  Your Honor, I just want to make sure

11   that you are denying me the opportunity ----

12   MJ [Col SPATH]:  I'm denying you the opportunity to be

13   heard.  Thank you.  It's a summary proceeding.

14   CDC [BGen BAKER]:  I understand.  I just want the record

15   clear.  There's things that I want to say, and you're telling

16   me that I cannot say them.

17   MJ [Col SPATH]:  General Baker, this is the last chance.

18   I don't want to -- this is really not a pleasant decision.

19   And I know that some of you might think that this is fun or

20   lighthearted, right?  I've heard commentary out around the

21   base.  Alls you've got to do is get on the Internet.  None of

22   this is fun.  None of this is easy.

23          I have spent a lot of time reviewing the rules that

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT**

1  apply to this commission, and I appreciate -- General Baker,

2  no more.  Sit down, please.

3      CDC [BGen BAKER]:  Your Honor, I have spent a lot of time,

4  too.

5      MJ [Col SPATH]:  I have spent a lot of time as the judge.

6  And any system of justice understands that, except apparently

7  participants in the commission, about following orders and

8  following a process.  I know there's a habeas filed.  If we

9  get the suspension in here in time, I'll stop.

10      Do you know what I won't do?  I won't tell that judge

11  I'm not going to follow your order, because I know better.

12  I'm going to ignore that order and press on because I disagree

13  with you.  That's not going to happen.  And so if that order

14  comes in and this is suspended, I will stop.

15      CDC [BGen BAKER]:  Your Honor, again, I request to be

16  heard.

17      MJ [Col SPATH]:  General Baker, I don't want to have to

18  have you removed.

19      CDC [BGen BAKER]:  I got it, sir.

20      MJ [Col SPATH]:  And I don't want to add to the contempt

21  findings.

22      This is a difficult, unpleasant decision, and

23  frankly, it's an affront to the process of justice that we

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  have to go through it.  But here we are, and we're going to

2  figure out a way to do it fairly and judiciously.

3          Yesterday also saw General Baker refuse to testify,

4  and also saw Mr. Sundel -- not a lawyer for the accused,

5  without a notice of appearance and without a written request

6  to be heard, asked to be heard.  I allowed it.  I granted it.

7  And then I found out it was, frankly, a specious claim of

8  privilege under M.C.R.E. 501(b)(1).

9          M.C.R.E. 501(b)(1) is modeled after the Federal Rule

10  of Evidence 501(b)(1), the Military Rule of Evidence 501(b)(1)

11  and, frankly, the Model Rules of Evidence that almost any

12  accredited ABA law school uses in teaching privilege.

13          Allowing for every witness simply to refuse to

14  testify because they claim any privilege under the sun would

15  stop every process cold, and everybody knows that, too.  And

16  that's why no authority could be found for the proposition

17  that that's what 501(b)(1) stands for.  It didn't take long,

18  doing some basic legal research, to find a few obvious

19  conclusions about where we are.

20          One, the right to refuse to be a witness is different

21  than the right to refuse to testify.  As I stated, if the

22  assertions made yesterday were true, any criminal system or

23  tribunal would ground to a halt because every witness who

**UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT**

1  didn't want to testify would claim privilege.  But with regard

2  to a claim of privilege, the trial judge or the commission

3  judge is obviously the first arbiter of whether something is

4  even privileged; and then if it is privileged, by some chance,

5  whether or not it's going to be pierced for good cause.

6         The piercing of a privilege requires different

7  considerations, including different considerations for each

8  privilege.  The law has long held some are more important than

9  others.  A couple of examples, right, attorney-client versus a

10  government information privilege.  Different ways to pierce

11  those.  Or how about national security versus confidential

12  information?  Different levels of privilege.

13         But the piercing of an alleged privilege is first and

14  foremost a trial court decision, period.  If a judge

15  determines piercing of a privilege -- and I'll set aside the

16  national security privilege for a moment, as there are rules

17  there regarding an unauthorized disclosure of classified

18  information and a judge's inability to order that.  But other

19  than that, if a judge determines that a piercing of a

20  privilege is appropriate -- Mr. Sutherland's statement

21  yesterday about the ability to pursue a challenge to the

22  highest court in the land, or until the highest court refuses,

23  while technically accurate, ignores the fact that pursuing an

**UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   appeal does not necessarily stay the proceedings at a trial

2   level.  Again, something all the trial judges know.

3          A basic understanding of the rules makes it clear and

4   the contrary, again, would cause havoc in every system of

5   justice.  All you've got to do is read U.S. v. Bowser.  I use

6   it so often, when I'm talking to the government, about

7   piercing a privilege and the ability for a trial judge to

8   review privilege matters, but it stands for the same

9   proposition:  Trial judges are first and foremost the place

10  you go when dealing with privilege, because that's where you

11  start.  And again, if an appellate court wants to step in and

12  stay the proceedings, I'll stop.

13          Next, a foundational aspect of our system, any system

14  of criminal justice, not unique to the commissions, is that a

15  ruling from a judge at the trial level is binding and resolves

16  the issue, with very few exceptions, and the process continues

17  until and unless stopped by competent authority.

18          A good example is an Article 62 appeal.  The

19  government does have some time to file that appeal, and the

20  court will pause.  Typically writs, well within the trial

21  judge's discretion whether the trial judge is going to pause

22  or not pause and wait.

23          Superior courts can always step in and stop the

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10058**

1  process.  They have the ability to do it, and you all have the

2  ability to follow writs, habeas, and of course Article 62

3  appeals in the right instance.

4          As we headed here for trial, no writ had been filed

5  and no habeas action had been filed by the defense

6  apparently -- I realize that has changed as of today --

7  despite the obvious window of time to file those before we got

8  here.

9          The body of rules of everybody involved in this,

10  which I also had the pleasure of reading and applying to the

11  three civilians at issue, plus the chief defense counsel, all

12  require representation continue in any case when a tribunal

13  orders continued representation, even if good cause has been

14  shown on the record.  Those rules don't discuss how good cause

15  was shown, who granted the excusal, why the excusal was

16  granted.  They all say if a tribunal says you have to keep

17  going, you have to keep going, again, until and unless a

18  superior court intervenes.

19          The same bar rules also provide each of them

20  protections when acting consistent with a court order, i.e.,

21  it isn't misconduct for the attorneys to follow the order of a

22  court or a tribunal.  The misconduct is when you disobey.

23  Why?  Because, again, as you've probably noticed from this

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  theme, rules to the contrary cause disorder and havoc in any

2  system you've got, and that is exactly what is happening here.

3        Next, the manner of the defense community here has

4  shown flagrant disobedience in the face of, frankly, centuries

5  of precedent to the contrary, and that is a trial court issues

6  orders and you either appeal, you get a stay, or you get

7  assistance from a superior court.

8        The bedrock of any system is compliance with court

9  orders, followed by attempting to navigate evidence and appeal

10  for relief.  Many lawyers don't like rulings from trial

11  judges, but every lawyer knows you have to follow them almost

12  exclusively, without exception, until another court steps in.

13        Yesterday, to the extent I indicated you waive a

14  privilege by filing something -- I read the record.  It's not

15  quite what I said, but that doesn't seem to matter right now.

16  When a person sends e-mails to the chief prosecutor, takes

17  actions that stop a commission in their tracks and ignores

18  orders from the commission, that does subject them to testify.

19        General Baker, I've considered whether you should be

20  found in contempt of these proceedings summarily based upon

21  the following conduct, which occurred in my presence during

22  the commission:

23        One was your willful refusal to obey my order to

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  testify.

2       Two is your willful refusal to obey my order to

3  rescind your excusal of the three counsel.

4       I also considered your willful refusal to obey my

5  order to arrange for the travel of Ms. Rosa Eliades and

6  Ms. Mary Spears, two detailed DoD defense counsel, to travel

7  to Guantanamo Bay, Cuba.

8       I also considered your willful refusal to obey my

9  order to communicate to Mr. Richard Kammen, the appointed

10 outside learned counsel, that he travel to Guantanamo Bay,

11 Cuba.

12      The facts I witnessed here in open court and in front

13 of the commission I find beyond a reasonable doubt, as I

14 directly witnessed your conduct in the presence of the

15 commission, which is me.

16      I find:  One, on 31 October 2017 you willfully

17 refused to obey the commission's order to testify; and two,

18 that on 31 October 2017 you willfully refused to obey the

19 commission's order to rescind your excusal of counsel.

20      I do not find that on 1 November 2017 you willfully

21 refused to obey the commission's order to arrange for the

22 travel of Ms. Rosa Eliades and Ms. Mary Spears to Guantanamo,

23 or that you willfully refused to obey the commission's order

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10061**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   to communicate to Mr. Richard Kammen, the appointed outside

2   learned counsel, that he, too, should travel to Guantanamo

3   Bay, Cuba.  Those were done by e-mail with my staff and

4   outside of my presence.

5          I would note in that e-mail traffic you recused

6   yourself from your position as chief defense counsel in

7   relation to this case, suggesting you're in a conflicted

8   position and that you did continue to show that you believe

9   court orders are both optional and nonbinding on you.

10  However, the conduct was done outside the hearing and it's not

11  appropriate for a summary contempt proceeding, and so it's

12  done at this point and we're where we're at.

13         For commission proceedings, the only legal basis for

14  a contempt finding, if you read -- which I know many of you

15  have probably spent some time in, in 809, is that you would

16  have had to commit a disorder, General Baker, before the

17  commission.

18         The Rule for Military Commission 809 doesn't really

19  define disorder, nor does the statute.  So a good place to

20  look is case law, military -- the MCM, or the rules in the

21  MCM, and Article 48 of the Uniform Code of Military Justice,

22  to assist with the definition of contempt.

23         From 2008 until our current 2016 manual, the power of

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   contempt evolved.  One of the most significant additions was

2   that violating orders became a basis for contempt.  It was an

3   intentional expansion of the military judge's contempt powers.

4   Additionally, if you go back to 2008, there is a nonbinding

5   discussion, and it says that -- and this is to the Rule of

6   Court-Martial by the way, 809 -- it says neither civilian nor

7   military witnesses refusing to testify can be held in

8   contempt.  By 2016 the language related to military witnesses

9   was removed from the nonbinding, and that's important,

10  discussion.

11          Of course, here we have a witness who's here in the

12  courtroom, frankly, who has caused a significant disorder to

13  the process, violating the order to testify under oath.  These

14  are a different set of facts by far.

15          So I find, beyond a reasonable doubt, that on 31

16  October 2017 you willfully refused to obey the commission's

17  order to rescind your excusal and that that behavior was

18  contemptuous to the commission and it was in front of the

19  commission.

20          Your refusal to testify on multiple occasions in my

21  presence is also contemptuous and contemplated both by the

22  Manual for Courts-Martial and the Military Commissions Act as

23  an act of contempt and a disorder.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    I find beyond a reasonable doubt that your acts then

2    constituted disorders that disturbed these proceedings,

3    disorders that disturbed these proceedings significantly.

4    I would note that your approval of the withdrawal of

5    counsel, General Baker, has been determined to be an act

6    outside of your authority by this court, and as of yet no

7    superior court has disturbed that.

8    The two DoD civilian defense counsel and the outside

9    learned counsel have chosen to ignore orders to appear before

10   the commission.  But nonetheless, you refused to follow an

11   order from the commission flagrantly and in my presence.  As

12   I've stated so often, no system of justice can survive if the

13   behavior is tolerated and endorsed.

14   Put another way, your purported excusals of

15   Mr. Kammen, Ms. Eliades and Ms. Spears dated 11 October 2017

16   are null and void, and they have been since my written order

17   on 16 October 2017 and my follow-on written order dated 27

18   October 2017.

19   Mr. Kammen, Ms. Eliades and Ms. Spears remain

20   attorneys of record in the military commission and are ordered

21   to attend all sessions of this commission, unless properly

22   excused by me or an appropriate appellate court.

23   Furthermore, based on the representations in the

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   filings from you, General Baker, to the commission, I find
2   that Mr. Kammen, Ms. Eliades and Ms. Spears were aware of my
3   decisions and willfully chose not to attend these sessions.
4         These representations you made were your choice.  You
5   filed them, and they remain an obvious basis by which you
6   could be called to testify in this case to explain the good
7   cause and the issues surrounding their purported withdrawals.
8         For the parties, there is a written order forthcoming
9   to Mr. Kammen, Ms. Eliades and Ms. Spears.  It's going to
10  direct them to go to the Mark Center in Alexandria, Virginia
11  on 6 November 2017, where they may choose to present arguments
12  as to why they should be released from the representation of
13  the accused different than the arguments I've already heard,
14  and to allow them to continue to represent their client, if
15  they choose to, as these proceedings continue over the next
16  two and a half weeks.  They can do it from the Mark Center, or
17  they can come down here in person.  I can't force them to come
18  here.
19        Mr. Sutherland -- I keep calling you that, sorry --
20  Sundel, although you repeatedly indicated yesterday in open
21  court you'd refuse my order to have Brigadier General Baker
22  testify, you were speaking on behalf of, although not
23  representing, General Baker.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*
**10065**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    While you failed to notify the commission of your

2    appearance, you didn't file a request to be heard as a third

3    party.  You managed to refer to me as "Colonel" throughout the

4    process despite my title clearly as "The Commission" or "Your

5    Honor" or "Judge" or anything else indicating you respect that

6    you're in a courtroom.  And frankly, you made a mockery of the

7    rules that apply to appearing before the commission; I allowed

8    you to speak yesterday.  That's on me.

9    And so after I directed you to stop speaking and you

10   did and you sat down, while it's disappointing, concerning

11   conduct, you're not contemptuous; and I'm not finding you in

12   contempt.

13   Lieutenant Piette, I appreciate that you let us know

14   yesterday you were going to file what you were going to file,

15   and I appreciate that a filing was made by 1600.  While

16   refusing to follow what is clearly a legal order to put

17   something in a formal filing yesterday in my presence is

18   contemptuous conduct, and on its face could be found to be

19   contemptible behavior in the presence of a commission, I'm not

20   going to find you in contempt.  But I'm not going to put up

21   with it as we move forward.

22   Again, nobody, nobody believes that you can act that

23   way in a courtroom and there's no repercussions.  None of our

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  licensing authorities think so, none of our supervisory

2  attorneys think so, and thus far no superior court thinks so.

3  But we all make mistakes, and I appreciate that you came along

4  and filed the appropriate pleading.

5        I know your filing indicated you're going to sit and

6  do nothing if we move on, and that is a strategy.  It's a

7  strategy that has worked poorly for defense counsel in the

8  past.  It's a strategy that I wouldn't suggest or recommend.

9  I hope you talk to your client about it.  But you're going to

10  do what you want.

11       What we're going to move on to do are going to be

12  things that don't relate to capital sentencing or motions that

13  relate to capital issues.  We are going to continue to move on

14  with the things that you're experienced with in your time as a

15  judge advocate, foundations for evidence, cross-examine of

16  witnesses and the like.

17       Congress did not intend for learned counsel simply to

18  vacate the premises, abdicate their responsibilities, stop the

19  process, and yet still be critical for every part of the

20  system, or Congress would have set up a system that would

21  never have a hearing.  And again, we all can make jokes that I

22  don't think are appropriate about Congress doing things that

23  are confusing or we might not agree with what they do.  Not my

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   role.

2          When Congress acts, they intend to act.  What they

3   say they mean to say.  And when you read their rules and you

4   read the legislation, it is my job to interpret it in a manner

5   that makes sense when it's difficult to interpret.  Again,

6   pretty longstanding, normal process in any court that I've

7   seen.

8          So before I deal with the sentence and discuss where

9   we're at -- again, I am confident everyone has read Rule 809.

10  First, on Friday we're going to take up the witness who is

11  here related to Appellate Exhibit 327E.  If there's no

12  questions for the witness, the witness will be released and

13  depart back, I assume, to mainland.

14         On Monday, 6 November 2017, we're going to deal with

15  any 505 matters related to al Darbi.  And if there are

16  additional witnesses under 327E, because there are three other

17  witnesses, we'll take those up Monday or throughout next week.

18  I know I ordered four be made available at the request of the

19  defense, as I have now done on 26 occasions -- my count.  I

20  could be wrong on the numbers -- of witnesses made available

21  at defense request.  And they're available.  So we'll take

22  them next week.

23         We're also going to start and work through the

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10068**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  al Darbi cross-examination next week.  Again, Defense Counsel,

2  I guess you can say you have no questions, but he is available

3  for cross-examination, you were here for the direct

4  examination, and you have had the discovery.  I can't make you

5  ask questions.  It is a deposition.  We haven't resolved its

6  admissibility.  So again, your trial strategy is yours.

7         And after that we have Appellate Exhibit 207, the

8  preadmission of real evidence from the COLE.  That's simple

9  admission and admissibility of evidence, real evidence,

10  something every judge advocate understands, frankly in their

11  first trial.  And we're going to move forward with that.

12         This is just the defense, by the way, putting on -- I

13  mean, this is just the prosecution putting on their side of

14  this.  The defense counsel will have every opportunity to call

15  witnesses in the future and fight the foundational elements of

16  it.  But again, they're available for some cross-examination,

17  and I know you'll do whatever you think is best.

18         If there's no questions for Mr. al Darbi next week,

19  we're going to move to the 207 stuff reasonably quickly, so

20  make sure that -- Trial Counsel, for the government, let's

21  make sure we're ready to move smartly through the matters that

22  we have put on notice for.  The other stuff I put on the

23  docketing order we're not going to handle, the other motions

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT**

1   and the like.  That is enough.

2         But I'll tell you, when we come back in January,

3   because we have time scheduled in January, we're going to move

4   on through continued preadmission matters that the government

5   has put us on notice that they want to preadmit.  And we're

6   going to take up the four ordered CIA witnesses, no matter

7   where we are at that point with disobedience of three civilian

8   defense counsel.  I hope they choose to attend.

9         If learned counsel by then is deciding to participate

10  and has stopped violating the order of the court, we may

11  change what January looks like and what we deal with, of

12  course.  But if we're sitting where we are today, that's what

13  we're going to do in January, more preadmission from the

14  government.  And again, as I've said to the defense all along,

15  they'll have the opportunity to attack the foundation as we

16  move forward, and they're not losing that opportunity.

17        So just for the public, the way contempt proceedings

18  work under 809, the convening authority ultimately has to

19  approve, as they do any conviction, my finding of contempt, or

20  disapprove.  They also have to approve or disapprove the

21  sentence I adjudge.  However, confinement begins immediately

22  with and if there's designation of a place of confinement by

23  the convening authority, and here there is.

**UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    The convening authority communicated that the place

2    of confinement, if there is any confinement, is going to be

3    the on-island quarters of Brigadier General Baker.  He will

4    not be allowed to depart those quarters until the period of

5    confinement ends, the sentence is disapproved, or a new

6    location is designated.  He will be allowed to use the

7    Internet and the telephone, according to the convening

8    authority.  But a place of confinement has been designated.

9    And so the way the rule reads and works, and it's not

10   unique, is that confinement, if it's adjudged, begins

11   immediately.  I have had no conversations about my sentence in

12   this case with anybody.  That includes my staff.  I haven't

13   discussed it with them, I haven't highlighted it to anybody,

14   and I haven't told the convening authority what my plan was.

15   What I directed my staff to do is follow the process, which I

16   do so often, follow the process, and they did.

17   General Baker -- and again, this is -- I don't enjoy

18   this.  I don't enjoy it at my day job when I'm going through a

19   sentencing case with an accused.  I tell the trial judges no

20   one should enjoy imposing sentences on anybody.  It ought to

21   be the most difficult thing you ever do.  And it's

22   unfortunate, because it could have been avoided.  But

23   nonetheless, here we are.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10071**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    So, Brigadier General, this proceeding, this

2  commission, believing it does have jurisdiction over you based

3  on a clear reading of the rules and based on your contemptible

4  conduct, you're held in contempt, and you are sentenced to pay

5  the United States a fine in the amount of $1,000 and to be

6  confined for a period of 21 days.

7    I will do all I can to get the record to the

8  convening authority so they can take action or not take

9  action, disapprove or approve my sentence.  That's all I can

10  do.  I've discussed with the bailiff here and the people who

11  run confinement here, separate from the detainee confinement,

12  obviously, the regular confinement here on Naval Base

13  Guantanamo Bay.

14    And so when I recess, General Baker, the bailiff is

15  going to escort you back to this back hallway.  Confinement

16  officials will be back there to deal with your transport and

17  then to bring you to your room, where you'll stay until such

18  time as the convening authority acts or designates a different

19  place of confinement.  That's where we're at.

20    I know there's a writ filed.  We'll deal with it when

21  we hear anything from that court.  If we don't hear anything

22  from that court, Friday morning 0900, we'll deal with just one

23  witness, and it's the witness for 327E, as I mentioned.  And

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10072**

1   then we'll move into next week with al Darbi's deposition, the

2   classified issues, and then the 207 issues.

3         Trial Counsel, is there anything else for this

4   proceeding?

5       TC [MR. MILLER]:  Nothing from the government, Your Honor,

6   other than to reiterate that these proceedings were

7   transmitted by closed-circuit television to the locations

8   authorized in your order.

9       MJ [Col SPATH]:  I appreciate that.  Thank you.

10      TC [MR. MILLER]:  Nothing further.  Thank you, sir.

11      MJ [Col SPATH]:  Just a moment.  And then, Defense

12  Counsel, anything else for these proceedings?

13      DDC [LT PIETTE]:  No, Your Honor, other than that in

14  addition to the people who were here yesterday, we also have

15  Mr. Marc Dolphin, our investigator.

16      MJ [Col SPATH]:  And I appreciate that.

17        And I know -- I know you understand orders from the

18  commission.  It is meant with your best interests.  I know you

19  will do what you will do.  I meant what I said.  I appreciate

20  that you filed yesterday so that we didn't have other issues

21  with you.  I don't know if I would have done that or not.  I

22  really have tried to work through this in an open-minded,

23  reasonable manner.  But I appreciate that, and we'll see where

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  we are.

2      DDC [LT PIETTE]:  Yes, Your Honor.

3      MJ [Col SPATH]:  All right.  General Baker, the bailiff is

4  going to escort you back here and then move you to another

5  location while we await the -- I don't know how confinement

6  works at Guantanamo Bay, Cuba, because I have never dealt with

7  regular confinement at Guantanamo Bay, Cuba, obviously.  So

8  they are working through it.

9      But they, too, have heard the location, which is your

10  room, nowhere else.  And again, the convening authority will

11  let us know if they change the location that they have

12  designated for any period of confinement and if they

13  disapprove or approve the contempt proceeding, which we will

14  get that record to them as quickly as we can.

15      See you all Friday morning at 9:00.  We're in recess.

16  **[The R.M.C. 809 session recessed at 1250, 1 November 2017.]**

17                    [END OF PAGE]

18

19

20

21

22

23

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**10074**