# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| RICHARD L. KAMMEN, <br><br> *Petitioner*, <br><br> v. <br><br> GEN. JAMES MATTIS in his official capacity as SECRETARY OF DEFENSE, and <br><br> HARVEY RISHIKOF, in his official capacity as CONVENING AUTHORITY, DEPARTMENT OF DEFENSE, OFFICE OF MILITARTY COMMISSONS, and <br><br> COL. VANCE H. SPATH (AIR FORCE), in his official capacity as MILITARY JUDGE, MILITARY COMMISSIONS TRIAL JUDICIARY, DEPARTMENT OF DEFENSE, <br><br> *Respondents*. | No. 1:17-cv-03951-TWP-DML |

## RESPONDENTS' OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR DECLARATORY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.   History of *United States v. Al-Nashiri* and the Military Commissions Act. ....................... 3

    B.   History of Petitioner Kammen's Purported Withdrawal as Learned Counsel for Al-Nashiri. ................................................................................................................... 6

    C.   The Habeas Petition and Procedural History in this Court. .............................................. 14

ARGUMENT ..................................................................................................................... 15

    A.   The Court Lacks Habeas Jurisdiction Because Mr. Kammen Is Not "In Custody." ........ 15

    B.   Absent Habeas Jurisdiction, the Habeas Statute and Sovereign Immunity Bar Mr. Kammen's Alternative Bases For the Court's Jurisdiction. .............................................. 23

    C.   The Court Lacks Jurisdiction Over the Respondents. ....................................................... 26

    D.   The Court Should Decline to Intercede in Independent Proceedings Before a Coordinate Court. .......................................................................................................... 30

CONCLUSION .................................................................................................................. 35

## INTRODUCTION

Respondents hereby oppose Petitioner Richard Kammen's petition for writ of habeas corpus and motion for declaratory judgment.

Mr. Kammen is an Indianapolis-based attorney who, since 2008, has been representing Abd Al-Rahman Hussayn Muhmmad Al-Nashiri, a high-value detainee alleged to be the mastermind of the 2000 bombing of the *U.S.S. Cole*, in military commission proceedings at the United States Naval Station, Guantanamo Bay, Cuba.  Mr. Kammen has sought to withdraw as counsel in that case and a legal dispute has arisen over whether the law governing military commission proceedings allows him to do so without the authorization of the military trial judge. Mr. Kammen takes the position that he properly withdrew as counsel in November 2017 upon filing a notice of withdrawal with the military commission.  The trial judge, Respondent Col. Vance Spath, disagreed and issued a ruling concluding that excusal of defense counsel must be accomplished by the military judge on the record for good cause.  Rather than continue to litigate the issue within the military commission judicial system, Mr. Kammen has taken the extraordinary step of suing Judge Spath in this Court.  Specifically, Mr. Kammen has filed a petition for writ of habeas corpus alleging that "if he does not appear [for military commission proceedings], "he will be arrested and held in contempt by Col. Spath."  *See* Petition (ECF No. 6) at 1.

The petition is legally baseless and jurisdictionally-flawed in multiple respects.  First, the Court lacks jurisdiction over the petition because Mr. Kammen is not "in custody," as required by the habeas statute.  *See* 28 U.S.C. § 2241.  Mr. Kammen is not in the physical custody of any of the named Respondents, he faces no restrictions on his freedom of movement, and he is not subject to any conditions that significantly restrain his liberty.  Further, Mr. Kammen's

speculative allegation that he may be taken into custody at some uncertain point in the future is insufficient to satisfy the "in custody" requirement for a writ of habeas corpus. Indeed, there is no basis for Mr. Kammen's speculation because both Judge Spath and the military commission prosecutors have never expressed an intention to force Mr. Kammen to appear for military commission proceedings.

Second, absent habeas jurisdiction, there is no alternative jurisdictional basis or applicable waiver of sovereign immunity to permit the extraordinary relief that Mr. Kammen seeks. The Court lacks jurisdiction over any non-habeas claims asserted in this case under 28 U.S.C. § 2241(e)(2), which bars jurisdiction over a non-habeas action "against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant." Further, even absent this jurisdictional bar, neither the federal question statute (28 U.S.C. § 1331), nor the Declaratory Judgment Act (28 U.S.C. § 2201), nor the Constitution provides the Court with a jurisdictional basis to adjudicate the legality of the hypothetical future custody that Mr. Kammen alleges.

Third, even assuming the Court has subject-matter jurisdiction, the Court lacks jurisdiction over the three named Respondents, none of whom is a proper respondent or physically located within the Southern District of Indiana. Both the Supreme Court and the Court of Appeals for the Seventh Circuit have held that there is only one proper respondent to a habeas case – the immediate custodian – and that respondent must reside within the geographic confines of the federal district where the petition was filed. Mr. Kammen's petition fails both of these elements. None of the named Respondents – the Secretary of Defense, the Convening Authority for military commissions, or Judge Spath – has custody of Mr. Kammen. Further,

even if one of them did, the Court would still lack jurisdiction because none of the Respondents

lives, works, or resides in the Southern District of Indiana.

Fourth, even assuming Mr. Kammen could overcome the significant jurisdictional defects

discussed above, the habeas petition should be denied on the independent ground that it

constitutes an improper collateral attack on the proceedings before a coordinate tribunal.  *See*

*Schlesinger v. Councilman,* 420 U.S. 738 (1975).  The law is well-established that collateral

challenges to the proceedings of coordinate courts are disfavored and courts should not exercise

their equitable jurisdiction to intervene until the coordinate court has had the opportunity to

resolve the disputed issue in the first instance.  Applying these traditional abstention principles,

the Court should require that Mr. Kammen pursue and exhaust the available avenues for relief

before the military commission system rather than bring an improper collateral attack in this

Court.

For these reasons, as explained further below, the petition for writ of habeas corpus

should be dismissed, the motion for declaratory judgment should be denied, and the Court's

November 3, 2017 Order Following Initial Hearing (ECF No. 15) should be vacated.

## BACKGROUND

### A.  History of *United States v. Al-Nashiri* and the Military Commissions Act.

This case arises from the ongoing criminal prosecution of Abd Al-Rahman Hussayn

Muhmmad Al-Nashiri ("Al-Nashiri") before a military commission at the United States Naval

Station, Guantanamo Bay, Cuba.  Al-Nashiri "is the alleged mastermind of the bombings of the

U.S.S. *Cole* and the French supertanker the M/V Limburg, as well as the attempted bombing of

the U.S.S. *The Sullivans*."  *In re Al-Nashiri*, 835 F.3d 110, 113 (D.C. Cir. 2016), *cert. denied*

2017 WL 1710409, at *1 (U.S. Oct. 16, 2017).  These attacks killed seventeen U.S. sailors,

injured dozens of other people, and caused hundreds of millions of dollars in property damage.
*See* Declaration of Colonel John B. Wells ¶ 29 ("Wells Decl.") (attached as Exhibit 1).  Al-
Nashiri is charged with multiple violations of the laws of war under the Military Commissions
Act of 2009 ("MCA"), 10 U.S.C. §§ 948a-950t, including terrorism, murder in violation of the
law of war, and attacking civilians.  *See In re Al-Nashiri*, 835 F.3d at 114.  The charges carry the
possible punishment of death.  *See id.*

The current military commission proceedings against Al-Nashiri were initiated in
September 2011.  *See* Wells Decl. ¶ 30.[1]  Since then, proceedings have convened at Guantanamo
Bay on a regular basis to address a wide variety of pre-trial matters.  *See* Wells Decl. ¶¶ 31-41.
The current military commission judge presiding over the case is Colonel Vance Spath, a named
Respondent in this action who also serves as the Chief Trial Judge of the United States Air
Force.  Wells Decl. ¶ 34.  Over 2700 docket entries have been made in the case, most of which
have been given a docket designation (Appellate Exhibit or AE) and are publicly available at the
Office of Military Commissions website.  *See* Office of Military Commissions, USS Cole: Abd
al-Rahim Hussein Muhammed Abdu Al-Nashiri,
http://www.mc.mil/Cases.aspx?caseType=omc&status=1&id=34.

The current military-commission system is the product of an extended dialogue among
Congress, the Executive, and the Judiciary.  After the Supreme Court in *Hamdan v. Rumsfeld*,
548 U.S. 557 (2006), determined that an earlier military-commission process created by the
Executive Branch exceeded then-existing statutory authority, *id.* at 590-595, 613, 620-635,
Congress enacted the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600,

---

[1] Al-Nashiri was initially charged in 2008 under the 2006 predecessor statute to the current
MCA, but those charges were dismissed without prejudice in 2009.  *See* Wells Decl. ¶ 30.

4

to authorize the President to establish military commissions to try alien unprivileged enemy belligerents for violations of the law of war and other offenses.  Congress subsequently amended the statute in 2009.  *See* Pub. L. No. 111-84, §§ 1801-07, 123 Stat. 2574.  Among other things, the MCA established enhanced procedural protections and rigorous review mechanisms for trials by military commissions.  *See, e.g.*, 10 U.S.C. § 949a(a) and (b) (specifying certain trial rights and generally requiring use of the rules for general courts-martial with limited exceptions).

With respect to the accused's right to representation by counsel, the MCA provides that in capital cases, the accused has the right "to be represented before a military commission by civilian counsel if provided at no expense to the Government, and by either the defense counsel detailed or the military counsel of the accused's own selection, if reasonably available."  10 U.S.C. § 949a(b)(2)(C)(i).  Further, the accused has the right "be represented . . . to the greatest extent practicable, by at least one additional counsel who is learned in applicable law relating to capital cases and who, if necessary, may be a civilian and compensated in accordance with regulations prescribed by the Secretary of Defense."  10 U.S.C. § 949a(b)(2)(C)(ii).

In passing the MCA, Congress also authorized the Secretary of Defense to promulgate rules governing "pretrial, trial, and post-trial procedures" for military commission cases, including rules governing the practice of counsel before military commissions.  *See* 10 U.S.C. § 949a; 10 U.S.C. § 948k.  In accordance with this grant of authority, the Secretary of Defense issued Rules for Military Commissions (R.M.C.) modeled on similar rules governing trials by court-martial pursuant to the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 801 *et seq.*[2]  *See* 10 U.S.C. § 948b(c).  As relevant here, R.M.C. 506 sets forth the rules governing the

---

[2] The rules are located in Part II of the Manual for Military Commissions (2016), available at http://www.mc.mil/LegalResources/MilitaryCommissions Documents/CurrentDocuments.aspx.

accused's right to counsel and provides, *inter alia*, that in a capital case the accused has the right to be represented "by at least one additional counsel who is learned in applicable law relating to capital cases."

### B. History of Petitioner Kammen's Purported Withdrawal as Learned Counsel for Al-Nashiri.

Petitioner Kammen, an Indianapolis-based attorney with experience handling capital cases, has served as learned counsel for Al-Nashiri since 2008. *See* Petition ¶ 4 (ECF No. 6); Wells Decl. ¶¶ 42-43. In addition to Mr. Kammen, Al-Nashiri is represented by, among others, a detailed military defense attorney (U.S. Navy Lieutenant Alaric Piette) and two civilian attorneys employed by the Department of Defense (Rosa Eliades and Mary Spears). *See* Wells Decl. ¶ 44.

On October 6, 2017, Mr. Kammen and the two civilian attorneys submitted requests to the Chief Defense Counsel, Brigadier General John Baker, to withdraw from representing Al-Nashiri.[3] *See* Petition ¶ 13; Wells Dec. ¶ 52. The request was based on the attorneys' speculative belief that continued representation of Al-Nashiri would violate their respective states' rules of professional responsibility due to alleged intrusions by the Government into their attorney-client communications. *See* Petition ¶¶ 10, 13; Wells Dec. ¶ 52. The withdrawal request was accompanied by an advisory ethics opinion from Professor Ellen Yaroshefsky of Hofstra University School of Law, but did not include any opinions from the attorneys' respective bar authorities concerning their alleged ethical conflicts. *See* Petition ¶ 11; Wells Decl. ¶¶ 51-52.[4] On October 11, 2017, the Chief Defense Counsel issued a memorandum

---

[3] The Chief Defense Counsel is responsible for overseeing the defense of all detainees charged with crimes under the MCA. *See* 10 U.S.C. § 948k(d)(2).

[4] On November 6, 2017, Judge Spath issued an order to military commission prosecutors directing them to secure Ms. Yaroshefsky's testimony by video conference in Virginia for proceedings before the military commission in Guantanamo during the week of November 13,

purporting to excuse Mr. Kammen and the two civilian attorneys for "good cause" under R.M.C. 505(d)(2), the rule governing changes of defense counsel. *See* Petition ¶ 14; Wells Decl. ¶ 53. On October 13, 2017, Mr. Kammen and the two civilian attorneys filed a notice of their purported excusal, along with Professor Yaroshefsky's ethics opinion, before the military commission. *See* Petition ¶ 16; Wells Decl. ¶ 54. The Al-Nashiri defense team's October 13, 2017 filings were the first instances of defense counsel in this case attempting to withdraw based on the purported authority of the Chief Defense Counsel to excuse counsel unilaterally. Wells Decl. ¶ 58. Defense counsel previously sought the military commission judge's approval before excusing other defense team members. *Id.* ¶¶ 58-59.

Thereafter, on October 16, 2017, Al-Nashiri's detailed military attorney (Lt. Piette) filed a motion to abate the proceedings against Al-Nashiri pending the appointment of new learned counsel to replace Mr. Kammen. *See* Petition ¶ 16 (Ex. D); Wells Decl. ¶ 55. The motion argued that the power to excuse defense counsel is vested entirely in the Chief Defense Counsel and he exercised that unilateral authority to excuse Mr. Kammen and the two civilian attorneys from the case. *See id.* The motion also represented that Mr. Kammen and the two civilian attorneys would not attend or represent Al-Nashiri at the next scheduled hearing session, set for October 30-November 17, 2017, and would not conduct other legal business on behalf of Al-Nashiri. *See* Petition ¶ 16 (Ex. D); Wells Decl. ¶ 56.

---

2017. In response, Ms. Yaroshefsky filed a purported habeas corpus petition in the U.S. District Court for the Southern District of New York along with a motion for a temporary restraining order to quash the subpoena that military commission prosecutors issued to secure her testimony. *See Yaroshefsky v. Mattis*, No. 17-CV-8718 (GHW) (S.D.N.Y.). On November 15, 2017, the court denied the habeas petition and the request for a temporary restraining order. *See id.*, Transcript (Nov. 15, 2017) (attached as Exhibit 2); Order (ECF No. 21) (attached as Exhibit 3). Ms. Yaroshefsky testified before the military commission by video conference on November 17, 2017.

That same day, Judge Spath issued an order calling for expedited briefing on the motion to abate.  *See* Petition ¶ 17 (Ex. E); Wells Decl. ¶ 57.  The order stated that he had "not found 'good cause' to authorize the termination of the attorney-client relationship between the Accused and any of his Civilian Defense Counsel who have appeared before this Commission."  *Id.*  Judge Spath also made clear that "Mr. Kammen, Ms. Eliades, and Ms. Spears remain counsel of record in this case, and are ordered to appear at the next scheduled hearing of this Commission, unless otherwise excused by this Commission."  *Id.*

On October 27, 2017, after receiving briefing on the excusal issue, Judge Spath rejected the Chief Defense Counsel's argument and concluded that excusal of defense counsel for good cause must be accomplished by the military judge on the record.  *See* Petition ¶ 20 (Ex. I); Wells Decl. ¶ 60.  Judge Spath also found that "no good cause exists to warrant the excusal of Learned Counsel or the two DoD civilian defense counsel from their duties to represent the Accused in this case."  Petition ¶ 20 (Ex. I); Wells Decl. ¶ 61.  In particular, Judge Spath found that "no evidence has been presented to demonstrate intrusions [into attorney-client communications] in this case affecting this Accused which would ethically require the withdrawal or disqualification of Learned Counsel."  *Id.*[5]  Judge Spath denied the motion to abate and concluded that "at this stage of the proceedings, the excusal of Learned Counsel, who has acted as lead attorney for the Accused for nine years, will prejudice the Accused's due process rights."  *Id.*

---

[5] In reaching this decision, Judge Spath was aware of the classified information allegedly giving rise to Mr. Kammen, Ms. Eliades, and Ms. Spears's purported withdrawals.  Wells Decl. ¶ 61 n.5.  Additionally, Judge Spath, and the previous judge who handled Al-Nashiri's case (Judge James Pohl), issued rulings on various motions filed by Al-Nashiri's defense team relating to these allegations between 2012 and 2017, never once having found an actual intrusion of the attorney-client relationship between the accused and his attorneys.  *See id.* ¶ 51 (Attachments D through J).

8

Notwithstanding Judge Spath's findings and orders, Mr. Kammen, Ms. Eliades, and Ms. Spears failed to travel to Guantanamo in advance of the November 2017 hearing session. *See* Petition ¶ 21; Wells Dec. ¶ 62.  On October 31, 2017, the first day of the hearing session, Judge Spath stated pertinent findings on the record, including the following:  "One, no good cause exists to warrant the excusal of Mr. Kammen, Ms. Eliades or Ms. Spears.  Two, no evidence has yet been presented to demonstrate intrusions in this case affecting this accused which would ethically require withdrawal or disqualification of outside appointed learned counsel.  And three, the excusal of outside appointed learned counsel at this stage would prejudice Mr. al Nashiri's due process rights."  *See* Unofficial / Unauthenticated Transcript of Proceedings (Oct. 31, 2017) at 10025 (attached as Exhibit 4); Wells Decl. ¶ 62.  After making initial findings, Judge Spath called the Chief Defense Counsel, Brig. Gen. Baker, as a witness to examine the reasons for the absence of Mr. Kammen and the other civilian attorneys assigned to Al-Nashiri's defense team. *See* Oct. 31 Transcript at 10027-28 (Ex. 4); Wells Dec. ¶ 63.  The Chief Defense Counsel attempted to categorically assert privilege and refused Judge Spath's order to take the witness stand.  *See* Oct. 31 Transcript at 10037-43 (Ex. 4); Wells Dec. ¶ 63.  Judge Spath then ordered the Chief Defense Counsel to rescind his purported unilateral excusal of Mr. Kammen and the two civilian attorneys, and to notify them that the purported excusal was void.  *Id.*  The Chief Defense Counsel refused to comply with that order.  *Id.*

The following day, November 1, 2017, Judge Spath conducted summary contempt proceedings against the Chief Defense Counsel under R.M.C. 809, which permits summary contempt proceedings where the judge has witnessed the offending conduct in question.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Nov. 1, 2017) at 10052-74 (attached as Exhibit 5); Wells Decl. ¶ 63.  At the conclusion of the proceedings, Judge Spath held the Chief

Defense Counsel in contempt of the military commission. *See* Nov. 1 Transcript at 10060-73 (Ex. 5); Wells Dec. ¶ 63. Judge Spath ordered the Chief Defense Counsel confined for a period of 21 days and imposed a fine in the amount of $1,000. *See* Nov. 1 Transcript at 10072 (Ex. 5); Wells Dec. ¶ 63.

On November 3, 2017, Harvey Rishikof, a named Respondent in this case who serves as the Convening Authority for military commissions,[6] deferred the remaining term of the Chief Defense Counsel's confinement pending a final decision by the Convening Authority on the sentence and finding of contempt. *See* R.M.C 809(d) (procedures for Convening Authority's review of contempt); 1101(c) (authorizing Convening Authority to defer sentence or fine). Thereafter, on November 21, 2017, the Convening Authority issued a final decision that affirmed the findings of contempt, but vacated the remaining term of confinement and the fine. *See* Memorandum from Convening Authority Re: Action on Contempt Proceedings (attached as Exhibit 6).[7]

After concluding contempt proceedings against the Chief Defense Counsel, Judge Spath issued an order on November 1, 2017, directing Mr. Kammen and the two civilian attorneys to

---

[6] In his capacity as Convening Authority, Mr. Rishikof is responsible for the overall management of the military commissions process, including logistics and personnel support. The Convening Authority is authorized to, among other things, convene military commissions, refer charges to trial, negotiate pre-trial agreements, and review records of trial. *See, e.g.*, 10 U.S.C. §§ 948h; 950b. The Convening Authority for military commissions under the MCA serves a similar function as the convening authority for courts-martial under the UCMJ. *See Curry v. Sec'y of Army*, 595 F.2d 873, 875-76 (D.C. Cir. 1979) (summarizing the role of the convening authority in the court-martial process).

[7] On November 2, 2017, the Chief Defense Counsel filed a petition for writ of habeas corpus in the U.S. District Court for the District of Columbia challenging the contempt finding. *See Baker v. Spath*, No. 17-CV-02311-RCL (D.D.C.). The court heard oral argument on the petition on November 3, and agreed to withhold a decision for a reasonable time pending a final decision by the Convening Authority. Supplemental briefing in the case remains ongoing to address the impact of the Convening Authority's November 21 decision.

appear on November 3 at the federal office building in Alexandria, Virginia (the Mark Center) that facilitates two-way video teleconferences with the military commission courtroom in Guantanamo Bay, and to serve as Al-Nashiri's counsel for the remainder of the hearing session. *See* Order (Nov. 1, 2017) (AE 389J) (attached as Exhibit 7).  Mr. Kammen and the other civilian attorneys did not appear as ordered, and they were absent for the entire November hearing session from October 31 to November 17, 2017.  *See* Wells Decl. ¶ 64.  Their absences, and LT Piette's refusal to participate in the case without learned counsel present, caused significant disruption to the military commission proceedings.  *Id.*  Every witness for the November hearing had to be rescheduled.  *Id.*  Further, in Mr. Kammen's absence, LT Piette declined to examine a witness who traveled from Qatar to Guantanamo Bay at the request of Mr. Al-Nashiri's defense team to testify about various issues related to a motion to suppress filed by Mr. Al-Nashiri.  *Id.* These actions and inactions resulted in significant gaps in the proceedings, as some days were completely devoid of court activity due to the unavailability of witnesses.  *Id.*  Judge Spath described the situation as "disorder and havoc."  *See* Nov. 1 Transcript at 10060 (Ex. 5); Wells Decl. ¶ 64.  Judge Spath nonetheless continued to address various pre-trial matters unrelated to capital issues over the course of the November hearing session and noted Mr. Kammen's continued absence on the record each day.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Nov. 14, 2017) at 10675-76 (attached as Exhibit 8).  Neither Mr. Kammen nor any other member of Al-Nashiri's defense team sought reconsideration or further review of Judge Spath ruling regarding the withdrawal issue.

Although Judge Spath ordered Mr. Kammen to appear for the November hearing session, Judge Spath took no action during the hearing session to compel his attendance.  On November 3, Judge Spath expressly stated:  "I haven't issued a single writ of attachment for those three

civilians, nor confined them, nor indicated they're confined." *See* Unofficial / Unauthenticated Transcript of Proceedings (Nov. 3, 2017) at 10157 (attached as Exhibit 9).  Judge Spath reiterated the same statement on the final day of the hearing session:  "[N]o effort has been made to detain [Mr. Kammen], apprehend him, arrest him, or anything else." *See* Unofficial / Unauthenticated Transcript of Proceedings (Nov. 17, 2017) at 11036 (attached as Exhibit 10). Instead of issuing orders or warrants to compel Mr. Kammen's appearance, Judge Spath requested briefing on a proposed course of action to address Mr. Kammen's absence.  *See* Nov. 3 Transcript at 10155-56 (Ex. 9).

On November 15, 2017, military commission prosecutors filed a brief recommending a process to address Mr. Kammen's refusal to appear.  *See* Government Brief Regarding Proposed Actions as to Three Civilian Defense Counsels' Repeated Violations of Commission Orders (AE 389N) (attached as Exhibit 11).  The military commission prosecutors recommended that Judge Spath refer the matter to the Chief Judge of the Military Commissions Trial Judiciary for possible action in accordance with Rule for Military Commissions 109.  *Id.* at 1-3.  That rule sets forth the professional responsibility rules for attorneys practicing before military commissions and provides, *inter alia*, that military commission judges may take action for violations of the rules, to include permanent disbarment of an individual from practicing before a military commission.  *See* R.M.C. 109(b).  The prosecutors further recommended that Mr. Kammen receive appropriate due process before any disciplinary action is imposed by the Chief Judge, suggesting that the Chief Judge follow the procedural process used by a military service Judge Advocate General's branch for imposing attorney discipline.  *See* Government Brief at 2, 12-14 (Ex. 11).  In the event the Chief Judge determines that disciplinary action is warranted, the

12

prosecutors recommended that the sanction should "range from no action to permanent disbarment from participating in any military commission." *Id.* at 5.

The prosecutors did "not recommend the Commission issue any further orders to compel Mr. Kammen's appearance." *Id.* at 7 n.5.  The prosecutors recommended that, in the event of further hearings to address Mr. Kammen's absence, due process would be satisfied by an invitation to Mr. Kammen to participate in those hearings.  *Id.*  The prosecutors also suggested that Judge Spath take steps to have standby learned counsel appointed in Mr. Kammen's absence.  *Id.* at 15-19.[8]

At the conclusion of the hearing session on November 17, 2017, Judge Spath stated that he would issue findings of facts and a "complete ruling" on the issues surrounding Mr. Kammen's absence at an unspecified time in the future.  *See* Nov. 17 Transcript at 11031-32 (Ex. 10).

On December 1, 2017, Judge Spath issued a scheduling order for the next round of pre-trial hearings in the *Al-Nashiri* case, currently scheduled to occur at Guantanamo Bay on January 18-24, 2018.  *See* Docketing Order (Dec. 1, 2017) (AE 390) (attached as Exhibit 13).[9]  As relevant to this case, the order states:  "Mr. Richard Kammen, appointed outside learned counsel, may appear to represent his client or show cause why he believes he is ethically obligated to withdraw from the case."  *Id.*  Judge Spath made clear that he "is not ordering Mr. Kammen to appear."  *Id.*  In doing so, however, Judge Spath expressed the view that he "has not released Mr.

---

[8] On November 17, 2017, Judge Spath ordered that steps be taken to recall Al-Nashiri's previous counsel to the case.  *See* Nov. 17 Transcript at 11042-43 (Ex. 10).  Judge Spath also ordered the filing of twice-weekly status reports regarding efforts to secure new learned counsel.  *See* Order (Nov. 14, 2017) (AE 389O) (attached as Exhibit 12).

[9] The December 1 Docketing Order set the hearing session for January 16-26, 2018, but the dates were subsequently changed to January 18-24, 2018.

Kammen from this case and believes that Mr. Kammen has voluntarily abandoned his client in contravention of multiple orders and is ethically obligated to represent his client." *Id.*

### C. The Habeas Petition and Procedural History in this Court.

On November 2, 2017, Mr. Kammen filed a petition for writ of habeas corpus and motion for declaratory judgment in this Court. *See* Petition (ECF No. 6). The respondents named in the petition are the Secretary of Defense (James Mattis), the Convening Authority (Harvey Rishikof), and Judge Spath. *See id.* ¶¶ 5-7. The petition does not allege that Mr. Kammen is in the physical or legal custody of the Respondents. Rather, the petition alleges: "If Petitioner does not appear, he will be arrested and held in contempt by [Judge] Spath." *See id.* at 1. The petition contends that "[t]here is no legal basis or authority under which Respondents may hold Mr. Kammen" and, therefore, requests that this "Court should issue a writ of habeas corpus and should grant Mr. Kammen's request for declaratory relief specifying that the Military Commission headed by [Judge] Spath has no jurisdiction over Mr. Kammen." *See id.* at 2.

The Court conducted an initial hearing on November 3, 2017. *See* ECF No. 12. An attorney from the United States Attorneys' Office for the Southern District of Indiana appeared at that hearing, but undersigned counsel understands that attorney represented to the Court that the U.S. Attorneys' Office was not in a position to argue the matter due to a potential conflict of interest between the U.S. Attorneys' Office and Mr. Kammen because of Mr. Kammen's representation of criminal defendants with active cases before the U.S. Attorneys' Office. In the absence of any contrary authority from Respondents, the Court adopted Mr. Kammen's proposed order (ECF No. 13) and ordered:

> 1. That any purported requirement of the military commission hearing the case of *United States v. Al-Nashiri*, or the Military Commission Judge, Colonel Vance Spath, that Mr. Kammen travel to Virginia on November 3, 2017 and/or on November 6, 2017 or on any future date, is stayed pending hearing in this Court.

2. That in the event that a writ of attachment or a warrant issues from a military commission in Guantanamo Bay for Mr. Kammen, the writ of attachment or warrant will be held in abeyance and not served or otherwise executed until this Court holds a hearing on the merits.

3. This Order will issue to the U.S. Marshal for the Southern District of Indiana and be distributed by the U.S. Marshal of this District to the U.S. Marshals in all other districts.

4. That the Government shall file a Response to the Petitioner's Petition for Writ of Habeas Corpus and Motion for Declaratory Judgment on or before November 24, 2017. Thereafter, the Petitioner shall have Twenty One (21) days within which to reply to the Government's Response. Upon completion of briefing, the Court will determine whether an evidentiary hearing is required.

*See* Order Following Initial Hearing at 2-3 (ECF No. 15).

On November 22, 2017, the Court granted Respondents' unopposed motion for an extension of time to respond to the petition and motion for declaratory judgment. *See* Order (ECF No. 18).[10]  The Court ordered that Respondents file a response on or before December 22, 2017, and Petitioner submit a reply on or before January 22, 2018. *Id.*

## ARGUMENT

### A.  The Court Lacks Habeas Jurisdiction Because Mr. Kammen Is Not "In Custody."

Although Mr. Kammen styles his action as a petition for writ of habeas corpus under 28 U.S.C. § 2241, the Court lacks jurisdiction over the petition because Mr. Kammen is not in custody.  Accordingly, the petition should be dismissed, the motion for declaratory judgment should be denied, and the Court's November 3 Order Following Initial Hearing should be vacated.

---

[10] To avoid any potential conflict by the U.S. Attorneys' Office for this District, attorneys from the Department of Justice, Civil Division in Washington, D.C., filed this motion and are representing Respondents in all future proceedings in this matter.

The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are "*in custody* in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(2) (emphasis added); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  In *Virsnieks v. Smith*, 521 F.3d 707, 717-720 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit examined the meaning of the "in custody" requirement and held that "habeas petitioners must establish that they are subject to conditions that significantly restrain their liberty."  *Id.* at 718.

In reaching this conclusion, the Court of Appeals analyzed the Supreme Court's case law addressing the "in custody" requirement and explained that "the Court [has] emphasized the physical nature of the restraints on liberty that satisfied the custody requirement."  *Id.*  To be sure, the Court of Appeals recognized that the Supreme Court has interpreted the "in custody" requirement to extend beyond physical confinement and noted that habeas corpus "is now available, for example, to prisoners who are released on parole, personal recognizance, and bail, as well as those serving consecutive sentences; to aliens seeking entry into the United States; and to individuals seeking to challenge their induction into military service."  *Id.* at 717.  But the Court of Appeals explained that the common thread of the Supreme Court's "in custody" jurisprudence is that the case must "involve[] restraints on a habeas petitioner's ability to move about freely."  *Id.*  By contrast, the imposition of "negligible effects on a petitioner's physical liberty or movement[] are insufficient to satisfy the custody requirement."  *Id.* (citing cases that "do not satisfy the 'in custody' requirement" such as "registration under a sexual offender statute" as well as "restitution, fines, and the revocation of medical and driver's licenses"); *see also Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015) (reaffirming the holding in *Virsnieks* that "in custody" requires a "non-negligible restraint on physical liberty").

Here, Mr. Kammen faces no restrictions on his freedom of movement, let alone any conditions that significantly restrain his liberty.  As explained above, Mr. Kammen is not in the physical custody of any of the named Respondents, nor is he subject to any order from the Respondents that would impose a significant restraint on his liberty.  Judge Spath has not issued a warrant for Mr. Kammen's detention, nor has he indicated any intent to do so.  Further, the military commission prosecutors are not seeking to compel Mr. Kammen's attendance before the military commission; instead, they have recommended that Judge Spath refer Mr. Kammen's conduct to the Chief Trial Judge for Military Commissions for consideration of potential disbarment from participating in military commission proceedings in the future.  *See Ginsberg v. Abrams*, 702 F.2d 48, 49 (2d Cir. 1983) (per curiam) (holding that habeas petitioner was not in custody as a result of "the revocation of his professional license to practice law").  Under these circumstances, Mr. Kammen is not "in custody" for purposes of the habeas statute.

The only order that Mr. Kammen identifies as purporting to hold him "in custody" is Judge Spath's November 1, 2017 Order directing that Mr. Kammen appear to represent his client in the now-concluded November session of the military commission.  *See* Order (Nov. 1, 2017) (AE 389J) (Ex. 7).  But there is no basis to conclude that the order imposes any restraint on Mr. Kammen's freedom of movement.  Judge Spath's order directing Mr. Kammen to appear is no different from similar orders that state and federal courts routinely issue to require attorneys to appear for hearings or proceedings, but under no circumstances are these orders considered custodial restraints on liberty or freedom of movement.  If this Court were to conclude otherwise, and hold that Mr. Kammen is in custody simply because of a trial court order directing him to appear for a hearing in a case in which he serves as lead counsel, then any attorney who is subject to a routine order requiring a court appearance could seek habeas relief from that

requirement by suing the judge who issued the order in another federal district court.  Mr.

Kammen provides no support for that extraordinary proposition, and none exists.  The Supreme

Court has "never extended [the "in custody" requirement] to the situation where a habeas

petitioner suffers no present restraint."  *Maleng*, 490 U.S. at 492.  Accordingly, courts have

concluded that individuals who fail to appear for court appearances are not "in custody" for

habeas purposes.  *See e.g.*, *Esparza v. State of Utah*, 258 F. App'x 181, 182-83 (10th Cir. 2007)

(concluding that no reasonable jurists could debate that a habeas petitioner was not in custody

when a bench warrant issued following his failure to appear for trial); *Filary v. I.N.S.*, 1991 WL

152892, at *2 (N.D. Ill. Aug. 1, 1991) (concluding that a habeas petitioner was not in custody

where he "failed to appear pursuant to the INS' orders and has not been present for any

proceedings in this court"); *see also Spring v. Caldwell*, 692 F.2d 994, 996-99 (5th Cir. 1982)

(issuance of arrest warrant for contempt of court for failure to pay fine does not satisfy the "in

custody" requirement of the habeas statute).

     This position is consistent with the recent decision from the United States District Court

for the Southern District of New York in the related habeas case involving Ms. Yaroshefsky, the

law professor who provided Mr. Kammen with the ethical advice that he relied upon for his

purported withdrawal.  The New York court denied Ms. Yaroshefsky's habeas petition,

concluding that she was not "in custody" for purposes of the habeas statute when she challenged

a subpoena to compel her testimony before the military commission.  *See supra* note 4;

Transcript (Nov. 15, 2017) at 48-53 (Ex. 2).  The court stated that "no prior reasoned opinion by

any court in the American history of the great writ" has concluded that "a subpoena for

testimony before a federal government authority places its recipient 'in custody.'"  *Id.* at 50.  If

such a position were accepted, "it would open the door to a flood of habeas litigation" and a

dramatic "expansion of the writ" as every criminal or civil subpoena "could be challenged in an independent habeas petition – sidestepping any recourse the recipient might have before the issuing court or the court in whose jurisdiction the witness is located." *Id.* at 51. On this basis, the New York court noted its disagreement with this Court's preliminary decision to exercise jurisdiction over Mr. Kammen's petition on the basis of his purported custody. *Id.* at 51-52 ("I appreciate that the court reviewing the request by Mr. Kammen has apparently concluded that the issuance of a subpoena is sufficient to satisfy the "in custody" requirement for a habeas petition – presumably mindful of the consequence of such an expansion of the writ -- but, if so, I respectfully disagree with the court's conclusion."). The same reasoning applies to this case, as there is no support for Mr. Kammen's position that a trial court order directing an attorney appear for a hearing somehow renders the attorney "in custody" for habeas purposes.

Mr. Kammen also cannot satisfy the "in custody" requirement by speculating that he may be subject to future custody as a result of his decision not to appear for the November hearing session. Courts have held that the possibility of future detention is sufficient to satisfy the "in custody" requirement only if the future custody is "imminent and inevitable" and not "speculative." *See Vargas v. Swan*, 854 F.2d 1028, 1030-31 & n.1 (7th Cir. 1988); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 874 n.8 (1st Cir. 2010) (citing cases); *Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987) (petitioner not in custody where future "incarceration is far from imminent, but rather is still highly speculative"); *see also Virsnieks* 521 F.3d at 720 ("the future threat of incarceration for registrants who fail to comply with the [sex offender registration] statute is insufficient to satisfy the custody requirement"). As explained above, there is no factual basis to believe that Mr. Kammen will be subject to future custody by Respondents. The time for Mr. Kammen to appear for the November hearing has come and gone, and there is no

order compelling Mr. Kammen to appear at any future proceedings.  Judge Spath took no action to compel Mr. Kammen's appearance during the November hearing session, and he has taken no action to compel his attendance at future hearing sessions.  Indeed, in his December 1, 2017 Order, Judge Spath made clear that he "is not ordering Mr. Kammen to appear."  *See* Ex. 13. Further, military commission prosecutors have not asked Judge Spath to require Mr. Kammen to appear at future sessions.  *See* Ex. 11.  Mr. Kammen's mere speculation that he may be detained in the future has no basis in fact and, in any event, is insufficient for this Court to exercise jurisdiction over this case.

The lack of any restraint on Mr. Kammen's liberty or any imminent threat of future custody is what separates this case from the cases relied upon by Mr. Kammen to support this Court's jurisdiction.  *See* Petition at ¶ 1 n.1.  Relying solely on the authority set forth in Mr. Kammen's proposed order, the Court's November 3 Order asserted jurisdiction on the basis of the Supreme Court's decision in *Hensley v. Mun. Ct. San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973), but *Hensely* involved a far more intrusive set of liberty restrictions on the petitioner and is plainly distinguishable from the facts of this case.  In *Hensley*, the Supreme Court held that a criminal defendant who had been convicted of a crime in state court but who obtained a stay of his jail sentence and was released on his own recognizance while subject to ongoing supervision was in custody for habeas purposes.  *Id.* at 345-53.  State law provided that upon release on his own recognizance, the defendant was required to pay bail; appear at all times and places as ordered by the court; waive extradition if apprehended outside the court's jurisdiction; and would be subject to re-arrest if he failed to appear as required.  *Id.* at 347-48.  In concluding that the defendant was "in custody" for habeas purposes, the Supreme Court explained that these restrictions placed a significant limitation on the defendant's liberty:  "He

cannot come and go as he pleases.  His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice."  *Id.* at 351. By contrast, Mr. Kammen has no limitations on his freedom of movement, and he is not subject to any restrictions on his liberty, let alone anything close to the restrictions at issue in *Hensley*.

Further, the Supreme Court in *Hensley* emphasized that the defendant had been released from jail "only by the grace of a stay entered first by the state trial court and then extended by two Justices of this Court."  *Id.*  The imminence and inevitability of the defendant's future custody was evidenced by the fact that he was still subject to a criminal jail sentence, and the State had "emphatically indicated its determination to put him behind bars" and had "taken every possible step to secure that result."  *Id.*  But for the stay of his jail sentence, the defendant would have been physically incarcerated and therefore "in custody."  Under those unique circumstances, the Supreme Court concluded:  "His incarceration is not, in other words, a speculative possibility that depends on a number of contingencies over which he has no control. This is not a case where the unfolding of events may render the entire controversy academic." *Id.* at 351-52.

Unlike *Hensley*, Mr. Kammen is not subject to a criminal sentence of imprisonment that was temporarily postponed by means of a judicial stay.  Rather, Mr. Kammen's allegations regarding future detention are entirely speculative, and he does not face the same imminent threat of incarceration that was at issue in *Hensley*.  Furthermore, this case presents precisely the type of situation where the Supreme Court has instructed that habeas jurisdiction does not lie because Mr. Kammen's allegations of future detention are dependent on "a number of contingencies" that are unlikely to occur and, if they do not, would "render the entire controversy academic."  *Id.* at 351-52.  Here, there is no basis to believe that either Judge Spath or the

military commission prosecutors will suddenly reverse course and decide to compel Mr. Kammen's appearance before the military commission.

The other cases Mr. Kammen relies upon to support his purported claim of custody are equally inapposite. In *Jones v. Cunningham*, 371 U.S. 236 (1963), the Court held that a prisoner released on parole subject to ongoing state supervision was in custody for habeas purposes. The petitioner faced immediate reincarceration if he did not follow the conditions of his parole, including requirements that he live and work where instructed, seek permission before driving a car, periodically report to his parole officers, permit his parole officer to visit his home and job at any time, and follow his parole officer's advice, including on what company to keep and what places to visit. *Id*. at 242. The Court reasoned that these reporting requirements, combined with the actual threat of an immediate return to prison to serve out the remainder of his jail sentence absent strict compliance with the state's ongoing supervision, placed "significant restraints on [his] liberty." *Id*. Those constraints were in addition to those already placed on petitioner by virtue of "his conviction and sentence," which petitioner sought to challenge as unconstitutional through habeas proceedings in the first place. *Id*. Accordingly, the Court concluded that petitioner was "in custody" and could invoke habeas jurisdiction. *Id*. at 243. Mr. Kammen is under no similar "conditions that significantly confine and restrain his freedom." *Id.*

Similarly, *Barry v. Bergen Cty. Prob. Dep't*, 128 F.3d 152, 159-63 (3d Cir. 1997), involved a petitioner who was convicted of multiple state court criminal offenses and sentenced to perform 500 hours of community service. The petitioner was supervised by probation authorities during the three years it took him to complete this requirement, and he was threatened with further punitive sanctions if he did not comply with the court-imposed requirements. *See id.* at 161-62. Unlike Mr. Kammen, the petitioner in *Barry* was subject to punitive restraints

22

imposed in a criminal matter in the form of compelled actions he was required to undertake, during which time he was subject to ongoing government supervision not shared by the general public.  Mr. Kammen, by contrast, is not subject to any such conditions, let alone restrictions that "significantly restrain[] his liberty 'to do those things which in this country free people are entitled to do.'"  *Id.* at 162 (quoting *Jones*, 371 U.S. at 243).

In sum, Mr. Kammen was not in custody at the time this action was filed, he is not in custody now, and there is no imminent and inevitable threat that he will be in custody in the future.  Accordingly, the habeas petition should be dismissed.

### B. Absent Habeas Jurisdiction, the Habeas Statute and Sovereign Immunity Bar Mr. Kammen's Alternative Bases For the Court's Jurisdiction.

In addition to invoking a habeas statute, Mr. Kammen asserts three additional, non-habeas statutes as bases for the Court's jurisdiction.  *See* Petition ¶ 1 (citing 28 U.S.C. §§ 1331, 2201 and 10 U.S.C. § 950p(c)).  None of these statutes provides a basis for the Court's jurisdiction because 28 U.S.C. § 2241(e)(2) deprives the Court of jurisdiction over non-habeas claims relating to the trial of enemy combatants.  Further, none of these statutes waives the Government's sovereign immunity, and, therefore, the Court lacks jurisdiction over this case. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (holding that in suits against the Government, courts lack jurisdiction in the absence of an applicable waiver of sovereign immunity).

28 U.S.C. § 2241(e)(2) deprives the court of jurisdiction over non-habeas corpus actions "against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States" and who "has been determined by the United States to have been properly detained as an enemy combatant."  28 U.S.C. § 2241(e)(2); *Al-Nashiri v. MacDonald*, 741 F.3d 1002, 1006-07 (9th Cir. 2013) (applying section 2241(e)(2) to bar a non-habeas action relating to Mr. Al-Nashiri's

military commission proceedings).  The statutory elements are satisfied in this case.  Mr.

Kammen's purported habeas corpus action is against three high-ranking Department of Defense

officials and relates to the military commission trial of Mr. Al-Nashiri.  Further, Mr. Al-Nashiri

is an alien currently detained by the United States and he has been determined by the United

States to be an enemy combatant.  *See Al-Nashiri*, 741 F.3d at 1005; Declaration of Frank

Sweigart (attached as Exhibit 14).[11]

 In addition to this jurisdictional bar, this case also implicates the doctrine of sovereign

immunity because Mr. Kammen has sued three federal officers in their official capacities.

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official-capacity suit is a suit against the

sovereign).  Absent a waiver, sovereign immunity shields the federal Respondents from suit.

*Meyer*, 510 U.S. at 475.  Mr. Kammen bears the burden of establishing that this action falls

within an applicable waiver.  *See Cole v. United States*, 657 F.2d 1127, 1129 (7th Cir. 1981) ("A

party who sues the United States has the burden of pointing to a congressional act that gives

consent.").  Further, "a waiver of the Government's sovereign immunity will be strictly

construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192

(1996).

 The law of this Circuit is clear that neither the general federal question jurisdiction

statute, 28 U.S.C. § 1331, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, waives the

Government's sovereign immunity.  *See Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d

---

[11] The Swigart Declaration explains that a Department of Defense Combatant Status Review
Tribunal (CSRT) classified Mr. Al-Nashiri as an enemy combatant in March 2007.  A
"determin[ation] by the United States" under section 2241(e)(2) is an Executive Branch
determination alone.  *See Janko v. Gates*, 741 F.3d 136, 144-45 (D.C. Cir. 2014) (holding that a
CSRT decision is sufficient to establish a Guantanamo Bay detainee's enemy combatant status
for purposes of section 2241(e)(2)); *Hamad v. Gates*, 732 F.3d 990, 995 (9th Cir. 2013) (same);
*Ameur v. Gates*, 759 F.3d 317, 322-23 (4th Cir. 2014) (same).

1287, 1290 (7th Cir. 1984) ("No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity.  It merely gives the district court jurisdiction to hear federal claims that are not otherwise barred."); *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) ("the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction" and "the district court must possess an independent basis for jurisdiction"); *Kentera v. United States*, 2017 WL 401228, at *3 n.2 (E.D. Wis. Jan. 30, 2017) (Declaratory Judgment Act "merely defines the scope of available declaratory relief" thus "the Act cannot itself work a waiver of sovereign immunity").  Further, there is no basis for Mr. Kammen's position that 10 U.S.C. § 950p(c) provides either a basis for jurisdiction in this Court or a waiver of sovereign immunity.  That provision of the MCA merely defines the types of criminal offenses that are triable under the MCA:  "An offense specified in this subchapter is triable by military commission under this chapter only if the offense is committed in the context of and associated with hostilities."  10 U.S.C. § 950p(c); *In re Al-Nashiri*, 835 F.3d at 115.

Mr. Kammen also cites the Fifth, Sixth, and Eighth Amendments to the Constitution as a purported basis for this Court's jurisdiction, but the Constitution does not create jurisdiction for district courts.  *See* Petition ¶ 1.  As the Supreme Court explained in *Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922):

> Only the jurisdiction of the Supreme Court is derived directly from the Constitution.  Every other court created by the general government derives its jurisdiction wholly from the authority of Congress.  That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution.  The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it.

Accordingly, the Court lacks jurisdiction – either through its habeas power or otherwise – to issue any relief in this case.

25

### C. The Court Lacks Jurisdiction Over the Respondents.

In addition to the absence of subject-matter jurisdiction, this case suffers from a separate jurisdictional flaw:  the Court lacks jurisdiction over the three Respondents, none of whom is a proper Respondent or located within the Southern District of Indiana.

The Supreme Court's opinion in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), discusses at length the jurisdictional rules governing the proper respondent and venue in the context of a habeas case involving custody within the United States.  *See id.* at 451 (holding that the Southern District of New York lacked jurisdiction over a habeas petition filed by an enemy combatant detained in the District of South Carolina against the President, Secretary of Defense, the commander of the Charleston, SC Naval Brig).  The Supreme Court's framing of the issues in *Padilla* applies with equal force to this case:  "The question whether the Southern District has jurisdiction over [this] habeas petition breaks down into two related subquestions.  First, who is the proper respondent to that petition?  And second, does the Southern District have jurisdiction over him or her?"  *Id.* at 434.

With respect to identifying the proper respondent, the Court explained that "[t]here is generally only one proper respondent to a given prisoner's habeas petition."  *Id.* at 434.  This person has "the ability to produce the prisoner's body before the habeas court."  *Id.* at 435.  Accordingly, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  *Id.*  Alternatively, if a habeas petitioner is challenging "a form of 'custody' other than present physical confinement," the petition "may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'"  *Braden v. 30th Judicial Circuit Court of*

*Kentucky*, 410 U.S. 484, 494-95 (1973) (holding that an Alabama prisoner could bring a habeas challenge in federal court in Kentucky to a detainer lodged against him in a Kentucky state court by naming the Kentucky court as the proper respondent).  The reason that the proper respondent is deemed to be the individual with physical or legal control over a habeas petitioner is because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."  *Id.* at 494-95.

Even indulging the fiction that Mr. Kammen is somehow in custody, the petition makes no effort to explain who among the three named Respondents is the proper respondent under the *Padilla* framework.  The petition contains no allegations that the Secretary of Defense or the Convening Authority played any role in Mr. Kammen's alleged detention and, as supervisory officials, they should be dismissed from this action as improper respondents.  *See Padilla*, 542 U.S. at 439.

This conclusion is reinforced by the Court of Appeals decision in *Al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), which addressed a situation similar to *Padilla* in which an enemy combatant detained at the Naval brig in Charleston, South Carolina, filed a habeas petition in the Central District of Illinois, naming the President, the Secretary of Defense and the commander of the Charleston Naval Brig, as respondents.  Addressing the proper respondent issue, the Court of Appeals held that naming supervisory officials such as the President and the Secretary of Defense as respondents was "not only unavailing but also improper."  *Id.* at 708-09.  Instead, the Court of Appeals concluded that the only proper respondent was the commander of the Naval Brig who exercised control over the detainee's custody.  *Id.* at 709; *see also Kholyavskiy v. Achim*, 443 F.3d 946, 953-54 (7th Cir. 2006) (dismissing habeas petition for lack of jurisdiction

where petition named various high-ranking officials of the Department of Justice and Department of Homeland Security).[12]

Mr. Kammen has also named Judge Spath as a respondent, but as explained above, there is no basis to conclude that Judge Spath has actual physical custody over Mr. Kammen or that he has issued any orders that significantly restrict Mr. Kammen's freedom of movement. Indeed, for these reasons, courts routinely deny habeas petitions that attempt to name judges as respondents. *See, e.g.*, *U.S. ex rel. Cummings v. FitzSimon*, 337 F. App'x 143, 145 (3d Cir. 2009); *Palma v. United States*, 2008 WL 4861707, at *1, *4 (D.N.M. July 31, 2008); *Stackhouse v. Miles*, 2008 WL 956711, at *1 & n.1 (W.D. Mich. Apr. 7, 2008); *Da Vang v. Hoover*, 2006 WL 496034, at *1 (W.D. Wis. Feb. 27, 2006). Therefore, Judge Spath should be dismissed as a respondent in this case.

Even assuming, however, that Mr. Kammen is in custody and he has named at least one proper Respondent in his petition, the Court would still lack jurisdiction over this action under the second prong of the *Padilla* analysis because none of the named Respondents is physically located in the Southern District of Indiana. "District courts are limited to granting habeas relief within their respective jurisdiction." *Padilla*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)). The Supreme Court has interpreted this language to require that the respondent must be physically located within the territorial jurisdiction of the district court in which the petition is

---

[12] In *Padilla*, the Supreme Court recognized a limited exception, not applicable in this case, to the general rule against naming high-ranking officials as respondents for cases where the detention occurs outside of the United States. The Supreme Court noted that it had "long implicitly recognized an exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court." *Padilla*, 542 U.S at 436 n.9. In those unique cases, where an American is detained overseas in a location where there is no federal district court, the Supreme Court has "relaxed the district of confinement rule" and "allowed the petitioner to name as respondent a supervisory official and file the petition in the district where the respondent resides." *Id.* at 447 n.16. This exception does not apply to this case because Mr. Kammen is not detained outside of the United States.

filed.  *See id.* ("the court issuing the writ [must] have jurisdiction over the custodian"); *id.* at 451 (Kennedy, J. concurring) (habeas petition "must be filed in the district court whose territorial jurisdiction includes the place where the custodian is located").  Indeed, *Padilla* made clear that the respondent must be physically located within the jurisdiction of the habeas court and specifically rejected an argument that habeas jurisdiction would lie in any district in which a respondent was amenable to service of process.  *Id.* at 443-45 (district courts cannot "employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdiction"); *see also id.* at 447 (this rule prevents "forum shopping" by prohibiting petitioners from naming "a high-level supervisory official as respondent and then su[ing] that person wherever he is amenable to long-arm jurisdiction").  In reaching this conclusion, the Supreme Court relied on the Court of Appeals decision in *Al-Marri*, which dismissed a habeas petition for lack of jurisdiction because none of the named respondents, including the Secretary of Defense, resided in the Central District of Illinois.  *Id.* at 445 (citing *Al-Marri*, 360 F.3d at 709-11).

Here, this Court lacks jurisdiction over the three named Respondents because none of them reside or work within the Southern District of Indiana.  Mr. Kammen concedes that both the Secretary of Defense and the Convening Authority have their primary place of business at the Pentagon in Washington, D.C.  *See* Petition ¶¶ 6-7.  Mr. Kammen also has not carried his burden of establishing the Court's jurisdiction over Judge Spath, as the Petition contains no allegation or evidence that Judge Spath is physically present in the Southern District of Indiana.  *See* id. ¶ 5. In any event, Judge Spath's current duty station is Joint Base Andrews in Maryland.  *See* Declaration of Andrew I. Warden (attached as Exhibit 15) (attaching 2016 annual report of the Judge Advocate General of the United States Air Force and 2016 Congressional Directory stating that Judge Spath's current duty location is Maryland).  Because none of the Respondents

are located within this District, the Court lacks habeas jurisdiction, and this case must be

dismissed.  *See Kholyavskiy*, 443 F.3d at 949 n.2 (7th Cir. 2006) ("the named custodian must

reside within the geographical confines of the federal district where the complaint was filed").

### D. The Court Should Decline to Intercede in Independent Proceedings Before a Coordinate Court.

Even if Mr. Kammen could overcome the jurisdictional defects discussed above, which

he cannot, the habeas petition should also be denied on the independent ground that it constitutes

an improper collateral attack on the proceedings before a coordinate tribunal.  The principles of

comity articulated by the Supreme Court in *Schlesinger v. Councilman,* 420 U.S. 738 (1975),

require the Court to abstain from exercising jurisdiction over this case in light of the pending

proceedings before the military commission.

"[H]abeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319

(1995).  Thus, the Supreme Court has "recognized that 'prudential concerns,' such as comity and

the orderly administration of criminal justice, may 'require a federal court to forgo the exercise

of its habeas corpus power.'" *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citations omitted).

Even in habeas cases where subject-matter jurisdiction exists, "[t[here remains the

question of equitable jurisdiction, a question concerned, not with whether the claim falls within

the limited jurisdiction conferred on the federal courts, but with whether consistently with the

principles governing equitable relief the court may exercise its remedial powers."  *Councilman*,

420 U.S. at 754.  In situations where federal courts have been asked to intercede and address

collateral challenges to the proceedings of coordinate courts, the law is well-established that

federal courts, absent extraordinary circumstances, may not exercise their equitable jurisdiction

to intervene until the coordinate court has had the opportunity to address the party's grievance.

*See, e.g.*, *id.* at 754-55; *Younger v. Harris*, 401 U.S. 37 (1971) (federal courts must refrain from

enjoining pending state prosecution).  Indeed, relying on these principles, the Court of Appeals

for the District of Columbia Circuit in *In re Al-Nashiri* applied *Councilman* to the MCA and

abstained from addressing a collateral habeas challenge arising from Mr. Al-Nashiri's military

commission case.  *See In re Al-Nashiri*, 835 F.3d at 118 ("federal courts typically require the

petitioner to navigate th[e] process [available in the coordinate court] instead of skirting it.").

Here, Mr. Kammen has not even presented to the military commission his arguments

about whether he should be excused as counsel.  Instead, he is attempting to avoid that forum

entirely by bringing a collateral attack in this Court.  The Court should decline to usurp the

authority of the military commission and circumvent the processes available for Mr. Kammen to

seek relief before that tribunal.  Rather, the Court should allow the military commission to

perform its statutorily assigned responsibility of adjudicating matters presented to it, including

consideration of any arguments that Mr. Kammen may choose to make with respect to whether

he should be excused as counsel in Mr. Al-Nashiri's case.

In *Councilman*, the Supreme Court extended these traditional abstention principles to

courts-martial.  The Supreme Court addressed whether to exercise its equitable habeas

jurisdiction in the context of a suit brought by an active-duty military officer seeking to enjoin

ongoing court-martial proceedings arising from his alleged sale and possession of marijuana.

420 U.S. at 739-40, 761.  Councilman argued that the court-martial lacked jurisdiction to try him

because the charges against him were not "service connected," and therefore that he would

"suffer great and irreparable damage," and "might be deprived of his liberty without due

process," if his court-martial were not enjoined.  *Id.* at 741-42.  The Supreme Court rejected

Councilman's arguments, holding that "the balance of factors governing exercise of equitable

jurisdiction by the federal courts normally weighs against intervention, by injunction or

otherwise, in pending court-martial proceedings." *Id.* at 740.  In reaching this conclusion, the

Supreme Court highlighted two key factors:  "strong considerations favoring exhaustion of

remedies" and avoiding "intruding on the integrity of military court process[]."  *Id.* at 761.

With respect to the first consideration, the Court emphasized that whether the court-

martial would convict the petitioner, and whether a military court would uphold the appeal, were

matters "entirely of conjecture."  *Id.* at 754.  The Court explained that a requirement of

exhaustion of remedies—analogous to that applicable in administrative law—serves multiple

purposes such as allowing agencies "to correct their own errors," noting that "[t]he rule ensures

that [whether] judicial review is available will be informed and narrowed by the agencies' own

decisions."  *Id.* at 756.  Indeed, the Court observed that "often the agency's ultimate decision will

obviate the need for judicial intervention."  *Id.* at 756-57.

These exhaustion considerations apply fully to the military commission process.  Despite

having a judicial forum available to him, Mr. Kammen has not sought any relief through the

military commission system regarding his purported withdrawal as counsel for Al-Nashiri.

Indeed, Judge Spath has invited Mr. Kammen to appear and explain why he believes he is

ethically obligated to withdraw from the Al-Nashiri case, but Mr. Kammen has refused that

invitation at every turn.  If, after arguing his position, Mr. Kammen were not satisfied with Judge

Spath's decision, Mr. Kammen would have at least the opportunity to petition the U.S. Court of

Military Commission Review ("USCMCR"), a congressionally-authorized appellate court

consisting of civilians and appellate military judges, for extraordinary relief.  *See* 10 U.S.C. §

950f; Rule 22(a) of the USCMCR Rules of Practice.[13]  Following review by the USCMCR, Mr.

---

[13] The USCMCR Rules of Practice, approved by the Secretary of Defense on December 21,
2016, are available at
www.mc.mil/Portals/0/pdfs/CMCR%20Rules%20of%20Practice%20(Feb%203%202016).pdf.

Kammen also would have the opportunity to petition the United States Court of Appeals for the District of Columbia Circuit for extraordinary relief.  *See In re Al-Nashiri*, 791 F.3d 71, 76-78 (D.C. Cir. 2015) ("[T]his Court has jurisdiction to issue a writ of mandamus in aid of our appellate jurisdiction of military commissions and the CMCR.").

Rather than pursue these options, Mr. Kammen has decided to file this action as a collateral attack on the military commission.  *Councilman* prohibits this approach and requires that Mr. Kammen pursue the remedies available to him in the military commission system. Judge Spath is fully seized of the issues surrounding Mr. Kammen's representation, and there is no basis for Mr. Kammen to raise "in federal court an issue that just as easily could be considered by the commission . . . ."  *Al Nashiri*, 835 F.3d at 125; *see Noyd v. Bond*, 395 U.S. 683, 698 (1969)  ("Since petitioner has at no time attempted to show that prompt and effective relief was unavailable from the [military court] in his case, we hold that petitioner's failure to exhaust this remedy before seeking the assistance of the civilian courts is not excused.").

The Supreme Court in *Councilman* also emphasized "considerations of comity" and "the necessity of respect for coordinate judicial systems."  *Id.* at 757-58.  The Supreme Court explained that federal courts must respect "the congressional judgment" that "the military court system generally is adequate to and responsibly will perform its assigned task."  *Id.* at 756-58. Indeed, respect for a coordinate court system–one "carefully designed [and] . . . established by Congress," *id.* at 753–"counsel[ed] strongly against the exercise of equity power."  *Id.* at 757.

These same principles of comity extend to military commission proceedings, as the D.C. Circuit has recognized.  *See In re Al-Nashiri*, 835 F.3d at 118 (district courts would undermine

---

Rule 22(a) provides:  The court may, in its discretion, entertain petitions for extraordinary relief under 28 U.S.C. Section 1651(a), 10 U.S.C. Section 950f, and *In re Al -Nashiri*, 791 F.3d 71, 75-78 (D.C. Cir. 2015)."

the military commission statutory scheme "laid out by Congress were they routinely to entertain motions for equitable relief of the sort Al-Nashiri seeks").[14]  The MCA is a comprehensive statute addressing the trial of alien unprivileged enemy belligerents, including their rights to counsel, and "deference . . . should be accorded the judgments of the carefully designed military justice system established by Congress."  *Councilman*, 420 U.S. at 753.  Mr. Kammen offers no explanation of any harm he would suffer if he were required to pursue his legal arguments regarding his purported withdrawal before the military commission in the first instance.  Although the Supreme Court has recognized that intervention may be appropriate where a plaintiff establishes "extraordinary circumstances, where the danger of irreparable loss is both great and immediate," that is, "other than that attendant to resolution of his case in the military court system," that is not the case here.  *Younger*, 401 U.S. at 46; *Councilman*, 420 U.S. at 753.  Indeed, any alleged harm Mr. Kammen could muster would be no more compelling than the due process and liberty interests in *Councilman*, 420 U.S. at 754, or the First Amendment interests of the petitioners in *Younger*, 401 U.S. at 38-39.  And in both of those cases the Supreme Court declined to intervene, holding that the coordinate systems, whether military or state, were capable of—and, indeed, entitled to—address the petitioners' arguments in the first instance.  *See Councilman*, 420 U.S. at 761; *Younger*, 401 U.S. at 54.  The Court should reach the same conclusion in this case.

Finally, *Councilman* instructs that federal courts must consider whether issues raised in a collateral attack are "matters as to which the expertise of military courts is singularly relevant,

---

[14] *Compare Hamdan v. Rumsfeld*, 548 U.S. 557, 586-87 (2006) (declining to apply *Councilman* deference to military commission proceedings under a prior executive authorization that, among other things, lacked sufficient avenues for civilian review and lacked sufficient adjudicative independence from military command authorities, deficiencies that were subsequently cured by Congress and held sufficient by the D.C. Circuit in *Al-Nashiri*).

and their judgments indispensable to inform any eventual review in Art. III courts."

*Councilman*, 420 U.S. at 760.  That consideration applies with particular force in this case

because the military commission has intimate familiarity with its own governing law and

procedures as well as a long history of supervising Mr. Kammen's involvement in the Al-Nashiri

proceedings since 2008.  Accordingly, Judge Spath is far better positioned than this Court to

evaluate whatever application for relief Mr. Kammen may choose to make against the backdrop

of the proceedings before the military commission.

## CONCLUSION

For the reasons stated above, the Court should dismiss the petition for writ of habeas

corpus, deny the motion for declaratory judgment, and vacate the November 3, 2017 Order.  A

proposed order is attached.


Dated: December 21, 2017                    Respectfully submitted,

                                            CHAD A. READLER
                                            Acting Assistant Attorney General
                                            Civil Division

                                            TERRY M. HENRY
                                            Assistant Director
                                            Civil Division, Federal Programs Branch

                                            */S/ Andrew I. Warden*
                                            ANDREW I. WARDEN (IN Bar #23840-49)
                                            Senior Trial Counsel
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave., NW
                                            Washington, DC 20530
                                            Tel.: (202) 616-5084
                                            Fax: (202) 616-8470
                                            E-mail: Andrew.Warden@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2017, a copy of the foregoing motion for extension of time was filed electronically using the Court's CM/ECF filing system.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system, including the following counsel:

Robert Hammerle,
rhammerle@hhlaw-in.com

Jessie A. Cook:
jessieacook@icloud.com

*Attorneys for Petitioner*

*/s/ Andrew I. Warden*
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel: (202) 616-5084
Fax: (202) 616-8470
E-Mail: andrew.warden@usdoj.gov

*Attorney for the United States*