**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| RICHARD L. KAMMEN,<br><br>        *Petitioner*,<br><br>        v.<br><br>GEN. JAMES MATTIS in his official capacity<br>as SECRETARY OF DEFENSE, and<br><br>JAMES COYNE, in his official capacity as<br>ACTING CONVENING AUTHORITY,<br>DEPARTMENT OF DEFENSE, OFFICE OF<br>MILITARTY COMMISSONS, and<br><br>COL. VANCE H. SPATH (AIR FORCE), in<br>his official capacity as MILITARY JUDGE,<br>MILITARY COMMISSIONS TRIAL<br>JUDICIARY, DEPARTMENT OF DEFENSE,<br><br>        *Respondents*. | No. 1:17-cv-03951-TWP-DML |

**RESPONDENTS' OPPOSITION TO AMENDED PETITION FOR WRIT OF HABEAS
CORPUS AND MOTION FOR DECLARATORY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 4

    A.    History of *United States v. Al-Nashiri* and the Military Commissions Act............ 4

    B.    History of Petitioner Kammen's Purported Withdrawal as Learned
        Counsel for Al-Nashiri........................................................................................ 6

    C.    Current Appeal Before The U.S. Court of Military
        Commission Review ......................................................................................... 14

    D.    The Habeas Petition and Procedural History in this Court .................................. 15

ARGUMENT ...................................................................................................................... 16

    A.    The Court Lacks Jurisdiction Because Mr. Kammen
        Is Not "In Custody" ......................................................................................... 16

    B.    Absent Habeas Jurisdiction, the Habeas Statute and Sovereign
        Immunity Bar Mr. Kammen's Alternative Bases For The
        Court's Jurisdiction ......................................................................................... 24

    C.    The Court Lacks Jurisdiction Over the Respondents........................................... 27

    D.    The Court Should Abstain From Interfering With Ongoing Proceedings in
        the Military Commission System. ....................................................................... 30

CONCLUSION.................................................................................................................... 35

## TABLE OF AUTHORITIES

### Cases

*Al-Marri v. Rumsfeld*,
    360 F.3d 707 (7th Cir. 2004) ............................................................................ 28, 29
*Al-Nashiri v. MacDonald*,
    741 F.3d 1002 (9th Cir. 2013) ........................................................................... 24, 25
*Arvanis v. Noslo Eng'g Consultants, Inc.*,
    739 F.2d 1287 (7th Cir. 1984) ................................................................................. 25
*Baker v. Spath*,
    No. 17-CV-02311-RCL (D.D.C.) ............................................................................ 10
*Barry v. Bergen County Probation Department*,
    128 F.3d 152 (3d Cir. 1997) .................................................................................... 23
*Braden v. 30th Judicial Circuit Court of Kentucky*,
    410 U.S. 484 (1973) ................................................................................................ 27
*Cole v. United States*,
    657 F.2d 107 (7th Cir. 1981) ................................................................................... 25
*Curry v. Sec'y of Army*,
    595 F.2d 873 (D.C. Cir. 1979) ................................................................................ 10
*Da Vang v. Hoover*,
    2006 WL 496034 (W.D. Wis. Feb. 27, 2006) ........................................................ 29
*Dremann v. Francis*,
    828 F.2d 6 (9th Cir. 1987) ...................................................................................... 20
*Esparza v. State of Utah*,
    258 F. App'x 181 (10th Cir. 2007) ......................................................................... 18
*FDIC v. Meyer*,
    510 U.S. 471 (1994) .......................................................................................... 24, 25
*Filary v. I.N.S.*,
    1991 WL 152892 (N.D. Ill. Aug. 1, 1991) ............................................................ 18
*Ginsberg v. Abrams*,
    702 F.2d 48 (2d Cir. 1983) ..................................................................................... 17
*GNB Battery Techs., Inc. v. Gould, Inc.*,
    65 F.3d 615 (7th Cir. 1995) ..................................................................................... 26
*Gonzalez-Fuentes v. Molina*,
    607 F.3d 864 (1st Cir. 2010) ................................................................................... 20
*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) ................................................................................... 26
*Gusik v. Schilder*,
    340 U.S. 128 (1950) ................................................................................................ 32
*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006) .................................................................................................. 5
*Hensley v. Municipal Court, San Jose Milpitas Judicial District*,
    411 U.S. 345 (1973) ................................................................................................ 21
*In re Al-Nashiri*,
    791 F.3d 71 (D.C. Cir. 2015) .................................................................................. 33
*In re Al-Nashiri*,
    835 F.3d 110 (D.C. Cir. 2016) .......................................................................... 4, 26, 31, 34

*Janko v. Gates*,
    741 F.3d 136 (D.C. Cir. 2014) ................................................................. 25

*Jones v. Cunningham*,
    371 U.S. 236 (1963) ................................................................... 23, 24

*Kentera v. United States*,
    2017 WL 401228 n.2 (E.D. Wis. Jan. 30, 2017) ................................................ 26

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ......................................................................... 25

*Kholyavskiy v. Achim*,
    443 F.3d 946 (7th Cir. 2006) ............................................................ 28, 30

*Kline v. Burke Const. Co.*,
    260 U.S. 226 (1922) ......................................................................... 26

*Lane v. Pena*,
    518 U.S. 187 (1996) ......................................................................... 25

*Lynch v. United States*,
    292 U.S. 571 (1934) ......................................................................... 26

*Maleng v. Cook*,
    490 U.S. 488 (1989) .................................................................... 16, 18

*Munaf v. Geren*,
    553 U.S. 674 (2008) ......................................................................... 31

*Noyd v. Bond*,
    395 U.S. 683 (1969) .................................................................... 32, 34

*Palma v. United States*,
    2008 WL 4861707 (D.N.M. July 31, 2008) .................................................... 29

*Phifer v. Clark*,
    115 F.3d 496 (7th Cir. 1994) ................................................................ 21

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004) ................................................................ 27, 28, 29

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975) ......................................................... 30, 31, 32, 34, 35

*Schlup v. Delo*,
    513 U.S. 298 (1995) ......................................................................... 30

*Seaton v. Kentucky*,
    92 F. App'x 174 (6th Cir. 2004) ............................................................. 33

*Spears v. United States*,
    No. 18-CV-1087 (D.C. Cir.) .................................................................. 14

*Spring v. Caldwell*,
    692 F.2d 994 (5th Cir. 1982) ................................................................ 19

*Stackhouse v. Miles*,
    2008 WL 956711 at *1 (W.D. Mich. Apr. 7, 2008) ............................................. 29

*Stanbridge v. Scott*,
    791 F.3d 715 (7th Cir. 2015) ................................................................ 17

*U.S. ex rel. Cummings v. FitzSimon*,
    337 F. App'x 143 (3d Cir. 2009) ............................................................. 29

*U.S. ex rel. Johnson v. McGinnis*,
    734 F.2d 1193 (7th Cir. 1984) ............................................................... 33

*United States v. Ortiz*,
    35 M.J. 391 (C.M.A. 1992) ................................................................... 13

*United States v. Shibley*,
   112 F. Supp. 734 (S.D. Cal. 1953) ........................................................................ 13
*Vargas v. Swan*,
   854 F.2d 1028 (7th Cir. 1988) .................................................................... 20, 21
*Virsnieks v. Smith*,
   521 F.3d 707 (7th Cir. 2008) ...................................................................... 16, 20
*Wisconsin Cent., Ltd. v. Shannon*,
   539 F.3d 751 (7th Cir. 2008) ............................................................................... 26
*Yaroshefsky v. Mattis*,
   No. 17-CV-8718 (GHW) (S.D.N.Y.) ....................................................................... 7
*Younger v. Harris*,
   401 U.S. 37 (1971) ................................................................................... 31, 34, 35

## Statutes

10 U.S.C. §§ 801 *et seq.* ........................................................................................ 6
10 U.S.C. § 948b(c) ................................................................................................. 6
10 U.S.C. § 948k ..................................................................................................... 5
10 U.S.C. § 948k(d)(2) ............................................................................................ 6
10 U.S.C. §§ 948a-950t ........................................................................................... 4
10 U.S.C. §§ 948h ............................................................................................. 9-10
10 U.S.C. §§ 949a .................................................................................................... 5
10 U.S.C. §§ 949a(a), (b) ........................................................................................ 5
10 U.S.C. § 949a(b)(2)(C)(i) .................................................................................... 5
10 U.S.C. § 949a(b)(2)(C)(ii) ................................................................................... 5
10 U.S.C. § 950b ................................................................................................... 10
10 U.S.C. § 950f .................................................................................... 14, 32, 33
10 U.S.C. § 950p(c) ............................................................................... 2, 24, 26
28 U.S.C. § 1331 .................................................................................... 2, 24, 25
28 U.S.C. § 2201 ................................................................................. 2, 24, m25
28 U.S.C. § 2241 ...................................................................................... 2, 16
28 U.S.C. § 2241(a) ............................................................................................ 29
28 U.S.C. § 2241(c)(3) ......................................................................................... 16
28 U.S.C. § 2241(e)(2) ............................................................................... 2, 24
Pub. L. No. 109-366 ............................................................................................... 5
Pub. L. No. 111-84 ................................................................................................. 5

## Federal Rules

Fed. R. Civ. P. 25(d) .............................................................................................. 9

## Other Authorities

R.M.C. 505(d)(2) ..................................................................................................... 7
R.M.C. 506 ............................................................................................................... 6
R.M.C. 809 ............................................................................................................... 9
R.M.C. 809(d) .......................................................................................................... 9
R.M.C. 1101(c) ........................................................................................................ 9
USCMCR Rules of Practice, Rule 22(a) ............................................................... 33

## INTRODUCTION

Respondents hereby oppose Petitioner Richard Kammen's amended petition for writ of habeas corpus and motion for declaratory judgment.

Mr. Kammen is an Indianapolis-based attorney who, since 2008, has been representing Abd Al-Rahim Hussayn Muhmmad Al-Nashiri, a high-value detainee alleged to be the mastermind of the 2000 bombing of the *U.S.S. Cole*, in military commission proceedings at the United States Naval Station, Guantanamo Bay, Cuba.  Mr. Kammen has sought to withdraw as counsel in that case, and a legal dispute exists over whether the law governing military commission proceedings allows him to do so without the authorization of the military trial judge. Mr. Kammen takes the position that he properly withdrew as counsel in November 2017 upon filing a notice of withdrawal with the military commission on authorization of the Chief Defense Counsel for military commissions.  The trial judge, Respondent Col. Vance Spath, disagreed and issued a ruling concluding that excusal of defense counsel after they have entered an appearance before the Commission must be accomplished by the military judge on the record for good cause. That ruling, and other legal issues surrounding Mr. Kammen's absence, are currently the subject of an appeal to the United States Court of Military Commission Review ("USCMCR"), a statutorily established appellate court for military commissions.

Rather than continue to litigate these issues within the military commission judicial system, Mr. Kammen has taken the extraordinary step of suing Judge Spath in this Court. Specifically, Mr. Kammen has filed a petition for writ of habeas corpus alleging that he faces "imminent risk of physical custody" if he does not appear before the military commission and continue to serve as defense counsel for Al-Nashiri.  *See* Amended Petition for Writ of Habeas Corpus and Motion for Declaratory Judgment ("Am. Pet.") ¶ 2, ECF No. 29.  The amended petition asks this Court to rule on some of the same legal questions that are currently pending

before the USCMCR and "issue a finite injunction prohibiting Respondents from attempting to seize, punish, or compel Mr. Kammen." *Id.* at 4.

The petition is legally baseless and jurisdictionally flawed in multiple respects. First, the Court lacks jurisdiction over the petition because Mr. Kammen is not "in custody," as required by the habeas statute. *See* 28 U.S.C. § 2241. Mr. Kammen has never been in the physical custody of any of the named Respondents, he faces no restrictions on his freedom of movement, and he is not subject to any conditions that significantly restrain his liberty. Further, Mr. Kammen's speculative allegation that he could be taken into custody at some uncertain point in the future is insufficient to satisfy the "in custody" requirement for a writ of habeas corpus. *See* Am. Pet. 3. Neither Judge Spath nor the military commission prosecutors have expressed an intention to force Mr. Kammen to appear for military commission proceedings. And the underlying military commission proceedings have been indefinitely abated by the military judge, rendering the possibility of Mr. Kammen being taken into custody even more remote.

Second, absent habeas jurisdiction, there is no alternative jurisdictional basis or applicable waiver of sovereign immunity to permit the extraordinary relief that Mr. Kammen seeks. The Court lacks jurisdiction over any non-habeas claims asserted in this case based on 28 U.S.C. § 2241(e)(2), which bars jurisdiction over a non-habeas action "against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant." Mr. Kammen's claims and allegations in this case undoubtedly "relat[e]" to the "trial" proceedings in the *Al-Nashiri* case. Further, even absent this jurisdictional bar, none of the other authorities that Mr. Kammen invokes—the federal question statute (28 U.S.C. § 1331), the Declaratory Judgment Act (28 U.S.C. § 2201), the Military Commissions Act (10 U.S.C. § 950p(c)), or the

Constitution—provides the Court with the requisite jurisdictional basis to adjudicate the legality of the hypothetical future custody that Mr. Kammen alleges.

Third, even assuming the Court has subject-matter jurisdiction, the Court lacks jurisdiction over the named Respondents, none of whom is a proper respondent or physically located within the Southern District of Indiana. Both the Supreme Court and the Court of Appeals for the Seventh Circuit have held that there is only one proper respondent to a habeas case—the immediate custodian—and that respondent must reside within the geographic confines of the federal district where the petition was filed. Mr. Kammen's petition fails both of these elements. None of the named Respondents—the Secretary of Defense, the Convening Authority for Military Commissions, or Judge Spath— has custody of Mr. Kammen. Further, even if one of them did, the Court would still lack jurisdiction because none of the Respondents lives, works, or resides in the Southern District of Indiana.

Fourth, even assuming Mr. Kammen could overcome the significant jurisdictional defects discussed above, the habeas petition should be dismissed because Mr. Kammen has failed to exhaust his remedies in the military commission forum, and this case constitutes an improper collateral attack on the proceedings before a coordinate tribunal. The law is well-established that collateral challenges to the proceedings of coordinate courts are disfavored and that courts should not exercise their equitable jurisdiction to intervene until the coordinate court has had the opportunity to resolve the disputed issue in the first instance. Applying these traditional abstention principles, the Court should dismiss Mr. Kammen's petition and require that the available avenues for relief before the military commission system be exhausted, rather than entertain an improper collateral attack in this Court.

For these reasons, as explained further below, the amended petition for writ of habeas corpus should be dismissed, the motion for declaratory judgment should be denied, and the Court's November 3, 2017 Order Following Initial Hearing, ECF No. 15, should be vacated.

**BACKGROUND**

**A. History of *United States v. Al-Nashiri* and the Military Commissions Act.**

This case arises from the ongoing criminal prosecution of Abd Al-Rahim Hussayn Muhmmad Al-Nashiri ("Al-Nashiri") before a military commission at the United States Naval Station, Guantanamo Bay, Cuba.  Al-Nashiri "is the alleged mastermind of the bombings of the U.S.S. *Cole* and the French supertanker the M/V *Limburg*, as well as the attempted bombing of the U.S.S. *The Sullivans*."  *In re Al-Nashiri*, 835 F.3d 110, 113 (D.C. Cir. 2016), *cert. denied* 138 S. Ct. 354 (2017).  Al-Nashiri is charged with multiple violations of the laws of war under the Military Commissions Act of 2009 ("MCA"), 10 U.S.C. §§ 948a-950t, including terrorism, murder in violation of the law of war, and attacking civilians.  *See In re Al-Nashiri*, 835 F.3d at 114.  The charges carry the possible punishment of death.  *See id.*

The current military commission proceedings against Al-Nashiri were initiated in September 2011.  *See* Declaration of Colonel John B. Wells ¶ 30 ("Wells Decl.") (Ex. 1).  Since then, proceedings have convened at Guantanamo Bay on a regular basis to address a wide variety of pre-trial matters.  *See* Wells Decl. ¶¶ 31-41.  The current military commission judge presiding over the case is Colonel Vance H. Spath, a named Respondent in this action who also serves as the Chief Trial Judge of the United States Air Force.  *See* Wells Decl. ¶ 34.  Over 2800 docket entries have been made in the case, most of which have been given a docket designation ("Appellate Exhibit" or "AE") and are publicly available at the Office of Military Commissions

4

website.  *See* Office of Military Commissions, USS Cole: Abd al-Rahim Hussein Muhammed Abdu Al-Nashiri, http://www.mc.mil/Cases.aspx?caseType=omc&status=1&id=34.[1]

The current military commission system is the product of an extended dialogue among Congress, the Executive, and the Judiciary.  After the Supreme Court in *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), determined that an earlier military-commission process created by the Executive Branch exceeded then-existing statutory authority, *id.* at 590-595, 613, 620-635, Congress enacted the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600, to authorize the President to establish military commissions to try alien unprivileged enemy belligerents for violations of the law of war and other offenses.  Congress subsequently amended the statute in 2009.  *See* Pub. L. No. 111-84, §§ 1801-07, 123 Stat. 2574.  Among other things, the MCA established enhanced procedural protections and rigorous review mechanisms for trials by military commissions.  *See, e.g.*, 10 U.S.C. §§ 949a(a) and (b).

With respect to the accused's right to representation by counsel, the MCA provides that in capital cases, the accused has the right "to be represented before a military commission by civilian counsel if provided at no expense to the Government, and by either the defense counsel detailed or the military counsel of the accused's own selection, if reasonably available."  10 U.S.C. § 949a(b)(2)(C)(i).  Further, the accused has the right to "be represented . . . to the greatest extent practicable, by at least one additional counsel who is learned in applicable law relating to capital cases . . . ."  10 U.S.C. § 949a(b)(2)(C)(ii).

Congress also authorized the Secretary of Defense to promulgate rules governing "[p]retrial, trial, and post-trial procedures" for military commissions.  *See* 10 U.S.C. § 949a; 10 U.S.C. § 948k.  Pursuant to this authority, the Secretary of Defense issued Rules for Military Commissions ("R.M.C.") modeled on similar rules governing courts-martial pursuant to the

---

[1] Where feasible, this brief includes hyperlinks to cited documents from the military commission docket (though such documents are also accessible through the Al-Nashiri case page on the Office of Military Commissions website).  Documents that have not yet been posted online are attached as exhibits.

Uniform Code of Military Justice ("U.C.M.J."), 10 U.S.C. §§ 801 *et seq.*  *See* 10 U.S.C. § 948b(c).  As relevant here, R.M.C. 506 sets forth the rules governing the accused's right to counsel and provides, *inter alia*, that in a capital case the accused has the right to be represented "by at least one additional counsel who is learned in applicable law relating to capital cases."[2]

### B. History of Petitioner Kammen's Purported Withdrawal as Learned Counsel for Al-Nashiri.

Mr. Kammen has served as learned counsel for Al-Nashiri since 2008.  *See* Wells Decl. ¶¶ 42-43.  In addition to Mr. Kammen, Al-Nashiri is represented by, among others, a detailed military defense attorney (U.S. Navy Lieutenant Alaric Piette) and two civilian attorneys employed by the Department of Defense (Rosa Eliades and Mary Spears).  *See* Wells Decl. ¶ 44.

On October 6, 2017, Mr. Kammen and the two civilian attorneys submitted requests to the Chief Defense Counsel, Brigadier General John Baker, to withdraw from representing Al-Nashiri.[3]  *See* Am. Pet. ¶ 18; Wells Dec. ¶ 52.  The request was based on the attorneys' speculative belief that continued representation of Al-Nashiri would violate their respective states' rules of professional responsibility due to alleged intrusions by the Government and their alleged inability to advise Al-Nashiri about risks to attorney-client confidentiality.  *See* Am. Pet. ¶¶ 14-17; *id.* Ex. C at 7-8 of 32; Wells Decl. ¶¶ 52, 61.  The withdrawal request was accompanied by an advisory ethics opinion from Professor Ellen Yaroshefsky of Hofstra University School of Law, but did not include any opinions from the attorneys' respective bar authorities.  *See* Am. Pet. ¶¶ 16-17; Wells Decl. ¶¶ 51-52.[4]  On October 11, 2017, the Chief

---

[2] The rules are located in Part II of the Manual for Military Commissions (2016), http://www.mc.mil/LEGALRESOURCES/MilitaryCommissionsDocuments.aspx.

[3] The Chief Defense Counsel is responsible for overseeing the defense of all detainees charged with crimes under the MCA.  *See* Regulation for Trial by Military Commission 9-1.a.2 (2016), http://www.mc.mil/Portals/0/pdfs/RTMC%20-%20Change%20to%20Rule%209%20-%202016.pdf; *see also* 10 U.S.C. § 948k(d)(2).

[4] On November 6, 2017, Judge Spath ordered military commission prosecutors to secure Ms. Yaroshefsky's testimony by video conference in Alexandria, Virginia for proceedings before the military commission in Guantanamo during the week of November 13, 2017.  In response, Ms. Yaroshefsky filed a purported habeas corpus

Defense Counsel issued a memorandum purporting to excuse Mr. Kammen and the two civilian attorneys for "good cause" under R.M.C. 505(d)(2), the rule governing changes of defense counsel.  *See* <u>Am. Pet.</u> ¶ 19; Wells Decl. ¶ 53.  On October 13, 2017, LT Piette filed separate notices with Military Commission purporting to provide notice that Mr. Kammen and the two civilian attorneys had been excused; each notice included Professor Yaroshefsky's advisory ethics opinion.  *See* <u>Am. Pet.</u> ¶ 21; Wells Decl. ¶ 54.  The Al-Nashiri defense team's October 13, 2017 filings were the first instances in this case of defense counsel in this context attempting to withdraw based on the purported authority of the Chief Defense Counsel to excuse counsel unilaterally.  Wells Decl. ¶¶ 58-59.

On October 16, 2017, Al-Nashiri's detailed military attorney (LT Piette) filed a motion to abate the proceedings against Al-Nashiri pending the appointment of new learned counsel to replace Mr. Kammen.  *See* <u>Am. Pet.</u> ¶ 21; *id.* <u>Ex. D</u>; Wells Decl. ¶ 55.  The motion argued that the power to excuse defense counsel is vested entirely in the Chief Defense Counsel and that he exercised that unilateral authority to excuse Mr. Kammen and the two civilian attorneys from the case.  *See* Am. Pet. <u>Ex. D</u>; Wells Decl.¶ 55.  The motion also represented that Mr. Kammen and the two civilian attorneys would not attend the next scheduled hearing session, set for October 30-November 17, 2017, and would not conduct other legal business on behalf of Al-Nashiri.  *See* Am. Pet. <u>Ex. D</u>; Wells Decl. ¶ 56.

That same day, Judge Spath issued an order calling for expedited briefing on the motion to abate.  *See* <u>Am. Pet.</u> ¶ 22; *id.* <u>Ex. E</u>; Wells Decl. ¶ 57.  The order stated that he had "not found 'good cause' to authorize the termination of the attorney-client relationship between the Accused

---

petition in the U.S. District Court for the Southern District of New York along with a motion for a temporary restraining order to quash the subpoena that military commission prosecutors issued to secure her testimony.  *See Yaroshefsky v. Mattis*, No. 17-CV-8718 (GHW) (S.D.N.Y.)  On November 15, 2017, the court denied the habeas petition and the request for a temporary restraining order.  *See id.*, Tr., Nov. 15, 2017, ECF No. 22 (Ex. 2); *id.*, Order, Nov. 17, 2017, ECF No. 21 (Ex. 3).  Ms. Yaroshefsky testified before the military commission by video conference on November 17, 2017.

and any of his Civilian Defense Counsel who have appeared before this Commission."  Am. Pet. Ex. E.  Judge Spath also made clear that "Mr. Kammen, Ms. Eliades, and Ms. Spears remain counsel of record in this case, and are ordered to appear at the next scheduled hearing of this Commission, unless otherwise excused by this Commission."  *Id.*

On October 27, 2017, after receiving briefing on the excusal issue, Judge Spath rejected the Chief Defense Counsel's argument and concluded that excusal of defense counsel for good cause after they have established an attorney-client relationship and entered an appearance before the Commission must be accomplished by the military judge on the record.  *See* Am. Pet. ¶ 25; *id.* Ex. I; Wells Decl. ¶ 60.  Judge Spath also found that "no good cause exists to warrant the excusal of Learned Counsel or the two DoD civilian defense counsel from their duties to represent the Accused in this case."  Am. Pet. Ex. I; Wells Decl. ¶ 61.  In particular, Judge Spath found that "no evidence has been presented to demonstrate intrusions [into attorney-client communications] in this case affecting this Accused which would ethically require the withdrawal or disqualification of Learned Counsel."  Am. Pet. Ex. I.[5]  Judge Spath denied the motion to abate and concluded that "at this stage of the proceedings, the excusal of Learned Counsel, who has acted as lead attorney for the Accused for nine years, will prejudice the Accused's due process rights."  *Id.*

Notwithstanding Judge Spath's findings and orders, Mr. Kammen, Ms. Eliades, and Ms. Spears did not travel to Guantanamo in advance of the November 2017 hearing session.  *See* Am.

---

[5] In reaching this decision, Judge Spath was aware of the classified information allegedly giving rise to Mr. Kammen, Ms. Eliades, and Ms. Spears's purported withdrawals.  Wells Decl. ¶ 61 n.5.  Additionally, Judge Spath, and the previous judge who handled Al-Nashiri's case (Judge James Pohl), issued rulings on various motions filed by Al-Nashiri's defense team relating to these allegations between 2012 and 2017, never once having found an actual intrusion of the attorney-client relationship between the accused and his attorneys.  *See id.* ¶ 51 (citing Attachments D through J).  On February 14, 2018, Judge Spath again reiterated that there was no factual basis to support Al-Nashiri's allegations that his attorney-client communications had been compromised and reaffirmed his prior factual findings with additional supporting details that "[n]o intrusions occurred in any meeting between Mr. al Nashiri and his attorneys."  *See* Unofficial / Unauthenticated Transcript of Proceedings at 12112-15 (Feb. 14, 2018).  In March 2018, the Department of Defense publicly released an unclassified summary providing even more detailed information that there had been no intrusion or monitoring of Al-Nashiri's attorney-client communications.  *See* Declassified Facts and Circumstances Surrounding Attorney-Client Meeting Spaces (Ex. 4).

Pet. ¶ 26; Wells Dec. ¶ 62.  And on October 31, 2017, the first day of the hearing session, Judge Spath reiterated his conclusions that good cause did not exist to excuse the attorneys, including Mr. Kammen, and that no evidence had been presented demonstrating an intrusion into Al-Nashiri's attorney-client communications that would require Mr. Kammen's withdrawal or disqualification.  *See* Wells Decl. ¶ 62.  After making initial findings, Judge Spath called the Chief Defense Counsel, Brig. Gen. Baker, as a witness to examine the reasons for the absence of Mr. Kammen and the other two civilian attorneys.  *See id.* ¶ 63.  The Chief Defense Counsel attempted to categorically assert privilege and refused Judge Spath's order to take the witness stand.  *See id.*  Judge Spath then ordered the Chief Defense Counsel to rescind his purported unilateral excusal of Mr. Kammen and the two civilian attorneys, and to notify them that the purported excusal was void.  *See id.*  The Chief Defense Counsel refused to comply with that order.  *See id.*

The following day, November 1, 2017, Judge Spath conducted summary contempt proceedings against the Chief Defense Counsel.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Nov. 1, 2017) at 10052-74; Wells Decl. ¶ 63.  At the conclusion of the proceedings, Judge Spath held the Chief Defense Counsel in contempt of the military commission, ordering the Chief Defense Counsel confined for a period of 21 days and imposing a $1,000 fine.  *See* Nov. 1 Tr. at 10060-73; Wells Dec. ¶ 63.

On November 3, 2017, Harvey Rishikof, the former Convening Authority for Military Commissions and a named Respondent in this case,[6] deferred the remaining term of the Chief Defense Counsel's confinement pending a final decision by the Convening Authority on the

---

[6] The amended petition substitutes, Mr. James Coyne, who has taken over as Acting Convening Authority from Mr. Rishikoff.  *See* Am. Pet. ¶ 9; Fed. R. Civ. P. 25(d) (automatic substitution of public officers in official capacity actions).

sentence and finding of contempt.[7]  *See* R.M.C. 809(d); 1101(c).  Thereafter, on November 21, 2017, the Convening Authority issued a final decision that affirmed the findings of contempt, but vacated the remaining term of confinement and the fine.  *See* Mem. from Convening Authority Re: Action on Contempt Proceedings (Ex. 5).[8]

After concluding contempt proceedings against the Chief Defense Counsel, Judge Spath issued an order directing Mr. Kammen and the two civilian attorneys to appear on November 3 at the federal office building in Alexandria, Virginia (the Mark Center) that facilitates video teleconferences with the military commission courtroom in Guantanamo Bay, and to serve as Al-Nashiri's counsel for the remainder of the hearing session.  *See* Order, Nov. 1, 2017 (AE 389J). Mr. Kammen and the other civilian attorneys did not appear as ordered, and they were absent for the entire November hearing session from October 31 to November 17.  *See* Wells Decl. ¶ 64. Their absences, and LT Piette's refusal to participate in the case without learned counsel present, caused significant disruption to the military commission proceedings.  *Id.*  Every witness for the November hearing had to be rescheduled.  *Id.*  Further, in Mr. Kammen's absence, LT Piette declined to examine a witness who traveled from Qatar to Guantanamo Bay at the request of Al-Nashiri's defense team to testify about various issues related to a motion to suppress filed by Al-Nashiri.  *Id.*  Judge Spath described the situation as "disorder and havoc."  *See* Nov. 1 Tr. at 10060; Wells Decl. ¶ 64.  Judge Spath nonetheless continued to address various pre-trial matters unrelated to capital issues over the course of the November hearing session and noted Mr. Kammen's continued absence on the record each day.  *See* Unofficial / Unauthenticated

---

[7] The Convening Authority is responsible for the overall management of the military commissions process, including logistics and personnel support.  The Convening Authority is authorized to, among other things, convene military commissions, refer charges to trial, negotiate pre-trial agreements, and review records of trial.  *See, e.g.*, 10 U.S.C. §§ 948h; 950b.  The Convening Authority under the MCA serves a similar function as the convening authority for courts-martial under the U.C.M.J.  *See Curry v. Sec'y of Army*, 595 F.2d 873, 875-76 (D.C. Cir. 1979) (summarizing the role of the convening authority in the court-martial process).

[8] On November 2, 2017, the Chief Defense Counsel filed a petition for writ of habeas corpus in the U.S. District Court for the District of Columbia challenging the contempt finding.  *See Baker v. Spath*, No. 17-CV-02311-RCL (D.D.C.).  The parties have briefed the issues and are awaiting a decision from the court.

Transcript of Proceedings (Nov. 14, 2017) at 10675-76.  Neither Mr. Kammen nor any other member of Al-Nashiri's defense team sought further review of Judge Spath's ruling regarding the withdrawal issue.

Although Judge Spath ordered Mr. Kammen to appear for the November hearing session, Judge Spath took no action during the hearing session to compel his attendance.  On November 3, Judge Spath expressly stated:  "I haven't issued a single writ of attachment for those three civilians, nor confined them, nor ordered their confinement, nor indicated they're confined."  *See* Unofficial / Unauthenticated Transcript of Proceedings (Nov. 3, 2017) at 10157.  Judge Spath reiterated the same statement on the final day of the hearing session:  "[N]o effort has been made to detain [Mr. Kammen], apprehend him, arrest him, or anything else."  *See* Unofficial / Unauthenticated Transcript of Proceedings (Nov. 17, 2017) at 11036.   Instead of issuing orders or warrants to compel Mr. Kammen's appearance, Judge Spath requested briefing on a proposed course of action to address Mr. Kammen's absence.  *See* Nov. 3 Tr. at 10155-56.

On November 15, 2017, military commission prosecutors filed a brief recommending that Judge Spath refer the matter to the Chief Judge of the Military Commissions Trial Judiciary for possible disciplinary action.  *See* Government Brief Regarding Proposed Actions as to Three Civilian Defense Counsels' Repeated Violations of Commission Orders ("Gov. Br.") (AE 389N). In the event the Chief Judge determines that disciplinary action is warranted against Mr. Kammen, the prosecutors recommended that the sanction should "range from no action to permanent disbarment from practicing before any military commission."  *Id.* at 5.   The prosecutors did "not recommend the Commission issue any further orders to compel Mr. Kammen's appearance."  *Id.* at 7 n.5.[9]

---

[9] The prosecutors also suggested that Judge Spath take steps to have another learned counsel appointed in Mr. Kammen's absence.  On November 17, 2017, Judge Spath ordered that steps be taken to recall Commander Brian Mizer, Al-Nashiri's previous detailed military defense counsel to the case.  *See* Nov. 17 Tr. at 11042-43; *see also* Order, Nov. 17, 2017 (AE 348M).  In April 2018, the Secretary of Defense issued a decision directive to mobilize

On December 1, 2017, Judge Spath issued a scheduling order for the next round of pre-trial hearings in the *Al-Nashiri* case scheduled to occur at Guantanamo Bay on January 18-24, 2018.  *See* Docketing Order, Dec. 1, 2017 (AE 390).[10]  As relevant here, the order states:  "Mr. Richard Kammen, appointed outside learned counsel, may appear as well to represent his client or show cause why he believes he is ethically obligated to withdraw from this case."  *Id.*  Judge Spath made clear that he "is not ordering Mr. Kammen to appear."  *Id.*  The January hearing session took place on January 19 and 22, 2018, and consistent with his prior orders and statements, Judge Spath took no action to compel Mr. Kammen's attendance.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Jan. 19 & 22, 2018).

Following that hearing, on January 23, 2018, Judge Spath issued a docketing order for the February hearing session and repeated the same invitation that Mr. Kammen "may appear" but reiterated that that "this Commission is not ordering Mr. Kammen appear."  *See* Docketing Order (AE 393) (Ex. 8).  Mr. Kammen did not appear at the February hearing session, and Judge Spath once again did not take any action to compel Mr. Kammen's appearance.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Feb. 12, 13, 14, 15, 16, 2018).

By contrast, Judge Spath specifically ordered Mr. Kammen's Department of Defense-employed co-counsel, Ms. Eliades and Ms. Spears, to appear at the January hearing.  *See* Orders to Appear (AE 389X, AE 389Y).  Ms. Spears and Ms. Eliades, however, did not appear at the January hearing session.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Jan. 19, 2018) at 11052, 11056.  Consequently, on January 18, 2018, Judge Spath directed military commission prosecutors to serve subpoenas to compel their attendance and testimony by video

---

Commander Mizer to serve as additional learned counsel for Al-Nashiri.  *See* Appellant's Third Weekly Report to the USCMCR (Apr. 11, 2018) (Ex. 6).  Commander Mizer is expected to report for active duty by May 22, 2018.  *See* Appellant's Sixth Weekly Report to the USCMCR (May 2, 2018) (Ex. 7).

[10] The December 1 Docketing Order set the hearing session for January 16-26, 2018, but the dates were subsequently changed to January 18-24, 2018.

conference from Virginia.  *See id.*  On February 2, 2018, Ms. Spears and Ms. Eliades filed motions to quash the subpoenas before the military commission.  *See* Third Party Motion To Quash (AE 389RR, AE 389SS).[11]  On February 12, 2018, at the outset of the February hearing session, Judge Spath orally denied the motions to quash.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Feb. 12, 2018) at 11536.

On February 13, 2018, Ms. Spears and Ms. Eliades did not appear as required by the subpoenas and as ordered by Judge Spath.  *See* Unofficial / Unauthenticated Transcript of Proceedings (Feb. 13, 2018) at 11715-16.  In response, Judge Spath made factual findings and initiated the process required by Rule of Military Commission 703(e) to have warrants of attachment issued to compel their attendance.  *See id.* at 11908-15.[12]  Judge Spath also ordered military commission prosecutors to prepare proposed warrants for his consideration, noting that he planned to consider the issue further before deciding whether to issue the warrants.  *Id.*

On February 16, 2016, Judge Spath declined to issue warrants of attachment to Ms. Spears and Ms. Eliades.  And at the conclusion of the hearing session, Judge Spath issued an order abating the proceedings against Al-Nashiri.  *See* Unofficial / Unauthenticated Transcript of Proceedings at 12363-77 (Feb. 16, 2018).  Judge Spath explained that he considered various options and decided that moving forward with the case in its current posture would not promote "the efficient administration of justice."  *Id.* at 12376.  Judge Spath concluded that the issues presented by defense counsel's absence need to be answered by "a court superior to me."  *Id.*  Consequently, Judge Spath stated that he was "abating these proceedings indefinitely . . . until a superior court orders me to resume."  *Id.* at 12375.

---

[11] The motion, opposition, and reply briefs are listed on the military commission docket but they are currently under seal pending review.  *See* http://www.mc.mil/Cases.aspx?caseType=omc&status=1&id=34

[12] A warrant of attachment is a well-established mechanism utilized by courts-martial and military commissions to compel the attendance of civilian witnesses who do not comply with a subpoena to appear.  *See United States v. Ortiz*, 35 M.J. 391, 393 (C.M.A. 1992); *United States v. Shibley*, 112 F. Supp. 734 (S.D. Cal. 1953).

### C.  Current Appeal Before The U.S. Court of Military Commission Review

On February 21, 2018, military commission prosecutors filed a notice of appeal of Judge Spath's abatement decision to the USCMCR, the statutorily established, first-level appellate court for military commissions.  *See* 10 U.S.C. § 950f.  Among the issues before the USCMCR are (1) whether Judge Spath correctly ruled that he, not the Chief Defense Counsel, is the appropriate authority to determine if "good cause" exists to excuse Mr. Kammen as learned counsel; and (2) whether Judge Spath correctly denied relief on Al-Nashiri's claims of alleged intrusions into attorney-client communications.  *See United States v. Al-Nashiri*, Order (USCMCR March 22, 2018) (Ex. 9); *id.*, Order (USCMCR March 30, 2018) (Ex. 10).  The USCMCR has received extensive briefing on the merits of the appeal, as well as on various motions filed by Al-Nashiri and would-be intervenors.[13]  *See* Office of Military Commissions, Abd al-Rahim Hussein Muhammed Abdu Al-Nashiri (18-002), https://www.mc.mil/Cases.aspx?caseType=cmcr (the USCMCR's docket for the Al-Nashiri appeal).[14]  Under the USCMCR Rules of Practice, unless the Chief Judge grants an extension of time, the USCMCR will ordinarily decide an interlocutory appeal within 30 calendar days of the later of oral arguments or the filing of briefs.  *See* Rule of Practice 23(c).[15]  In this instance, while the USCMCR can still direct oral argument, *see* Rule of Practice 18(a), neither the Appellant nor the Appellee requested it.

---

[13] Al-Nashiri filed motions before the USCMCR seeking, among other things, dismissal of the appeal for lack of jurisdiction, recusal of one of the judges assigned to the three-judge panel, and dismissal of certain assignments of error raised in the Government's appeal.  Additionally, Ms. Spears and Ms. Eliades filed a motion to intervene as named parties in the appeal, but the USCMCR denied that request and, instead, permitted them to participate in briefing as amicus curiae.  In response, Ms. Spears and Ms. Eliades filed a petition in the U.S. Court of Appeals for the D.C. Circuit seeking review of the decision denying their motion to intervene and an emergency stay of the USCMCR proceedings.  *See Spears v. United States*, No. 18-1087 (D.C. Cir.).

[14] The docket for this case reflects 57 entries as of May 7, 2018.  All filings are required to undergo security classification review before public posting.  Filings that are not publicly available may be provided upon request.

[15] The USCMCR Rules of Practice, approved by the Secretary of Defense on February 3, 2016, are available at www.mc.mil/Portals/0/pdfs/CMCR%20Rules%20of%20Practice%20(Feb%203%202016).pdf.

**D.  The Habeas Petition and Procedural History in this Court.**

On November 2, 2017, Mr. Kammen filed a Petition for Writ of Habeas Corpus and Motion for Declaratory Judgment in this Court.  *See* Pet. ECF No. 6.  The Court conducted an initial hearing on November 3, 2017.  *See* Order, ECF No. 12.  An attorney from the United States Attorney's Office for the Southern District of Indiana appeared at that hearing, but undersigned counsel understands that attorney represented to the Court that the U.S. Attorney's Office was not in a position to argue the matter due to a potential conflict of interest between the U.S. Attorney's Office and Mr. Kammen because of Mr. Kammen's representation of criminal defendants with active cases before the U.S. Attorney's Office.  In the absence of any contrary authority from Respondents, the Court adopted Mr. Kammen's Proposed Order (ECF No. 13-1) and ordered:

1.  That any purported requirement of the military commission hearing the case of *United States v. Al-Nashiri*, or the Military Commission Judge, Colonel Vance Spath, that Mr. Kammen travel to Virginia on November 3, 2017 and/or on November 6, 2017 or on any future date, is stayed pending hearing in this Court.

2.  That in the event that a writ of attachment or a warrant issues from a military commission in Guantanamo Bay for Mr. Kammen, the writ of attachment or warrant will be held in abeyance and not served or otherwise executed until this Court holds a hearing on the merits.

*See* Order Following Initial Hearing at 2-3, ECF No. 15.

On December 21, 2017, Respondents filed an opposition to the petition.[16]  *See* ECF No. 20.  In response, Petitioner moved to amend the petition to add new constitutional claims, a handful of new factual allegations, and several legal arguments that address issues raised in Respondents' opposition brief.  *See* ECF No. 25.  The Court granted the motion to amend, over Respondents' opposition, *see* ECF No. 30, and ordered that Respondents file a response to the amended Petition on or before May 7, 2018.  *See* ECF No. 32.

---

[16] To avoid any potential conflict by the U.S. Attorney's Office for this District, attorneys from the Department of Justice, Civil Division in Washington, D.C., filed this motion and are representing Respondents in all future proceedings in this matter.

## ARGUMENT

**A. The Court Lacks Habeas Jurisdiction Because Mr. Kammen Is Not "In Custody."**

Although Mr. Kammen styles his action as a petition for writ of habeas corpus under 28 U.S.C. § 2241, the Court lacks jurisdiction over such a petition because Mr. Kammen is not in custody. Accordingly, the amended petition should be dismissed, the motion for declaratory judgment should be denied, and the Court's November 3 Order Following Initial Hearing should be vacated.

The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are "*in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). In *Virsnieks v. Smith*, 521 F.3d 707, 717-720 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit examined the meaning of the "in custody" requirement and held that "habeas petitioners must establish that they are subject to conditions that significantly restrain [] their liberty." *Id.* at 717.

In reaching this conclusion, the Court of Appeals analyzed the Supreme Court's case law addressing the "in custody" requirement and explained that "the Court [has] emphasized the physical nature of the restraints on liberty that satisfied the custody requirement." *Id.* at 718. To be sure, the Court of Appeals recognized that the Supreme Court has interpreted the "in custody" requirement to extend beyond physical confinement and noted that habeas corpus "is now available, for example, to prisoners who are released on parole, personal recognizance, and bail, as well as those serving consecutive sentences; to aliens seeking entry into the United States; and to individuals seeking to challenge their induction into military service." *Id.* at 717 (footnotes omitted). But the Court of Appeals explained that the common thread of the Supreme Court's "in custody" jurisprudence is that the case must "involve[] restraints on a habeas petitioner's ability to move about freely." *Id.* at 718 (citation omitted). By contrast, the imposition of

"negligible effects on a petitioner's physical liberty or movement[] are insufficient to satisfy the custody requirement." *Id.* (citing cases that "do not satisfy the 'in custody' requirement" such as "registration under a sexual offender statute" as well as "restitution, fines, and the revocation of medical and driver's licenses"); *see also Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015) (reaffirming the holding in *Virsnieks* that "in custody" requires a "non-negligible restraint on physical liberty").

Here, Mr. Kammen faces no restrictions on his freedom of movement, let alone any conditions that significantly restrain his liberty.  As explained above, Mr. Kammen is not in the physical custody of any of the named Respondents, nor is he subject to any order from the Respondents that would impose a significant restraint on his liberty.  Judge Spath has not issued a warrant for Mr. Kammen's detention, nor has he indicated any intent to do so.  Mr. Kammen's amended petition alleges that "Col. Spath issued a writ of attachment that serves as the basis for Mr. Kammen's current detention and confinement," Am. Pet. ¶ 6, but that allegation is false. Mr. Kammen has not presented any evidence to support that claim, and Judge Spath made clear more than six months ago that he has not issued a writ of attachment against Mr. Kammen. *Compare id.*, *with* Nov. 3 Tr. at 10157.  Further, military commission prosecutors are not seeking to compel Mr. Kammen's attendance before the military commission; instead, they have recommended that Judge Spath refer Mr. Kammen's conduct to the Chief Trial Judge for Military Commissions for consideration of potential disbarment from participating in military commission proceedings in the future.  *See* Gov. Br. 20 (AE 389N).  Under these circumstances, Mr. Kammen is not "in custody" for purposes of the habeas statute.  *See Ginsberg v. Abrams*, 702 F.2d 48, 49 (2d Cir. 1983) (per curiam) (holding that habeas petitioner was not in custody as a result of "the revocation of his professional license to practice law").

The only order that Mr. Kammen identifies as purporting to hold him "in custody" is Judge Spath's November 1, 2017 Order directing that Mr. Kammen appear to represent his client in the now-concluded November 2017 session of the military commission. *See* <u>Am. Pet.</u> ¶¶ 34-35. But there is no basis to conclude that the November 1 Order imposes any restraint on Mr. Kammen's freedom of movement. Not only has the November 2017 session of the commission come and gone, Judge Spath's order directing Mr. Kammen to appear is no different from similar orders that state and federal courts routinely issue to require attorneys to appear for hearings or proceedings, and under no circumstances are these orders considered custodial restraints on liberty or freedom of movement. If this Court were to conclude otherwise, and hold that Mr. Kammen is in custody simply because of a trial court order directing him to appear for a long-past hearing in a case in which he serves as lead counsel, then any attorney who is subject to a routine order requiring a court appearance could seek habeas relief from that requirement by suing the judge who issued the order in federal district court.

Mr. Kammen provides no support for that extraordinary proposition, and none exists. The Supreme Court has "never extended [the 'in custody' requirement] to the situation where a habeas petitioner suffers no present restraint." *Maleng*, 490 U.S. at 492. Accordingly, courts have concluded that individuals who fail to appear for court appearances are not "in custody" for habeas purposes. *See, e.g.*, *Esparza v. State of Utah*, 258 F. App'x 181, 182-83 (10th Cir. 2007) (concluding that no reasonable jurists could debate that a habeas petitioner was not in custody when a bench warrant issued following his failure to appear for trial); *Filary v. I.N.S.*, 1991 WL 152892, at *2 (N.D. Ill. Aug. 1, 1991) (concluding that a habeas petitioner was not in custody where he "failed to appear pursuant to the INS' orders and has not been present for any proceedings in this court"); *see also Spring v. Caldwell*, 692 F.2d 994, 996-99 (5th Cir. 1982)

(issuance of arrest warrant for contempt of court for failure to pay fine does not satisfy the "in custody" requirement of the habeas statute).

This position is consistent with the decision from the United States District Court for the Southern District of New York in the related habeas case involving Ms. Yaroshefsky, the law professor who provided Mr. Kammen with the advisory opinion upon which he relied for his purported withdrawal. The New York court denied Ms. Yaroshefsky's habeas petition, concluding that she was not "in custody" for purposes of the habeas statute when she challenged a subpoena to compel her testimony before the military commission. *See supra* note 3; Yaroshefsky Tr. at 48-53 (Ex. 2). The court stated that "no prior reasoned opinion by any court in the American history of the great writ" has concluded that "a subpoena for testimony before a federal government authority places its recipient 'in custody.'" *Id.* at 50. If such a position were accepted, "it would open the door to a flood of habeas litigation" and a dramatic "expansion of the writ" as every criminal or civil subpoena "could be challenged in an independent habeas petition – sidestepping any recourse that the recipient might have before the issuing court or the court in whose jurisdiction the witness is located." *Id.* at 51. On this basis, the New York court noted its disagreement with this Court's preliminary decision to exercise jurisdiction over Mr. Kammen's petition on the basis of his purported custody. *Id.* at 51-52 ("I appreciate that the court reviewing the request by Mr. Kammen has apparently concluded that the issuance of a subpoena is sufficient to satisfy the 'in custody' requirement for a habeas petition—presumably mindful of the consequence of such an expansion of the writ—but, if so, I respectfully disagree with the court's conclusion."). The same reasoning applies to this case: there is no support for Mr. Kammen's position that a trial court order requiring an attorney to appear for a hearing somehow renders the attorney "in custody" under the habeas statute, particularly when that hearing was held more than six months ago.

Mr. Kammen also cannot satisfy the "in custody" requirement by speculating that he may be subject to *future* custody as a result of his decision not to appear for the November hearing session. Courts have held that the possibility of future detention is sufficient to satisfy the "in custody" requirement only if the future custody is "imminent and inevitable" and not "speculative." *See Vargas v. Swan*, 854 F.2d 1028, 1030-31 & n.1 (7th Cir. 1988); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 874 n.8 (1st Cir. 2010) (citing cases); *Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987) (petitioner not in custody where future "incarceration is far from imminent, but rather is still highly speculative"); *see also Virsnieks* 521 F.3d at 720 ("the future threat of incarceration for registrants who fail to comply with the [sex offender registration] statute is insufficient to satisfy the custody requirement"). As explained above, there is no factual basis to believe that Mr. Kammen will be subject to future custody by Respondents, and this argument has only lost force in the months since Mr. Kammen filed his petition. During those intervening months, the November session of the military commission has receded further into the past, and Judge Spath has stated that he is not ordering Mr. Kammen to appear. Additionally, there have been no new developments that suggest Mr. Kammen faces imminent custody.

In fact, the opposite is true, as recent events confirm that Mr. Kammen cannot possibly be "in custody." On February 16, 2018, Judge Spath abated proceedings in *Al-Nashiri*, and an appeal over the legal issues surrounding Mr. Kammen's absence (which led to the abatement) is currently pending before the USCMCR. Mr. Kammen filed his amended petition the day of Judge Spath's decision to abate the proceedings, but he provides no explanation for how a military commission that is no longer actively proceeding could possibly hold him in custody. *See* Am. Pet. ¶ 39. Rather, he simply speculates that Judge "Spath may recommence the proceedings at any moment and attempt to compel Mr. Kammen to return to them." *Id.* ¶ 86.

But speculative allegations of possible future custody are insufficient to support habeas jurisdiction. *See Phifer v. Clark*, 115 F.3d 496, 500 (7th Cir. 1994) ("A habeas petition ought not to be predicated on future events unless and until those events actually occur."); *Vargas*, 854 F.2d at 1030-31 & n.1 ("[H]abeas jurisdiction is not available" when it is based on "speculative" allegations of "future federal confinement.").[17]

The lack of any restraint on Mr. Kammen's liberty or any imminent threat of future custody is what separates this case from the cases relied upon by Mr. Kammen to support this Court's jurisdiction. *See* Am. Pet. ¶ 2 n.1. Relying solely on the authority set forth in Mr. Kammen's proposed order, the Court's November 3 Order asserted jurisdiction on the basis of the Supreme Court's decision in *Hensley v. Municipal Court, San Jose Milpitas Judicial District*, 411 U.S. 345, 351 (1973). *Hensley*, however, involved a far more intrusive set of liberty restrictions on the petitioner and is plainly distinguishable from the facts of this case. In *Hensley*, the Supreme Court held that a criminal defendant who had been convicted of a crime in state court, but who obtained a stay of his jail sentence and was released on his own recognizance while subject to ongoing supervision, was in custody for habeas purposes. *Id.* at 345-53. State law provided that upon release on his own recognizance, the defendant was required to pay bail; appear at all times and places as ordered by the court; waive extradition if apprehended outside the court's jurisdiction; and would be subject to re-arrest if he failed to appear as required. *Id.* at 347-48. In concluding that the defendant was "in custody" for habeas

---

[17] The Amended Petition also raises allegations about proceedings in the *Al-Nashiri* case involving Ms. Eliades and Ms. Spears, as well as another attorney, Stephen D. Gill. *See* Am. Pet. ¶¶ 10, 12. But Judge Spath's handling of those episodes confirms that Mr. Kammen is not "in custody." As explained above, Judge Spath made clear that he was only *considering* issuing warrants of attachment with respect to Ms. Eliades and Ms. Spears, and even then only after Ms. Eliades and Ms. Spears failed to comply with subpoenas to appear—a step Judge Spath has never taken with respect to Mr. Kammen. And more to the point, Judge Spath ultimately decided *not* to issue any such warrants, confirming that the possibility of an order to appear before the commission does not translate into any restriction on one's freedom of movement. Similarly, it is a *non sequitur* to suggest that Mr. Kammen is somehow in custody because Mr. Gill was compelled to testify in 2016 about a matter unrelated to this case. *See id.* ¶ 10. But even taking at face value Mr. Kammen's description of those events, the military commission issued a subpoena and warrant of attachment prior to the detention of Mr. Gill. The absence of those steps here reinforces that Mr. Kammen has raised no more than a speculative fear of future detention.

purposes, the Supreme Court explained that these restrictions placed a significant limitation on the defendant's liberty: "He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice." *Id.* at 351. By contrast, Mr. Kammen has no limitations on his freedom of movement, and he is not subject to any restrictions on his liberty, let alone anything close to the restrictions at issue in *Hensley*.

Further, the Supreme Court in *Hensley* emphasized that the defendant had been released from jail "only by the grace of a stay entered first by the state trial court and then extended by two Justices of this Court." *Id.* The imminence and inevitability of the defendant's future custody was evidenced by the fact that he was still subject to a criminal jail sentence, and the State had "emphatically indicated its determination to put him behind bars" and had "taken every possible step to secure that result." *Id.* But for the stay of his jail sentence, the defendant would have been physically incarcerated and therefore "in custody." Under those unique circumstances, the Supreme Court concluded: "His incarceration is not, in other words, a speculative possibility that depends on a number of contingencies over which he has no control. This is not a case where the unfolding of events may render the entire controversy academic." *Id.* at 351-52.

Unlike the petitioner in *Hensley*, Mr. Kammen is not subject to a criminal sentence of imprisonment that was temporarily postponed by means of a judicial stay. Rather, Mr. Kammen's allegations regarding future detention are entirely speculative, and he does not face the same imminent threat of incarceration. Furthermore, this case presents precisely the type of situation where the Supreme Court has instructed that habeas jurisdiction does not lie because Mr. Kammen's allegations of future detention are dependent on "a number of contingencies" that are unlikely to occur and, if they do not occur, would "render the entire controversy academic."

*Id.* at 351-52.  Here, there is no basis to believe that Judge Spath will suddenly reverse course and decide to compel Mr. Kammen's appearance before the military commission.

The other cases upon which Mr. Kammen relies to support his purported claim of custody are equally inapposite.  In *Jones v. Cunningham*, 371 U.S. 236 (1963), the Court held that a prisoner released on parole subject to ongoing state supervision was in custody for habeas purposes.  The petitioner faced immediate reincarceration if he did not follow the conditions of his parole, including requirements that he live and work where instructed, seek permission before driving a car, periodically report to his parole officers, permit his parole officer to visit his home and job at any time, and follow his parole officer's advice, including on what company to keep and what places to visit.  *Id*. at 242.  The Court reasoned that these reporting requirements, combined with the actual threat of an immediate return to prison to serve out the remainder of his jail sentence absent strict compliance with the state's ongoing supervision, placed "significant restraints on [his] liberty."  *Id*.  Those constraints were in addition to those already placed on petitioner by virtue of "his conviction and sentence," which petitioner sought to challenge as unconstitutional through habeas proceedings in the first place.  *Id*.  Accordingly, the Court concluded that petitioner was "in custody" and could invoke habeas jurisdiction.  *Id*. at 243.  Mr. Kammen is under no similar "conditions that significantly confine and restrain his freedom."  *Id.*

Similarly, *Barry v. Bergen County Probation Department*, 128 F.3d 152, 159-63 (3d Cir. 1997), involved a petitioner who was convicted of multiple state court criminal offenses and sentenced to perform 500 hours of community service.  The petitioner was supervised by probation authorities during the three years it took him to complete this requirement, and he was threatened with further punitive sanctions if he did not comply with the court-imposed requirements.  *See id.* at 161-62.  Unlike Mr. Kammen, the petitioner in *Barry* was subject to punitive restraints imposed in a criminal matter in the form of compelled actions he was required

to undertake, during which time he was subject to ongoing government supervision not shared by the general public.  Mr. Kammen, by contrast, is not subject to any such conditions, let alone restrictions that "significantly restrain[] his liberty 'to do those things which in this country free [people] are entitled to do.'"  *Id.* at 162 (alteration in original) (quoting *Jones*, 371 U.S. at 243).

In sum, Mr. Kammen was not in custody at the time this action was filed, he is not in custody now, and there is no imminent and inevitable threat that he will be in custody in the future.  Accordingly, the habeas petition should be dismissed.

## B. Absent Habeas Jurisdiction, the Habeas Statute and Sovereign Immunity Bar Mr. Kammen's Alternative Bases For the Court's Jurisdiction.

In addition to invoking the habeas statute, Mr. Kammen asserts three additional, non-habeas statutes as bases for the Court's jurisdiction.  *See* Am. Pet. ¶ 1 (citing 28 U.S.C. §§ 1331, 2201 and 10 U.S.C. § 950p(c)).  None of these statutes provides a basis for the Court's jurisdiction because 28 U.S.C. § 2241(e)(2) deprives the Court of jurisdiction over non-habeas claims relating to the trial of enemy combatants.  Further, none of these statutes waives the Government's sovereign immunity, and, therefore, the Court lacks jurisdiction over this case. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (holding that in suits against the Government, courts lack jurisdiction in the absence of an applicable waiver of sovereign immunity).

28 U.S.C. § 2241(e)(2) deprives this Court of jurisdiction over non-habeas corpus claims "against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States" and who "has been determined by the United States to have been properly detained as an enemy combatant."  28 U.S.C. § 2241(e)(2); *Al-Nashiri v. MacDonald*, 741 F.3d 1002, 1006-07 (9th Cir. 2013) (applying section 2241(e)(2) to bar a non-habeas action against the Convening Authority relating to Al-Nashiri's military commission proceedings).  The statutory elements are satisfied in this case.  Mr. Kammen's purported habeas corpus action is against three high-

ranking Department of Defense officials and the clams at issue in this case "relat[e]" to the military commission "trial" of Al-Nashiri.  Further, Al-Nashiri is an alien currently detained by the United States, and he has been determined by the United States to be an unprivileged enemy combatant.  *See Al-Nashiri*, 741 F.3d at 1005; Declaration of Frank Sweigart (Ex. 11).[18]

In addition to this jurisdictional bar, this case also implicates the doctrine of sovereign immunity because Mr. Kammen has sued three federal officers in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official-capacity suit is a suit against the sovereign).  Absent a waiver, sovereign immunity shields the federal Respondents from suit. *Meyer*, 510 U.S. at 475.  Mr. Kammen bears the burden of establishing that this action falls within an applicable waiver.  *See Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981) ("A party who sues the United States has the burden of pointing to a congressional act that gives consent." (citation omitted)).  Further, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).

The law of this Circuit is clear that neither the general federal question jurisdiction statute, 28 U.S.C. § 1331, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, waives the Government's sovereign immunity.  *See Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir. 1984) ("No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity.  It merely gives the district court jurisdiction to hear federal claims that are not otherwise barred."); *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) ("[T]he Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction," and "the district court must possess an independent basis for jurisdiction.");

---

[18] The Sweigart Declaration explains that a Department of Defense Combatant Status Review Tribunal (CSRT) classified Al-Nashiri as an enemy combatant in March 2007.  A "determin[ation] by the United States" under section 2241(e)(2) is an Executive Branch determination alone.  *Janko v. Gates*, 741 F.3d 136, 144-45 (D.C. Cir. 2014).

*Kentera v. United States*, 2017 WL 401228, at *3 n.2 (E.D. Wis. Jan. 30, 2017) (Declaratory Judgment Act "merely defines the scope of available declaratory relief" thus "the Act cannot itself work a waiver of sovereign immunity"). Further, there is no support for Mr. Kammen's position that 10 U.S.C. § 950p(c) provides either a basis for jurisdiction in this Court or a waiver of sovereign immunity. That provision of the MCA merely defines the types of criminal offenses that are triable under the MCA: "An offense specified in this subchapter is triable by military commission under this chapter only if the offense is committed in the context of and associated with hostilities." 10 U.S.C. § 950p(c); *In re Al-Nashiri*, 835 F.3d at 115.

Mr. Kammen also cites the First, Fifth, Sixth, and Fourteenth Amendments to the Constitution as a purported basis for this Court's jurisdiction, see Am. Pet. ¶ 1, but the Constitution does not create jurisdiction for district courts or waive sovereign immunity. *See Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922) ("The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it."); *Lynch v. United States*, 292 U.S. 571, 581-82 (1934) (sovereign immunity "applies alike to causes of action arising under acts of Congress, and to those arising from some violation of rights conferred upon the citizen by the Constitution." (citations omitted)).

Accordingly, the Court lacks jurisdiction—either through its habeas power or otherwise—to issue any relief in this case.[19]

---

[19] Even assuming the Court had a basis for subject matter jurisdiction other than the habeas statute, the Court would still lack jurisdiction. Mr. Kammen does not face actual or imminent custody or threat of injury, and he therefore lacks standing (and his claims are not ripe) under Article III. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017); *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008); *see also* Resp'ts' Opp. to Mot. to Amend at 11-12, ECF No. 30 (arguing that the amended petition seeks an advisory opinion based on speculative and hypothetical facts).

### C.  The Court Lacks Jurisdiction Over the Respondents.

In addition to the absence of subject-matter jurisdiction, this case suffers from a separate jurisdictional flaw:  the Court lacks jurisdiction over the three Respondents, none of whom is a proper Respondent or located within the Southern District of Indiana.

The Supreme Court's opinion in *Rumsfeld v. Padilla*, 542 U.S., 426 (2004), sets forth the jurisdictional rules governing the proper respondent and venue in the context of a habeas case involving custody within the United States.  *See id.* at 451 (holding that the Southern District of New York lacked jurisdiction over a habeas petition filed by an enemy combatant detained in the District of South Carolina against the President, Secretary of Defense, and the commander of the Charleston, SC Naval Brig).  The Supreme Court's framing of the issues in *Padilla* applies with equal force here:  "The question whether the Southern District has jurisdiction over [this] habeas petition breaks down into two related subquestions.  First, who is the proper respondent to that petition?  And second, does the Southern District have jurisdiction over him or her?"  *Id.* at 434.

With respect to identifying the proper respondent, the Court explained that "there is generally only one proper respondent to a given prisoner's habeas petition."  *Id.* at 434.  This person has "the ability to produce the prisoner's body before the habeas court."  *Id.* at 435. Accordingly, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.*  Alternatively, if a habeas petitioner is challenging "a form of 'custody' other than present physical confinement," the petition "may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'"  *Id.* at 438; *see also Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973) (holding that an Alabama prisoner could bring a habeas challenge in federal court in Kentucky to a detainer lodged against him in a Kentucky state court by naming the Kentucky court as the proper respondent).  The reason that the proper respondent is the individual with physical or legal control over a habeas

27

petitioner is because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Id.* at 494-95 (citation omitted).

Even indulging the fiction that Mr. Kammen is somehow in custody, the petition makes no effort to explain who among the three named Respondents is the proper respondent under the *Padilla* framework. The petition contains no allegations that the Secretary of Defense or the Convening Authority played any role in Mr. Kammen's alleged detention and, as supervisory officials, they should be dismissed from this action as improper respondents. *See Padilla*, 542 U.S. at 439.

This conclusion is reinforced by the Court of Appeals decision in *Al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), which addressed a situation similar to *Padilla* in which an enemy combatant detained at the Naval brig in Charleston, South Carolina, filed a habeas petition in the Central District of Illinois, naming the President, the Secretary of Defense and the commander of the Charleston Naval Brig, as respondents. Addressing the proper respondent issue, the Court of Appeals held that naming supervisory officials such as the President and the Secretary of Defense as respondents was "not only unavailing but also improper." *Id.* at 708-09. Instead, the Court of Appeals concluded that the only proper respondent was the commander of the Naval Brig who exercised control over the detainee's custody. *Id.* at 709; *see also Kholyavskiy v. Achim*, 443 F.3d 946, 953-54 (7th Cir. 2006) (dismissing habeas petition for lack of jurisdiction where petition named various high-ranking officials of the Department of Justice and Department of Homeland Security).

Mr. Kammen has also named Judge Spath as a respondent, but as explained above, there is no basis to conclude that Judge Spath has actual physical custody over Mr. Kammen or that he has issued any orders that significantly restrict Mr. Kammen's freedom of movement. Indeed,

for these reasons, courts routinely deny habeas petitions that attempt to name judges as respondents. *See, e.g.*, *U.S. ex rel. Cummings v. FitzSimon*, 337 F. App'x 143, 145 (3d Cir. 2009); *Palma v. United States*, 2008 WL 4861707, at *1, *4 (D.N.M. July 31, 2008); *Stackhouse v. Miles*, 2008 WL 956711, at *1 & n.1 (W.D. Mich. Apr. 7, 2008); *Da Vang v. Hoover*, 2006 WL 496034, at *1 (W.D. Wis. Feb. 27, 2006).  Therefore, Judge Spath should be dismissed as a respondent in this case.

Even assuming, however, that Mr. Kammen is in custody and he has named at least one proper Respondent in his petition, the Court would still lack jurisdiction over this action under the second prong of the *Padilla* analysis because none of the named Respondents is physically located in the Southern District of Indiana.  "District courts are limited to granting habeas relief within their respective jurisdiction."  *Padilla*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)). The Supreme Court has interpreted this language to require that the respondent be physically located within the territorial jurisdiction of the district court in which the petition is filed.  *See id.* ("the court issuing the writ [must] have jurisdiction over the custodian"); *id.* at 451 (Kennedy, J. concurring) (habeas petition "must be filed in the district court whose territorial jurisdiction includes the place where the custodian is located").  Indeed, *Padilla* made clear that the respondent must be physically located within the jurisdiction of the habeas court and specifically rejected an argument that habeas jurisdiction would lie in any district in which a respondent was amenable to service of process.  *Id.* at 443-47 (district courts cannot "employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdiction").  In reaching this conclusion, the Supreme Court relied on the Court of Appeals decision in *Al-Marri*, which dismissed the petition in that case because none of the respondents resided in the Central District of Illinois.  *Id.* at 445 (citing *Al-Marri*, 360 F.3d at 709-11).

Here, this Court lacks jurisdiction over the three named Respondents because none of them reside or work within the Southern District of Indiana.  Mr. Kammen concedes that both the Secretary of Defense and the Convening Authority have their primary place of business at the Pentagon in Washington, D.C.  *See* Am. Pet. ¶¶ 7-8.  Mr. Kammen also has not carried his burden of establishing the Court's jurisdiction over Judge Spath, as the amended petition contains no allegation or evidence that Judge Spath is physically present in the Southern District of Indiana.  *See id.* ¶ 6.  In any event, Judge Spath's current duty station is Joint Base Andrews in Maryland.  *See* Decl. of Andrew I. Warden (Ex. 12) (attaching Government reports stating that Judge Spath's current duty location is Maryland).  Because none of the Respondents are located within this District, the Court lacks habeas jurisdiction, and this case must be dismissed.  *See Kholyavskiy*, 443 F.3d at 949 n.2 ("[T]he named custodian must reside within the geographical confines of the federal district where the complaint was filed.").

### D.  The Court Should Abstain From Interfering With Ongoing Proceedings in the Military Commission System.

Even if Mr. Kammen could overcome the jurisdictional defects discussed above, which he cannot, the habeas petition should also be dismissed on the independent ground that it constitutes an improper collateral attack on the proceedings before a coordinate tribunal.  The principles of comity and exhaustion articulated by the Supreme Court in *Schlesinger v. Councilman,* 420 U.S. 738 (1975), require this Court to abstain from exercising jurisdiction over this case in light of the pending proceedings in the military commission system.

"[H]abeas corpus is, at its core, an equitable remedy."  *Schlup v. Delo*, 513 U.S. 298, 319 (1995).  Thus, the Supreme Court has "recognized that 'prudential concerns,' such as comity and the orderly administration of criminal justice, may 'require a federal court to forgo the exercise of its habeas corpus power.'"  *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citations omitted).

Even in habeas cases where subject-matter jurisdiction exists, "[t[here remains the question of equitable jurisdiction, a question concerned, not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers." *Councilman*, 420 U.S. at 754.  In situations where federal courts have been asked to intercede and address collateral challenges to the proceedings of coordinate courts, the law is well-established that federal courts, absent extraordinary circumstances, may not exercise their equitable jurisdiction to intervene until the coordinate court has had the opportunity to address the party's grievance. *See, e.g.*, *id.* at 754-55; *Younger v. Harris*, 401 U.S. 37 (1971) (federal courts must refrain from enjoining pending state prosecution).  Relying on these principles, the Court of Appeals for the District of Columbia Circuit in *In re Al-Nashiri* abstained from addressing a collateral habeas challenge arising from Al-Nashiri's military commission case.  *See In re Al-Nashiri*, 835 F.3d at 118 ("[F]ederal courts typically require the petitioner to navigate th[e] process [available in the coordinate court] instead of skirting it.").  This Court should follow that approach here.

In *Councilman*, the Supreme Court extended traditional abstention principles to courts-martial.  The Supreme Court addressed whether to exercise its equitable habeas jurisdiction in the context of a suit brought by an active-duty military officer seeking to enjoin ongoing court-martial proceedings arising from his alleged sale and possession of marijuana.  420 U.S. at 739-40, 761.  Councilman argued that the court-martial lacked jurisdiction to try him because the charges against him were not "service connected," and therefore that he would "suffer great and irreparable damage," and "(might) be deprived of his liberty without due process," if his court-martial were not enjoined.  *Id.* at 741-42.  The Supreme Court rejected Councilman's arguments, holding that "the balance of factors governing exercise of equitable jurisdiction by federal courts normally weighs against intervention, by injunction or otherwise, in pending court-martial

proceedings." *Id.* at 740.   In reaching this conclusion, the Supreme Court highlighted two key factors: "strong considerations favoring exhaustion of remedies" and avoiding "intruding on the integrity of military court process[]." *Id.* at 761.

With respect to the exhaustion consideration, the Supreme Court established decades ago that a habeas petitioner cannot collaterally attack a military judgment until all available remedies in the military justice system have been exhausted. *See Gusik v. Schilder*, 340 U.S. 128, 131–32 (1950).   Indeed, "habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until *all* available remedies within the military court system have been invoked in vain." *Noyd v. Bond*, 395 U.S. 683, 693 (1969) (emphasis added).   In *Councilman*, the Court further explained that a requirement of exhaustion of remedies serves purposes analogous to the reasons underlying the exhaustion requirement in administrative law. *See* 420 U.S. at 756.   In the administrative-law context, exhaustion allows agencies "to correct their own errors" and "ensures that [whether] judicial review is available will be informed and narrowed by the agencies' own decisions." *Id.*   Indeed, the Court observed that "often the agency's ultimate decision will obviate the need for judicial intervention." *Id.* at 756-57.

These exhaustion considerations apply fully to the military commission process. *See id.* at 757 ("These considerations apply in equal measure to the balance governing the propriety of equitable intervention in pending court-martial proceedings.").   As explained above, *see supra* at 14, the legal issues surrounding Mr. Kammen's purported withdrawal as learned counsel are now squarely presented before the USCMCR, the court Congress expressly designated to first hear appeals from military commissions. *See* 10 U.S.C. § 950f.   This case thus presents a situation where a coordinate court is confronting the animating issues of Mr. Kammen's petition at the same time as Mr. Kammen would have this Court consider them.   Under those circumstances, this Court should respect the coordinate military commission system established by Congress

and allow that system to address the issues surrounding Mr. Kammen's representation on direct appeal as needed, rather than preemptively intervene by adjudicating Mr. Kammen's collateral habeas attack.

Moreover, even aside from the Government's pending appeal over the abatement of proceedings, Mr. Kammen has not exhausted his own remedies within the military commission system regarding his purported withdrawal as counsel.  For example, Judge Spath invited Mr. Kammen to appear and explain why he believes he is ethically obligated to withdraw from the Al-Nashiri case, but Mr. Kammen has refused that invitation at every turn.  Nor has Mr. Kammen availed himself of the opportunity to petition the USCMCR for extraordinary relief. *See* 10 U.S.C. § 950f; Rule 22(a) of the USCMCR Rules of Practice.  Following any review by the USCMCR, Mr. Kammen would then have the opportunity to petition the United States Court of Appeals for the District of Columbia Circuit for extraordinary relief as appropriate.  *See In re Al-Nashiri*, 791 F.3d 71, 76-78 (D.C. Cir. 2015) ("[T]his Court has jurisdiction to issue a writ of mandamus in aid of our appellate jurisdiction of military commissions and the CMCR.").

Rather than pursue these options, Mr. Kammen has filed this action as a collateral attack on the military commission.  *Councilman* prohibits this approach and requires that Mr. Kammen pursue the remedies available to him in the military commission system, to include requests for extraordinary relief.  *See U.S. ex rel. Johnson v. McGinnis*, 734 F.2d 1193, 1194, 1200 (7th Cir. 1984) (reversing grant of habeas writ issued by a federal district court because the petitioner, who was convicted in Illinois state court, "should have first sought relief on his due process claim in an Illinois [state court] mandamus action" and emphasizing that "[c]onsiderations of comity are  . . . especially strong here"); *Seaton v. Kentucky*, 92 F. App'x 174, 175 (6th Cir. 2004) (holding when "a mandamus action in state courts . . . may be available, exhaustion is not deemed to be complete").  The military commission system is fully capable of addressing legal

33

issues surrounding the withdrawal of attorneys who practice before it, and there is no basis for Mr. Kammen to raise "in federal court an issue that just as easily could be considered by the commission . . . ." *Al Nashiri*, 835 F.3d at 125; *see Noyd*, 395 U.S. at 698 ("Since petitioner has at no time attempted to show that prompt and effective relief was unavailable from the [military court] in his case, we hold that petitioner's failure to exhaust this remedy before seeking the assistance of the civilian courts is not excused.").

The Supreme Court in *Councilman* also emphasized "considerations of comity" and "the necessity of respect for coordinate judicial systems." 420 U.S. at 756-58. The Supreme Court explained that federal courts must respect "th[e] congressional judgment" that "the military court system generally is adequate to and responsibly will perform its assigned task." *Id.* at 758. Indeed, respect for a coordinate court system—one "carefully designed [and] . . . established by Congress," *id.* at 753—"counsel[ed] strongly against the exercise of equity power." *Id.* at 757.

These same principles of comity extend to military commission proceedings, as the D.C. Circuit has recognized. *See In re Al-Nashiri*, 835 F.3d at 118 (district courts would undermine the military commission statutory scheme "laid out by Congress were they routinely to entertain motions for equitable relief of the sort Al-Nashiri seeks"). The MCA is a comprehensive statute addressing the trial of alien unprivileged enemy belligerents, including their rights to counsel, and "deference . . . should be accorded the judgments of the carefully designed military justice system established by Congress." *Councilman*, 420 U.S. at 753. Mr. Kammen offers no explanation of any harm he would suffer if the military commission system addressed the legal issues regarding his purported withdrawal in the first instance. Although the Supreme Court has recognized that intervention may be appropriate where a plaintiff establishes "extraordinary circumstances, where the danger of irreparable loss is both great and immediate," *Younger*, 401 U.S. at 45, that exception requires the alleged harm to be something "other than that attendant to

34

resolution of [the] case in the military court system," *Councilman*, 420 U.S. at 758.  Here, any alleged harm Mr. Kammen could muster would be no more compelling than the due process and liberty interests in *Councilman*, 420 U.S. at 754, or the First Amendment interests of the petitioners in *Younger*, 401 U.S. at 50-53.  And in both of those cases the Supreme Court declined to intervene, holding that the coordinate systems, whether military or state, were capable of—and, indeed, entitled to—address the issues raised by petitioners in the first instance. *See Councilman*, 420 U.S. at 761; *Younger*, 401 U.S. at 54.  The Court should reach the same conclusion in this case.

Finally, *Councilman* instructs that federal courts must consider whether issues raised in a collateral attack are "matters as to which the expertise of military courts is singularly relevant, and their judgments indispensable to inform any eventual review in Art. III courts."  420 U.S. at 760.  That consideration applies with particular force in this case because the military commission system has intimate familiarity with its own governing law and procedures, as well as the long history of supervision of Mr. Kammen's involvement in the *Al-Nashiri* proceedings since 2008.  Accordingly, that system is far better positioned than this Court to evaluate these issues against the backdrop of the proceedings before the military commission.

## CONCLUSION

For the reasons stated above, the Court should dismiss the amended petition for writ of habeas corpus, deny the motion for declaratory judgment, and vacate the November 3, 2017 Order.  A proposed order is attached.

Dated: May 7, 2018                    Respectfully submitted,

                                      CHAD A. READLER
                                      Acting Assistant Attorney General
                                      Civil Division

                                      TERRY M. HENRY
                                      Assistant Director
                                      Civil Division, Federal Programs Branch

/s/ *Michael H. Baer*
MICHAEL H. BAER
Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 305-8573
Facsimile: (202) 616-8460
E-mail: Michael.H.Baer@usdoj.gov