# EXHIBIT 4

# DOD Declassified Facts and Circumstances Surrounding Attorney-Client Meeting Spaces

UNCLASSIFIED//FOR PUBLIC RELEASE

1) In 2013, the defense team for Mr. al Nashiri requested accommodation to conduct privileged attorney-client meetings outside of designated meeting locations that are specially configured for that purpose, and used by other detainees in military commissions cases. Joint Task Force – Guantanamo (JTF-GTMO) found a location acceptable to the defense team and approved it for their use. Meetings between Mr. al Nashiri and his attorneys in that location began in April 2014 and continued until June 2017. During this period, Mr. al Nashiri used one specific room at that location for his attorney-client meetings, except when he met with his counsel in several locations in and around the Expeditionary Legal Complex (ELC), which is away from the detention facilities entirely.

2) The new meeting location was not built or specifically designed for attorney-client meetings. Prior to the defense team's request, rooms in this building—including the one ultimately used by Mr. al Nashiri—were configured for detainee interviews. The rooms in the building in April 2014 thus included disconnected, legacy microphones that were not connected to any audio listening/recording device. While it was apparent that this room serving as the new meeting location had been previously configured for interviews, no audio equipment was used while Mr. al Nashiri was in the room. According to routine meeting logs, counsel used this room for meetings with Mr. al Nashiri on more than 50 days during this period, sometimes more than once in a day; the disconnected, legacy microphones in the meeting room were never in use during these meetings.

3) The new meeting location was previously used for interviews of general-population (non-HVD) detainees as late as 2011. The meeting room is located in a building in a compound that JTF-GTMO exclusively controls. There are no records of the use of the building to conduct interviews after 2011.

4) Like many buildings that JTF-GTMO maintains, the building housing the new meeting location had not been designed to accommodate privileged attorney-client meetings. With limited funds available to build such facilities over the last decade, repurposing existing structures was often the only feasible option when new requirements emerged. Various court orders and Department of Defense directives to preserve evidence and structures potentially relevant to litigation further limited the JTF's ability and inclination to remove old equipment and confirm that it had been removed.

5) In late April 2017, in an entirely separate location not used by Mr. al Nashiri, the JTF Commander learned that attorney-client communications occurring outside of designated locations may have been overheard. After the Commander immediately stopped allowing attorney-client privileged meetings at this location, United States Southern Command (USSOUTHCOM) conducted an investigation into the facts and circumstances of the incident. The investigation formally commenced on 10 May 2017. This investigation concluded that a small number of detainees—none of whom were in contested military commission proceedings—were allowed to meet with their attorneys outside of designated meeting locations. This accommodation for the detainee legal teams resulted in attorney-client meetings being unintentionally overheard. The investigation further concluded that no one involved in legal proceedings or the JTF chain of command overheard these communications, and that this incident did not result from the culpable negligence or misconduct of any U.S. Government

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

personnel. JTF-GTMO has implemented safeguards to ensure that this situation cannot reoccur. Again, this incident and subsequent investigation did not involve Mr. al Nashiri, his attorneys, or the meeting location that they used. Mr. al Nashiri has never met with his attorneys at the other location, i.e., the one where attorney-client communications were unintentionally overheard. No intrusions into attorney-client privilege occurred in any meeting between Mr. al Nashiri and his attorneys.

6) Following report of this incident, the Joint Detention Group (JDG) Commander executed a declaration on 30 June 2017, wherein he stated that Standard Operating Procedures (SOPs) strictly prohibit any compromise of privacy in attorney-client meetings spaces, and he offered—as his predecessor did in 2013—to allow defense counsel to personally inspect legal meeting rooms. Accepting this offer, Mr. al Nashiri's counsel conducted this inspection on 2-3 August 2017. During that inspection, they located a legacy microphone that, although not in use and not connected to any audio listening/recording device, had not been removed from the room.

7) Afterward, the defense team refused to meet in this room with Mr. al Nashiri. The JTF then offered several alternative meeting locations which would meet their needs. Since October 2017, members of Mr. al Nashiri's defense team have conducted their meetings with Mr. al Nashiri in and around the ELC—away from the detention facilities entirely. This was one of the options provided by the JTF.

8) Starting in late October 2017, the JTF removed flooring, walls, and fixtures in the new meeting location. The JTF confirmed that legacy microphones, which were not connected to any audio listening/recording device nor in an operable condition, were removed.

UNCLASSIFIED//FOR PUBLIC RELEASE