# EXHIBIT 5



**OFFICE OF THE SECRETARY OF DEFENSE**
OFFICE OF MILITARY COMMISSIONS
4800 MARK CENTER DRIVE
ALEXANDRIA, VA 22350-2100

November 21, 2017

MEMORANDUM FOR BGEN JOHN G. BAKER, CHIEF DEFENSE COUNSEL

FROM: CONVENING AUTHORITY

SUBJECT: ACTION ON CONTEMPT PROCEEDINGS

1. I have reviewed and considered the record of trial, your subsequent submissions, and the recommendation of my Legal Advisor. Accordingly, in the contempt proceedings against Brigadier General John G. Baker, United States Marine Corps, Military Commissions Defense Organization, I have determined that the findings of the military judge are correct in law and fact, and therefore leave undisturbed the findings of contempt against you. I hereby remit the unexecuted confinement term and the fine. I am forwarding the findings and record of proceedings to the appropriate authority overseeing your service as a Judge Advocate within the Department of the Navy, the DoD Standards of Conduct Office, and the Staff Judge Advocate to the DoD General Counsel's Office, and the Commandant of the United States Marine Corps for an administrative ethics review.

2. **BACKGROUND**

a. On December 23, 2008, Mr. Richard Kammen was appointed as the accused's outside learned counsel in the case of *United States v. Al-Nashiri*. The detailing notice served as a notice of appearance and agreement on behalf of the accused. Mr. Kammen also signed an affidavit and agreement acknowledging understanding and agreement with the Military Commissions Act of 2006, the Manual for Military Commissions, and all military commissions regulations, orders, instructions, and directives applicable to trial by military commissions. Specifically, Mr. Kammen agreed to comply with all applicable regulations and rules for counsel, including any rules of court governing proceedings, and agreed that he would "be well prepared and will conduct the defense zealously, representing the accused throughout the military commission process, from the inception of my representation through the completion of any post-trial proceedings as detailed in 10 U.S.C. §§ 950a-950j and R.M.C. 1101-1209." Mr. Kammen further asserted that he would "work cooperatively with [detailed counsel] to ensure coordination of efforts and to ensure such counsel is capable of conducting the defense independently if necessary."

b. On October 17, 2016, Appellate Exhibit (AE) 339E was filed, noting that on November 18, 2015, Ms. Rosa A. Eliades was assigned as assistant defense counsel in the case of *United States v. Al-Nashiri*. Similarly, AE 339F was filed, which stated that Ms. Mary E. Spears was detailed as a civilian assistant defense counsel in the same action.

c. On June 24, 2017, the defense filed AE 369HH, a notice to the commission that it had filed a classified motion to "Advise the Accused of Potential Government Intrusions into Attorney-Client Communications." On July 7, 2017, the military judge denied the motion

1

stating, "I am statutorily prohibited from ordering the disclosure of classified information, which everybody knows." *See* Record of Trial, p 10037.

d.  On July 13, 2017, the defense filed AE 369PP, a notice to the commission that the defense had filed a classified motion to compel production of discovery materials related to the potential intrusion into attorney-client communications. (On September 20, 2017, the military judge filed AE 369YYY, which was notice to the parties of his classified ruling on this defense motion. The military judge stated the ruling denied the defense motion after reviewing "all of the information submitted thus far on the issue, both classified and unclassified, and I found the defense failed to carry its burden of proof to warrant additional disclosure." *See* Record of Trial, p 10037.)

e.  On July 14, 2017, the defense filed AE 369RR, a notice to the commission that it had filed a classified motion for an evidentiary hearing or, in the alternative, abatement of the proceedings. (On September 20, 2017, the military judge denied this defense motion in AE 369ZZZ, stating, "again after consideration of all the classified and unclassified filings and the in-court representations and a classified declaration submitted by the government, I issued Appellate Exhibit 369ZZZ … denying the motion and finding there wasn't any basis to find there had been an intrusion into attorney-client communications between this accused and this defense team." *See* Record of Trial, p 10038.)

f.  On August 14, 2017, the defense filed AE 369AAA, a notice to the commission that it had filed a classified motion to allow defense counsel to meet with their client in the courtroom and to ensure his right to privileged attorney-client communications. On October 25, 2017, the military judge filed AE 369OOOO, denying the defense motion. In that ruling, the judge noted, "I certainly didn't object to the defense utilizing the courtroom, or frankly any room, for attorney-client meetings as that is something that they need to work out with the confinement facility. It is not something for me to be involved in in most instances, and I have stayed out of it, as you all know, because I don't run this facility. I would note there have been many meetings here in the ELC between the defense counsel and their client in this case." *See* Record of Trial, pp. 10038-39.

g.  On October 6, 2017 Mr. Kammen, Ms. Eliades, and Ms. Spears submitted a request to you, to withdraw from their representation of the accused, relying in significant part on the June 24, 2017 memorandum and an October 5, 2017 ethics opinion from Professor Ellen Yaroshefsky.[1] On October 11, 2017, you notified Mr. Kammen, Ms. Eliades, and Ms. Spears that you had accepted their request to withdraw from representing the accused, and you released them for "good cause shown on the record," citing R.M.C. 505(d)(2). On October 13, 2017 the defense provided notice to the commission of this purported withdrawal. *See* Record of Trial p. 10039.

---

[1] Ms. Yaroshefsky was called to testify about her opinion, but declined to comply with a subpoena and filed a writ in the Southern District of New York (case # 1:17-cv-8718-GHW) in an effort to avoid being compelled to testify. In that proceeding, the district court judge refused to quash the subpoena, *inter alia*, that Ms. Yaroshefsky failed to make a clear showing of likelihood of success on the merits that would justify granting of a preliminary injunction.

2

h.   On October 16, 2017, the detailed defense counsel filed Appellate Exhibit 389, a motion to abate proceedings pending the detailing of a new learned counsel. *See* Record of Trial, p. 10040. On the same day, the commission issued Appellate Exhibit 389A, which reiterated that Mr. Kammen, Ms. Eliades, and Ms. Spears remained counsel of record in the case and ordered the three counsel to appear at the next scheduled hearing of the commission unless excused by the military judge. The commission also invited you to file pleadings as to your perceived authority to unilaterally and without review excuse counsel, and the commission set a compressed briefing schedule. From October 20-26, 2017, both you and the government filed pleadings responsive to Appellate Exhibit 389A.

i.   On October 27, 2017, the commission issued AE 389F denying the abatement motion and specifically finding that: 1) no good cause existed to warrant the excusal of Mr. Kammen, Ms. Eliades or Ms. Spears; 2) no evidence had been presented to demonstrate intrusions in this case affecting this accused which would ethically require withdrawal or disqualification of outside appointed learned counsel; and 3) the excusal of outside appointed learned counsel at that stage of the proceedings would prejudice Mr. al Nashiri's due process rights *See* Record of Trial, pp. 10039-40.

j.   In the commission session on October 31, 2017, the military judge directed you to rescind your memo releasing civilian defense counsel and to be sworn in to testify. You refused to rescind the memo or to testify, claiming privilege. *See* Record of Trial pp. 10051 – 10060.[2]

k.   On November 1, 2017, summary contempt proceedings were held under 10 U.S.C. § 950t in accordance with R.M.C. 809(b)(1) and 809(c). *See* Record of Trial p. 10065. During the contempt proceedings, the military commission found contempt beyond a reasonable doubt on two occasions, both on October 31, 2017, as follows: 1) You willfully refused to obey the commission's order to testify and 2) you refused to obey the commission's order to rescind your excusal of counsel. The commission found beyond a reasonable doubt that your acts "constituted disorders that disturbed these proceedings, disorders that disturbed these proceedings significantly."

l.   The military commission sentenced you to be fined $1,000 and to be confined for 21 days.[3] On November 3, 2017, the Convening Authority deferred the remainder of your confinement until final action was taken on the contempt findings and sentence.[4] *See* Attachment. Pursuant to the R.M.C. and due process, the Convening Authority invited you to submit for his consideration any written matters including any allegations of errors, any portion of the record of trial, matters for mitigation, and clemency recommendations. In addition, he invited you to make a personal statement to him, if you wished.

---

[2] Mr. Kammen filed a writ of habeas corpus in Indiana and did not attend the proceedings.
[3] The Convening Authority set the place of confinement as your quarters on NSGB, with access to telephone, internet, cable television, and all your lodging accommodations, to include unlimited requests for food or beverages.
[4] After entry of the contempt finding and sentence, you filed a writ of habeas corpus with the United States District Court for the District of Columbia seeking immediate release from the contempt punishment (Case # 1:17-cv-02311). The district court has retained jurisdiction in this matter pending the final order of the Convening Authority.

m. On November 9, 2017, your attorney, Col Jonathan W. Hitesman, submitted matters on your behalf for my consideration in accordance with R.M.C. 1105. In your matters you asserted the imposition of the contempt findings and sentence were unlawful as follows:

    i. Contempt cannot be adjudged for violation of a judge's order;
    ii. The M.C.A. does not authorize unilateral contempt punishments;
    iii. Summary contempt procedures are not authorized;
    iv. The military judge abused his discretion by utilizing summary contempt proceedings;
    v. The military judge had no authority to issue any orders to BGen Baker;
    vi. The military commission had no personal jurisdiction over BGen Baker.

3. The matters are *sui generis* and matters of first impression for the Office of Military Commissions. The issues break down into two baskets — a) the contempt of court questions, and b) the underlying *res*, the attorney – client confidentiality concern. The contempt of court question raises the following fundamental discussions: 1) the authority of the judge to find contempt; 2) whether the actions of BGen Baker rose to the level of contempt; 3) options BGen Baker had to avoid contempt findings or sentence; and 4) the appropriateness of the penalty. The underlying attorney-client confidentiality issue raises three concerns: 1) the infringement of privileged communications; 2) the authority to release defense counsel for good cause, and finally, 3) the path forward. Each of these issues will be addressed in turn.

### I. Contempt of Court Issues

#### i. Authority of Judge to Find Contempt

4. Your written submission challenged the authority of the military commission judge to hold contempt proceedings summarily. Concerning the contempt powers of a military commission, 10 United States Code § 950t, para. 31 states that a military commission may punish for contempt "any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder." The term "disorder" is not defined in the M.C.A., the Rules for Military Commissions, the Regulation for Trial by Military Commission, or the Military Commissions Trial Judiciary Rules of Court. However, the language of the Code section is nearly identical to that of Article 48 of the Uniform Code of Military Justice (U.C.M.J.) prior to the U.C.M.J.'s amendment in 2011. *See* Act of May 5, 1950, ch. 169, § 1 (Art. 48), 64 Stat. 107, 123 ("A court-martial, provost court, or military commission may punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder.").

5. R.M.C. 809 states that a military commission may exercise contempt power granted under 10 U.S.C. § 950t. When conduct constituting contempt is directly witnessed by the commission, the conduct may be punished summarily, but a statement of facts must be recited for the record. R.M.C. 809(c) specifically outlines that the military judge determines whether to punish for contempt and the quantum of the punishment. R.M.C. 809(d) mandates that the record of the contempt proceeding must be part of the record of trial and forwarded to the Convening Authority for review. The Convening Authority "may approve or disapprove all or part of the sentence. The action of the Convening Authority is not subject to further review or appeal."

4

6. Per R.M.C. 809(e), the maximum sentence for a finding of contempt shall not exceed confinement for 30 days and a fine of $1,000. A sentence of confinement in a place designated by the Convening Authority begins to run when it is adjudged unless deferred, suspended, or disapproved by the Convening Authority. A fine does not become effective until ordered executed by the Convening Authority.

7. Courts of law traditionally have held contempt power, particularly within the courtroom itself. A "court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law and the punishment imposed is due process of law." *Cooke v. United States*, 267 U.S. 517, 534-35 (1925). Unless an "open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the 'very hallowed place of justice,' as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow." *Id.* at 536.

8. Based upon a review of the applicable case law, statutes, regulations, and the facts involved in this contempt proceeding, I find that the judge had ample authority and opportunity to evaluate your actions and find you in contempt.

### ii. Whether Actions by BGen Baker Rose to the Level of Contempt

9. The military judge issued two orders, the denial of which served as the basis of his contempt finding: 1) The failure to rescind the memorandum releasing civilian counsel representing Mr. Al-Nashiri and 2) the failure to take the stand as ordered to testify as a witness.

10. A military judge has the authority to issue orders to reveal information, even if counsel believes it to be privileged. *United States v. Bowser*, 73 M.J. 889 (A.F.C.C.A. 2014) ("Trial counsel has an obligation to "comply promptly with all orders and directives of the court. . . . . . Short of some completely unusual circumstances not present here, the Government simply does not have the authority to choose which orders of a military judge it will follow and which ones it will not, at least not without facing the threat of remedial action or even punishment.").

11. As you noted in your written matters, the military judge stated on the record that "your purported excusals of Mr. Kammen, Ms. Eliades, and Ms. Spears dated 11 October 2017 are null and void, and they have been since my written order on 16 October 2017 and my follow-on written order dated 27 October 2017." *See* Transcript p. 10064. I agree the military judge alone possessed the authority to find good cause on the record to release defense counsel. I also find it is well established in law that your refusal to follow the judge's order to take the stand to testify as a witness constituted contempt of court.

### iii. Options to Avoid Contempt Finding or Sentence

12. In evaluating the contempt issues involved, I have also reviewed the various options that were available to alleviate the current situation. For example, at the outset, the military judge ruled in AE 389F that your memorandum purporting to release civilian counsel representing Mr. Al Nashiri was null and void. At that juncture, you could have rescinded your original order, but chose not to. While it is arguable whether the military judge possessed the authority to order you to rescind your memorandum, the prudent course of action would have been to acknowledge the judge's authority to override a determination of law that was made.

13. Second, the military judge ordered you to be sworn as a witness and testify on the stand. Although you, or alternately through counsel purporting to represent you and/or the Military Commission Defense Organization, claimed various privileges, it was not within your rights to refuse to take the stand and raise privileged claims at that time. Your failure to recognize the rule of law, accede to firmly established legal precedent which required you to raise objections on privilege grounds while in the witness box, placed you squarely in the realm of contemptuous behavior. The finding of contempt against you on this ground may well have been avoided if you had not chosen a course at odds with basic tenets of military and civil jurisprudence and taken the stand as a witness to assert your privileges.

14. Third, once the contempt findings against you were rendered, you possessed the right to request of me deferment of your confinement. This option was reiterated by Department of Justice attorneys in their filing in opposition to your Federal writ of *habeas*.[5] You elected not to exercise this clemency option, an option I instead granted *sua sponte* in the best interests of the military commissions process.

15. Finally, you may seek legal redress to the United States Court of Military Commission Review on issues of law if you believe that you were treated unlawfully by the military commission. To my knowledge, you have not attempted to exhaust this remedy and file an appeal with the United States Court of Military Commissions Review, as suggested by the military judge on the record. In sum, there were many instances from the inception of this issue which you could have chosen which likely would have avoided the point at which we are at today.

### iv. Appropriateness of Contempt Penalty

16. With regard to the sentence of a $1,000 fine and confinement for 21 days, I note that you have spent two days of the confinement term while restricted to your quarters in the Expeditionary Legal Complex. As you know, I deferred the remainder of confinement until a final action was taken. Having now had the opportunity to review the facts, circumstances, and law surrounding the contempt proceedings, I find that imposition of the remainder of the

---

[5] "While this review process is ongoing, Petitioner has the right under the Rules for Military Commission to seek from the Convening Authority deferment of his sentence to confinement. *See* R.M.C. 809(e); 1101(c). "A sentence of confinement pursuant to a finding of contempt shall begin to run when it is adjudged unless deferred, suspended, or disapproved by the convening authority." R.M.C. 809(e). *Id.* Petitioner, however, has not submitted a request for deferment to the Convening Authority." *See* Respondent's Status Update, p. 4, case # 17-CV-2311.

6

sentence of confinement would have no significant deterrent or rehabilitative effect. Therefore, I remit the remainder of the sentence of confinement the military judge imposed. With regard to the fine, balancing the need and authority of the military judge to maintain good order in the courtroom with the ineffectiveness of a fine to deter future similar conduct, I am remitting the fine.[6] In addition, due to your conduct, I am forwarding the findings and record of proceedings to the appropriate authority overseeing your service as a Judge Advocate within the Department of the Navy, the United States Marine Corps, and the General Counsel of the Department of Defense for an administrative ethics review.

## II. Underlying Attorney-Client Confidentiality Issues

### i. Protection of Privileged Communications

17. The military judge reviewed all the filings of defense counsel in this case, both classified and unclassified, concerning the possible prejudice to the right of the attorneys to speak with their client confidentially and without unauthorized electronic monitoring. The military judge denied the defense motion after reviewing "all of the information submitted thus far on the issue, both classified and unclassified, and I found the defense failed to carry its burden of proof …."

18. On July 14, 2017, the defense filed AE 369RR, a notice to the commission that it had filed a classified motion for an evidentiary hearing or, in the alternative, abatement of the proceedings. On September 20, 2017, the military judge denied this defense motion in AE 369ZZZ, stating, "again after consideration of all the classified and unclassified filings and the in-court representations and a classified declaration submitted by the government, I issued Appellate Exhibit 369ZZZ … denying the motion and finding there wasn't any basis to find there had been an intrusion into attorney-client communications between this accused and this defense team."

19. On August 14, 2017, the defense filed AE 369AAA, a notice to the commission that it had filed a classified motion to allow defense counsel to meet with their client in the courtroom and to ensure his right to privileged attorney-client communications. On October 25, 2017, the military judge filed AE 369OOOO, denying the defense motion. In that ruling, the judge noted, "I certainly didn't object to the defense utilizing the courtroom, or frankly any room, for attorney-client meetings as that is something that they need to work out with the confinement facility. It is not something for me to be involved in in most instances, and I have stayed out of it, as you all know, because I don't run this facility. I would note there have been many meetings here in the ELC between the defense counsel and their client in this case."

20. On November 17, 2017, the military judge commented on the record about this topic, stating "Learned counsel's request that he meets in the courtroom has been granted by the behavior of the confinement facility, over and over and over. They've also offered up a meeting place in AV-34, where I work, and the defense counsel has been able to take advantage of those . . . . . yet learned counsel still refuses to appear." See Unauthenticated Transcript, *United States v. Al-Nashiri*, November 17, 2017, p 11034.

---

[6] I note that you have resigned from further supervision or involvement in the *U.S. v. Al Nashiri* case.

7

### ii. Authority to Release Defense Counsel for Good Cause

21. On October 6, 2017 Mr. Kammen, Ms. Eliades, and Ms. Spears submitted a request to you, to withdraw from their representation of the accused, relying in significant part on the June 24, 2017 memorandum and an October 5, 2017 ethics opinion from Professor Ellen Yaroshefsky. On October 11, 2017, you notified Mr. Kammen, Ms. Eliades, and Ms. Spears that you had accepted their request to withdraw from representing the accused, and you released them for "good cause shown on the record," citing R.M.C. 505(d)(2). On October 13, 2017 the defense provided notice to the commission of this purported withdrawal. *See* Record of Trial p. 10039.

22. Rule for Trial by Military Commission (RTMC) 9-1 outlines the authority for the Chief Defense Counsel (CDC) to detail counsel to represent individuals charged in military commissions. Specifically, Rule 9-1(a)(4) and (5) requires the CDC to detail judge advocates to represent an accused.

23. Rule for Military Commission (R.M.C.) 505(d)(2)(B) permits an authority competent to detail defense counsel to excuse or change such counsel, "(i) upon request of the accused or application for withdrawal by such counsel; or (ii) for other good cause shown on the record."

24. In addition to the CDC's authority to detail military counsel, Rule 9-1(a)(6) states that the CDC may also detail a learned counsel from the CDC's staff as practicable. The distinction between the detailing of military counsel and the selection of civilian counsel representation is emphasized in Rule 9-1(a)(15) ("The Chief Defense Counsel shall ensure that all detailed defense counsel and civilian defense counsel who are to perform duties in relation to a military commission have taken an oath to perform their duties faithfully.")[7]

25. Generally, the "military judge controls the proceedings in a trial referred to his court from beginning to end." *United States v. Nivens*, 21 C.M.A. 420, 425 (C.A.A.F. 1972). A detailing authority cannot unilaterally excuse counsel without a good cause determination by the military judge because R.C.M. 505 requires such a finding be accomplished by the military judge on the record. *United States v. Bevacqua*, 37 M.J. 996, 1003 (C.G.C.M.R. 1993). Indeed, in this commission case, defense counsel have previously recognized the authority of the Military Judge to approve excusal of counsel.[8] This issue has also been addressed in the *United States v. KSM et al.* case with the military judge finding that the judicial authority must assess whether conflicts of interest exist. *See* AE 292QQ ("Defense counsel facing a conflict of interest may deprive an accused of representation by competent counsel unless a judicial inquiry finds there is no actual conflict." (*citing United States v. Jones,* 662 F.3d 1018 (8th Cir. 2011); *Ausler v. United States,*

---

[7] This distinction was underscored by the military judge, who stated, "…filings from a chief defense counsel in prior releases of counsel that make clear that they believe their authority only applied to detailed military counsel, not learned counsel; unique because learned counsel aren't detailed, they are appointed." *See* Transcript of Proceedings, *United States v. Al Nashiri*, November 14, 2017, p. 10754.

[8] On July 14, 2017, defense counsel filed a motion seeking the military judge's permission to excuse detailed defense counsel. AE 339H, Defense Motion to Excuse Detailed Defense Counsel, Lieutenant Commander Jennifer Pollio, *United States v. Al Nashiri*, July 14, 2017. In their motion, defense counsel cited to Military Commissions Trial Rule of Court (RC) 4.4b and requested that the Military Judge approve the Chief Defense Counsel's excusal of LCDR Pollio with the consent of the accused. The military judge subsequently granted the defense motion in AE 339I.

8

545 F.3d 1101 (8th Cir. 2008); *United States v. Blount*, 291 F.3d 201 (2nd Cir. 2002); *United States v. Lee*, 589 F.2d 980 (9th Cir. 1979)). Similarly, in that same military commission, when defense counsel for Mr. bin 'Attash believed a potential conflict of interest had arisen, they brought the issue to the military judge, including a request to withdraw, with no involvement from the Chief Defense Counsel.[9] See *United States v. Mohammad, et al* Transcript, May 15, 2017, pp. 15583-84. After discussing the matter, the Military Judge denied defense counsel's request to withdraw. *Id.* at 15637.

26. Based on legal authority and prior precedent in both the *KSM* trial and the *Al Nashiri* case, it is my opinion that only the military judge can release defense counsel from representation of a client after a showing of good cause on the record. Contrary to your assertions, you lack the authority to unilaterally release defense counsel without a judicial finding of good cause.

### iii. Path Forward

27. A matter more imperative than my action in the contempt proceeding remains the underlying security concerns that led to the attempted resignation of counsel in the first place. Until the issues of transparency are resolved in an unclassified forum, the case is unlikely to advance, even if new counsel are appointed, because new counsel might well assert identical attorney-client privilege ethical concerns. Security concerns and classification issues have raised legitimacy issues from the outset of military commissions. Although the appropriateness of their chosen path is now under review, Mr. Al-Nashiri's civilian defense counsel have raised the issue of the lack of confidentiality in attorney-client communications at the detention facilities at NSGB. To ensure openness and transparency continue in the future, I also intend to recommend to the Joint Detention Group that a 'clean' facility be designated or constructed which would provide assurances and confidence that attorney-client meeting spaces are not subject to monitoring. This clean facility would also be checked periodically to ensure compliance with confidentiality expectations by an independent team to ensure it remains free of listening and inappropriate monitoring devices. Although this step is beyond the authority of the Convening Authority to direct, I take the liberty of noting it, because it would go far in facilitating litigation in this case.

28. The ongoing issues that precipitated the contempt proceedings are rooted to a great degree in the classified nature of the proceedings, evidence, detention facilities, and personnel involved. The key to the legitimacy of military commissions is transparency. The Office of the Chief Prosecutor has asserted that millions of pages of highly classified information has been reviewed and summarized into roughly a few hundred thousand pages of information available to the defense. The final summarization of that classified evidence was turned over to the defense in late 2017, over six years after charges in this case were referred to trial. Additionally, every proceeding, filing with the commission, transcript, and individual practicing before military

---

[9] Specifically, when a former member of the defense team filed a lawsuit against the current defense team members, learned counsel for Mr. Bin 'Attash, Ms. Cheryl Bormann, requested that the Military Judge abate the proceedings or appoint independent counsel for Mr. Bin 'Attash. Unofficial/Unauthenticated Transcript at 15583-84, *United States v. Mohammad, et al.* (May 15, 2017). Alternatively, she would move to withdraw. *Id.* After discussing the issue, the Military Judge denied the defense motion on all grounds, including the defense request to withdraw. *Id.* at 15637.

9

commissions must clear the appropriate classification screening process. Even a filing as mundane as a notice of appearance of counsel or a scheduling order must be vetted through a labyrinthian process through various government agencies who determine whether the information should be classified, and at what level. Although there are legitimate, recognized intelligence equities, they must be balanced against the ability to carry out an orderly trial process so that the pursuit of justice for those involved in the commissions process and provide closure for the victims and family members.

29. The declassification of relevant documents concerning this matter needs to be expedited to ensure the now-classified analysis can be shared with the appropriate parties to ensure the integrity of the process. Indeed, the fact that the original defense filing which gave rise to the attempted resignation of civilian defense counsel and contempt proceedings against you was classified has made it nearly impossible to those not party to the proceeding to assess the merits of the filing. Compounding this issue is the fact that even the judge's original opinion, in which he determined that there was no good cause to warrant excusal of civilian counsel in this case and no ethical issues requiring withdrawal or disqualification, is still undergoing a security review by classification authorities over a month after the ruling was made.[10]

30. CONCLUSION: I hereby order that the findings of the military judge of contempt against you not be disturbed, as they are correct in law and fact. I also order that the remainder of the unexecuted portion of your sentence of confinement and fine be remitted. Pursuant to R.M.C. 109(b)(2), I am forwarding the findings and record of proceedings to the appropriate authority overseeing your service as a Judge Advocate within the Department of the Navy, the DoD Standards of Conduct Office, and the Staff Judge Advocate to the Commandant of the United States Marine Corps for an administrative ethics review. Finally, I recommend to the Joint Detention Group that a 'clean' facility be designated or constructed which would provide unclassified assurances and confidence that the attorney-client meeting spaces are not subject to monitoring.

Harvey Rishikof
Director, Office of Military Commissions

Attachment:
Convening Authority Action, November 21, 2017

---

[10] In expressing his frustration at the lack of transparency in this issue, the judge stated, "…it has to do with the classified information in 389. And so to the extent possible, I want the OCAs to declassify what they can. I want you all to work with them. I know I can't order it. I know I can't order it disclosed. But I am ordering you to work with the OCAs to declassify, to the extent possible, information related to this alleged intrusion, and, frankly, the complete lack of evidence of intrusion in this case for this accused." *U.S. v. Al-Nashiri* Transcript, November 10, 2017, p. 10586.

## ACTION

In the contempt proceedings against BRIGADIER GENERAL JOHN G. BAKER, United States Marine Corps, Military Commissions Defense Organization, the unexecuted portion of the sentence of 21 days confinement and the fine in the amount of $1,000.00 will not be executed.