UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD KAMMEN, | ) |
| | ) |
| *Petitioner,* | ) |
| | ) |
| v. | ) |
| | ) |
| GEN. JAMES N. MATTIS in his official capacity as SECRETARY OF DEFENSE, and | ) ) ) ) |
| | ) |
| HARVEY RISHIKOF in his official capacity as the former CONVENING AUTHORITY, DEPARTMENT OF DEFENSE, OFFICE OF MILITARY COMISSIONS, and | ) ) ) ) ) ) )  No. 1:17-cv-03951-TWP-DML |
| | ) |
| COL. VANCE H. SPATH (AIR FORCE) in his official capacity as MILITARY JUDGE, MILITARY COMMISSIONS TRIAL JUDICIARY, DEPARTMENT OF DEFENSE, and | ) ) ) ) ) |
| | ) |
| JIM COYNE in his official capacity as the ACTING CONVENING AUTHORITY, DEPARTMENT OF DEFENSE, OFFICE OF MILITARY COMISSIONS, | ) ) ) ) |
| | ) |
| *Respondents.* | ) |

**PETITIONER'S REPLY
TO RESPONDENT'S OPPOSITION TO AMENDED PETITION FOR
WRIT OF HABEAS CORPUS AND MOTION FOR DECLARATORY JUDGMENT**

Most of the troubling facts of this case are undisputed by the Government: the installation of a concealed microphone in an attorney-client meeting room; the Government's unwillingness to allow defense counsel to investigate the source of the

1

microphone, or how long the microphone had been deployed[1]; the order preventing counsel from advising the client about what they found, the resulting ethical concerns of defense counsel; reliance upon an outside ethics opinion about mandatory withdrawal; Brig. Gen. Baker's independent "good cause" determination allowing counsel to withdraw; the fervent reaction by Col. Spath; and Col. Spath's pursuit of sanctions for contempt against Brig. Gen. Baker and his threat to have civilian attorneys arrested in the continental United States.

On the core legal issues too, the Government's silence speaks volumes. Interwoven with Mr. Kammen's request for declaratory relief are his claims under the First, Fifth, Sixth, and Fourteenth Amendments. Many of these claims center around the impossible position that the Government has put Mr. Kammen in: he can adhere to his ethical obligations and face arrest, transportation to another jurisdiction, and sanctions for criminal contempt; or he may be compelled to provide unethical legal services in a capital case, either in person or by videoconference, which itself would be unethical. The Government does not deny the conundrum they have created or its constitutional ramifications. They certainly do not quarrel that Mr. Kammen has set out substantively valid claims under the Constitution. The Government's quietude on these points is at some level understandable. It is difficult to justify forcing a civilian U.S.

---

[1] Indeed, Petitioner's counsel are advised by their client that should the Court review the classified information, it will confirm additional indicia of improper Governmental interference with the attorney-client privilege. None of the attorneys for the Petitioner has access to the classified information, but the Court may ask the Government to produce relevant documents *in camera* or otherwise. To the extent the Government newly characterizes the microphones as "legacy," Ex. 4 p. 1, the Court should not decide the instant motion on that basis – since no evidence has been presented, either here or in other venues, about what that terminology means – let along the underlying timing, nature, or usage of the microphones.

citizen to go to a military detention facility base in the Republic of Cuba upon pain of criminal penalties.  The First Amendment ramifications and chilling effects alone here would be serious.

Instead of contesting, or even addressing, these pivotal issues, the Government spends the bulk of its brief arguing that Mr. Kammen is not meaningfully in custody – *just yet* – and theorizing related procedural roadblocks.

However, the Government does not seriously dispute that Mr. Kammen was on the verge of being arrested before the proceedings in this Court commenced.  To this day, the Government repeatedly states that Col. Spath has not ordered Mr. Kammen be taken into custody, but the Government conspicuously declines to provide any express assurances that they are not prepared to do so in the future for the same course of conduct.[2]  Indeed, since this habeas petition was filed, the Government has continued to actively pursue Mr. Kammen's civilian co-counsel, Rosa Eliades and Mary Spears, calling upon the prosecution to draw up warrants ("writs of attachment"), and suggesting that "if I were to be going to federal court [for habeas protection], I would go soon." Tr. 11914. The only thing that has given Col. Spath pause from treating Petitioner similarly is this Court's November 3, 2017 order.  Col. Spath's February 2018 abatement does not materially impact the risk of imminent custody, since he conditioned it upon "a superior court order[ing] me to resume," Tr. 12376, an order the Government is actively

---

[2] Nothing in this action precluded the Government from seeking to debar Mr. Kammen from the Military Commissions. Yet, it has taken no steps to do that. Moreover, when Mr. Kammen offered to resign from the pool of qualified counsel, the Government rejected that resolution claiming that it could not guarantee that Col. Spath would recognize that debarment. At this juncture, more than 7 months since Brig. Gen. Baker excused Mr. Kammen, the Government can now achieve resolution of this action by conceding that Mr. Kammen had good cause to be excused and was properly excused by General Baker who was the proper excusal authority.

3

seeking to expedite. Moreover, the Government has continued to dispute Ms. Eilades and Ms. Spears' withdrawal and they and Mr. Kammen are identically situated. Altogether, if the circumstances facing Mr. Kammen do not constitute a risk of imminent custody in this narrow and anomalous case,[3] then it is hard to imagine what would.

If this Court agrees with Petitioner about imminent custody,[4] then two of the Government's four rejoinders immediately fail (Gov. Br. 16-26), because they are explicitly contingent upon this Court's determination that Petitioner does not face an imminent risk of being taken into custody.

The Government's third response collapses onto itself (Gov. Br. 27-30), since it boils down to the question of *who* is ultimately most likely to take Mr. Kammen into custody in Indiana. The framework laid out in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004) framework does not address the circumstances of imminent (as opposed to actual)

---

[3] The "in custody" requirement for habeas does not require present physical custody. *Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973) (parolee subject to orders to appear and criminal violation for failing to do so, is "in custody" for purposes of habeas statute). Custody simply requires a "severe restraint" on liberty, which means "one not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). One court has even held that an order of community service constitutes "custody" for purposes of habeas. *Barry v. Bergen Cty. Prob. Dep't*, 128 F.3d 152, 154 (3d Cir. 1997). Mr. Kammen has been ordered to appear by Col. Spath before a military commission in either Alexandria, Virginia or Guantanamo Bay, Cuba. He has been told that his disobedience may result in a criminal offense by means of a finding of contempt and subsequent punishment. Mr. Kammen is therefore subject to severe restraints on his liberty not shared by the public generally.

[4] Ultimately, this Court may need not even determine whether Mr. Kammen is yet in custody, because all he seeks is equitable relief and "judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers." *Harmon v. Brucker*, 355 U.S. 579, 581–82 (1958); *see also ben Shalom v. Sec'y of Army*, 489 F. Supp. 964, 970 (E.D. Wis. 1980) ("The Petition alleges that the respondents, as officials of the United States, acted beyond their constitutional powers. The Petition also challenges as unconstitutional the Army regulation pursuant to which the respondents acted. No money damages are sought. Under these circumstances, sovereign immunity does not bar suit against the respondents.").

custody – and surely does not require Mr. Kammen to predict precisely *which* federal marshal and/or local police officer is likely to place him in handcuffs (at the direction of Respondents).

All that remains then are the Government's lingering arguments about abstention. But this suffers from multiple problems:

First, it disregards how fundamentally separate the instant habeas petition is from the *al-Nashiri* proceedings. (This remains true notwithstanding the Government's disturbing suggestion that Petitioner, a citizen and a lawyer, is somehow jurisdictionally equivalent to an alien, non-citizen enemy combatant.)

Second, the Government overlooks that Mr. Kammen has been excused as counsel for Mr. al-Nashiri, and once excused by the proper authority, in this case Gen. Baker, Col. Spath had no authority to order Mr. Kammen to go to Guantanamo, Virginia, or elsewhere.

Third, Mr. Kammen had no remedies in the Military Commissions system. He has no right of appeal. His remedy was the filing of this action.

Fourth, the Government disregards Col. Spath's repeatedly expressed desire to have guidance from Superior courts including Article III federal courts on the issues in front of him.[5] The primary equitable consideration that normally compels abstention – to avoid interference with Military Commission proceedings – is, therefore, not only absent,

---

[5] *See, e.g.*, Trans 12351 ("What I know is we deserve and need some guidance from somebody. We have courts of higher review."). He specifically referenced the D.C. District Court's present consideration of *Baker v. Spath*, stating, "I'm hoping that Judge Lamberth will rule on [the counsel] issue. I fear he's going to rule on … the contempt issue, and not help with the – kind of the underlying real question we all need answered – right? – Am I right or is General Baker right?" Trans. 12270.

5

but reversed in this case insofar as Col. Spath himself is inviting the guidance of federal courts.

Fifth, with respect to comity, two sister courts have demonstrated no difficulty in starting to address related issues involving Petitioner's co-counsel and superior:  The D.C. Circuit recently issued a detailed briefing order in *Spears et al. v. U.S.,* No. 18-1087, (May 10, 2018) (Document #1730409), and while that order was withdrawn, it was withdrawn because the prosecution agreed with the appellants that the Court of Military Commission Review had ruled improperly.  Absent the Government's agreement, both the D.C. Circuit and the District Court of the District of Columbia, have yet to see a need to abstain from considering this issues arising from Col. Spath's conduct. *See generally Baker v. Spath*, 1:17-cv-02311 (D.D.C.).

Sixth, under the "extraordinary circumstances exception" to abstention doctrines, a claim exists where there is bias in the adjudicatory process. *Kugler v. Helfant*, 421 U.S. 117, 125 (1975).  Col. Spath has made a number of comments in this case – including references to "frustration," "fake news," the "political" nature of capital defense requirements, his state of mind, and genocide – which, raise inescapably troubling questions of bias.[6]  *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (The basic predicate

---

[6] *See* Trans. 11538 (frustration); *id.* at 11558 (mocking the ethical dilemma that forced Petitioner's former trial attorneys to withdraw as "fake news."); *id.* ("And in the spirit of full disclosure, there are days, right, where this is tough work. And it would be a lot easier for me to say I'm going home, which is exactly, by the way, what happened on this side, which is so frustrating: I'm going home."); *id.* at 11568 (disagreeing with ABA requirements about capitally qualified defense counsel as "not variety of reasons, many of them political, frankly, and you know that."); *id.* at 11719 (expressing his personal "frustrat[ion]" but initially stating that he was not going to issue "any rulings from the bench on this issue today, because I want to reflect, and reflect in the right state of mind."); *id.* at 11924-25 (criticizing the *Miami Herald* and a military blog called CAAFlog); *id.* at 12286 (returning to the press coverage the next day); *id.* at 11551-52

6

for abstention is absent when the tribunal whose actions are under review "was incompetent by reason of bias to adjudicate the issues pending before it."); *cf. Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965).

In the end, and perhaps most critically, this case simply does not involve the "'expertise of military courts,'" (Gov. Br. 25) (citation omitted). This is not a case about a service member or a court-martial. This is not a case about the Uniformed Code of Military Justice. This is not a case about a military operation in hostile territory or a military detainee overseas.

This is a case about the ethical duties that the Indiana Rules of Professional Conduct impose upon an Indiana lawyer. It is a case of a U.S. citizen facing imminent risk of physical custody because he did what was ethical, what a superior competent authority determined to be "good cause," and then followed the clear law and regulations promulgated by the Secretary of Defense in order to properly effect his withdrawal from a case. *See* Manual for Military Commissions, Rules for Military Commissions 505(a); 505(d)(2). The extraordinary facts that have developed since the defense discovered microphones in the room where they met with their client, give rise to quintessential constitutional issues for which Article III courts and the writ of habeas corpus were designed. This Court should at the very least defer ruling until it has a chance to review the full record – unclassified and unclassified -- and if necessary hold an evidentiary hearing to allow the parties to flesh out the many unanswered questions

---

("But I've got to tell you I feel like I'm in the wilderness on the – fighting this particular issue because it's not my fight. . . .  And again, is it in my lane? How much is in my lane?"); *id.* at 12364-65 ("Over the last five months – yes, my frustration with the defense has been apparent."); *id.* at 12373 ("after 26 years of service, it's shaken me more than I would have expected."); *id.* at 12369 ("I'm not ordering the Third Reich to engage in genocide. This isn't My Lai. . . .").

surrounding the microphones. This Court can and should resolve the serious Constitutional issues presented by this action and grant relief to the plaintiff by finding that he had good cause to withdraw and that Brig. General Baker was the proper excusal authority.

    Respectfully submitted,

    By and through his counsel:

/s/ *Jessie A. Cook*
JESSIE A. COOK
Law Office of Jessie A. Cook
400 Wabash Avenue #212
Terre Haute, IN 47807
(812) 232-4634
jessieacook@icloud.com

/s/ Robert W. Hammerle
ROBERT W. HAMMERLE
Pence Hensel, LLC
135 North Pennsylvania #1600
Indianapolis, IN 46204
(317) 643-6960
rhammerle@pencehensel.com

/s/ *JP Schnapper-Casteras*
John Paul Schnapper-Casteras
Schnapper-Casteras PLLC
1117 10th Street NW, #W7
Washington DC 20001
(202) 630-3644
jpsc@schnappercasteras.com